UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GOVERNMENT EMPLOYEES INSURANCE
COMPANY, et al.,

      Plaintiffs,

  v.                            Case No.: 8:19-cv-01950-KKM-JSS
                                        **(DISPOSITIVE MOTION)**

GLASSCO, INC., et al.

      Defendants.
_____/

## **DEFENDANT JOHN BAILEY'S MOTION FOR SUMMARY JUDGMENT**

Defendant, JOHN BAILEY ("Bailey"), pursuant to Fed.R.Civ.P. 56, moves for the entry of summary judgment in his favor and against the Geico Plaintiffs (collectively, "Geico") on all claims asserted against him in the Complaint (DE-1). This motion also incorporates a Special Motion for Summary Judgment under authority of Fla. Stat. §768.295, Florida's anti-SLAPP statute.

### **Introduction and Special Incorporated Motion**

Glassco has adopted a business model for windshield replacement that conforms to industry standards in Florida. Its business practices are expressly permissible under Florida laws and automobile insurance policies which allow assignments of benefits from insureds to auto glass vendors; prohibit collection of deductibles on covered windshield claims (§627.7288, Fla. Stat.); allow insureds to select any glass vendor of their choice; and allow recovery of attorneys' fees (§627.428, Fla. Stat.) when Glassco

makes any recovery in the myriad of small claims cases that it files to collect the difference between the amounts that it would be entitled to collect for windshield replacements in an arms' length competitive market and the deeply-discounted amount that Geico voluntarily pays, based on its special relationship with Safelite, its preferred glass vendor.  Frustrated because this legal landscape thwarts its ability to unilaterally control the competitive costs of windshield replacements charged by independent glass vendors (such as Glassco) who are not participants in Geico's "Safelite" network, and frustrated by the legislature's refusal to enact statutory changes that would favor an insurer's underpayment of windshield claims and that would impede insureds from assigning benefits, Geico now seeks to have the federal court legislate where the legislature has chosen not to.  In so doing, Geico has launched a stigmatizing attack on the customs and business model of an entire industry and has requested relief that is overreaching and without merit.  Geico's lawsuit is an improper SLAPP suit.

Florida's anti-SLAPP statute prohibits a person from filing a suit that is (a) "without merit" and (b) "primarily"[1] because the person against whom the suit was filed "exercised the constitutional right of free speech in connection with a public issue...." Bongino v. Daily Beast Co., LLC, 477 F. Supp. 3d 1310, 1321 (S.D.Fla. 2020), citing §768.295(3), Fla. Stat. (holding that Florida's anti-SLAPP statute applies

---

[1] The anti-SLAPP statute empowers this Court to determine the "primary" motive of a lawsuit.  The Court thus should look beyond Geico's characterization of its claims and focus on the true essence of the dispute, which is to influence and chill Defendants' contractually based state court lawsuits.  In so doing, this Court can even determine that it lacks subject matter jurisdiction to adjudicate what are essentially defenses to Glassco's state court contractual claims against Geico, which Geico could have raised in each of the pending state court action.  See e.g. Cozen O'Connor, PLC v. Mintz Truppman, P.A., 306 So.3d 259 (Fla. 3d DCA 2020).

in federal court). The Florida legislature enacted the statute to deter such suits, finding they are "inconsistent" with the constitutional right of free speech—the preservation of which is a "fundamental state policy." Id.; §768.295(1). The exercise of the constitutional right of free speech in connection with a public issue expressly includes within its ambit the right to petition for redress of grievances before the Florida state courts. §768.295(1)(2), Fla. Stat.. The statute awards a defendant attorneys' fees and costs if a plaintiff files a forbidden suit. §768.295(4), Fla. Stat.; Parekh v. CBS, 820 Fed.Appx. 827 (11th Cir. 2020).

As the 1773 claims attached to Geico's Complaint demonstrate (DE-1-1), Geico regularly paid Glassco's claims voluntarily. Geico's motivation in bringing this federal suit is two-fold: (1) to deter Glassco from bringing state court breach of contract claims when Geico only pays 50% of Glassco's invoices; and (2) to avoid the exposure to unbounded attorney fee awards pursuant to §627.428, Fla. Stat., and ensuing extra-contractual damages pursuant to §624.155, Fla. Stat., in the hundreds of state court claims that Glassco has filed against Geico, many of which are those very claims that Geico has incorporated into this lawsuit through Exhibit 1. (DE-1-1).

Federal subject matter jurisdiction in this action is predicated on GEICO's federal civil RICO claim. Absent the RICO allegations, Geico would have no unifying theory to plausibly allege that it has entitlement to restitution for each and every one of the 1773 claims which Geico has voluntarily "short-paid" Glassco, and GEICO would be unable to plausibly allege the amount in controversy requirement for federal diversity jurisdiction in view of the dearth of competent probative evidence to establish

damages cognizable under state law. But, for the multiplicity of reasons that are demonstrated below and incorporated into this special motion, Geico's civil RICO action is frivolous and entirely without merit.[2]

Glassco's postulation that Geico lacks underlying conviction about the merits of its civil RICO claims is not merely academic and speculative. In support of its contention that the case *sub judice* is a SLAPP suit to leverage settlement in the state court cases and discourage Glassco's access to the court for redress, Glassco asserts that virtually all of the 1773 claims for which Geico seeks restitution ((DE-1-1), Bailey Decl. (Ex. 1) at ¶ 31) relate to claims which were already being litigated in the Florida county courts at the time this lawsuit was filed. In this lawsuit, however, Geico misleadingly disclosed **no** pending related cases. (DE-12; DE-28). Further, 11 of the 1773 claims have been tried and resulted in a judgment in favor of Glassco and against Geico in county court. (Ex. 1 at ¶ 32 and Ex. B). Geico has failed to disclose these judgments to this Court and, despite the well-settled doctrines of *res judicata* and collateral estoppel, Geico nonetheless continues to seek restitution in this action for those very claims. Geico has also voluntarily settled an additional 53 of the claims for which it seeks restitution in this case. Id. While it may strain credulity at first blush that a federal civil RICO victim would voluntarily pay on a claim that is the subject of a pending RICO cause of action, Geico's decision to settle harmonizes with good

---

[2] That the civil RICO allegations judicially survived Defendants' motion to dismiss is of no significance, because the Court must accept the well-pled allegations as true for purposes of adjudicating a Rule 12(b)(6) attack.

business judgment when viewed in the context of Geico's reduced exposure to unbounded statutory attorneys' fees in the county court actions.   In its inherent wisdom, this Court is competent to go behind the bluster of Geico's complaint to recognize *sua sponte* that the case *sub judice* is improperly motivated to discourage Bailey (and Glassco) from seeking redress through the state courts to vindicate contractual rights and to leverage the settlement posture in those 1773 cases, by fashioning a frivolous RICO action to induce fear of ignominy in Bailey.

In view of the foregoing, pursuant to §768.295(4), Bailey seeks summary judgment against Geico as to all claims herein, together with an expeditious resolution of its claim that the instant lawsuit is in violation of Florida's anti-SLAPP statute, and together with attorneys' fees and costs incurred in defense of this action.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

The Geico plaintiffs are Maryland corporations with their principal places of business in Chevy Chase, Maryland.  (DE-1). Bailey is a citizen of Florida.  (Bailey Depo (Ex. 2) at 7:4-7).  Glassco is a Florida limited liability company with its principal place of business in Kissimmee, Florida.  (DE-1; Ex. 2 at 7:8-14; Bailey 30(b)(6) Depo. (Ex. 3) at 8:13-22). The Geico plaintiffs are insurers that sell automobile insurance policies containing comprehensive and collision coverage.  (DE-1, ¶¶ 10, 21).  Under Section 627.7288, Fla. Stat., the "deductible provisions of any policy of motor vehicle insurance…providing comprehensive coverage…shall not be applicable to damage to the windshield of any motor vehicle covered under such policy." (*See also* DE-1, ¶22).

Florida law and Geico's insurance policy grants the insured sole discretion to select a repair shop to repair the windshield. (DE-1, ¶25-26). After notifying the insurer about the windshield damage, the insured can assign to the repair shop the right to the insured's benefits under the policy. (DE-1, ¶27). After the insured assigns benefits under the policy and the repair shop repairs the windshield, the repair shop submits to the insurer an invoice and a claim for reimbursement. (DE-17, ¶29).

Glassco is a licensed "motor vehicle repair shop" with the Florida Department of Agriculture and Consumer Services (FDCAS). (Ex. 3 at 13:4-17). Between January 8, 2016 and July 2, 2019, at least 1773 of Geico's insureds selected Glassco to repair their windshield. (DE-1-1). On each claim, Glassco invoiced Geico for the work performed. (DE-17-1; Ex. 1 at ¶¶ 8-9, 17-18). On each claim, Geico did not pay the full Glassco invoice (or any other reasonable amount), but instead partially paid a deeply discounted amount which, according to Geico, was the prevailing competitive price" for the work performed under the policy of insurance. (Ex. 1 at ¶¶ 18, 23).

In response to Geico's partial payment on close to each of the 1773 claims, Glassco, as an assignee of the insured, filed small claims actions in the state courts to collect the difference, contending that the amount Geico reimbursed Glassco was not the competitive prevailing price required to be paid for the work performed under the policy. (Ex. 1, at ¶ 23). Most of these state court actions remain pending. (Ex. 1, at ¶ 33). Geico responded to each of the small claims suits in state court by filing this federal action, seeking a refund of all amounts previously voluntarily paid to Glassco and a declaration that it does not owe Glassco for any future Glassco invoices. (DE-1). 11

6

of the 1773 claims which Geico claims as a part of this action have been tried in the state courts and resulted in a final judgment in favor of Glassco and against Geico. (Ex. 1, at ¶ 23, 32 and Exhibit B). Geico has settled an additional 53 of the 1,773 claims for which Geico seeks restitution in this suit, by paying Glassco's bills in full as well as its attorneys' fees.  (Ex. 1 at ¶ 23, 32).

### MEMORANDUM OF LAW

## I.   APPLICABLE PRINCIPLES AND LAW

### A.   Summary Judgment Standard

The summary judgment standard is well-settled. Because the plaintiff bears the burden of establishing every element of each cause of action, to survive summary judgment, plaintiff must establish that there is a genuine issue of fact as to each element of a given claim. Harris v. H & W Contracting Co., 102 F.3d 516, 523 (11th Cir. 1996). The failure to offer proof concerning any essential element of a cause of action "renders all other facts immaterial." Zappa v. Wal-Mart Stores, Inc., 1 F. Supp. 2d 1354, 1355 (M.D. Fla. 1998).

### B.   Civil RICO

#### 1. Preliminary RICO Statement

As the courts of virtually all federal circuits have admonished, civil RICO was legislated to deter long-term criminal activity and thus should not apply to ordinary business disputes. *See e.g.* Midwest Grinding Co. v. Spitz, 976 F.2d 1016, 1025 (7th Cir. 1992) ("civil RICO plaintiffs persist in trying to fit a square peg in a round hole by

squeezing garden-variety business disputes into civil RICO actions"); Calcasieu Marine Nat. Bank v. Grant, 943 F.2d 1453, 1463 (5th Cir. 1991) ("RICO not applicable for every fraudulent commercial transaction").  Accordingly, courts have found it to be an abuse of the RICO statute to attempt to shoehorn an ordinary business or contractual dispute into a civil RICO claim. *See e.g.* Banco de Desarrollo Agropecuario, S.A. v. Gibbs, 640 F. Supp. 1168 (S.D.Fla. 1986).  The widespread abuse of civil RICO stems from the fact that all modern business transactions entail use of the mails or wires—giving plaintiffs a jurisdictional hook—and the fact that RICO offers a far more generous compensation scheme than typically available in state court. Midwest Grinding, *supra*, at 1025.  The Supreme Court has warned against permitting a plaintiff "with a largely groundless claim to simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value, rather than a reasonably founded hope that the [discovery] process will reveal relevant evidence.  Blue Chip Stamps v. Manor Drug Stores, 421 U.S 723, 741 (1975).  Such abuse can have deleterious effects on a defendant because of the stigmatizing effect of RICO claims and the charges of fraud often used to support them. Figueroa Ruiz v. Alegria, 896 F.2d 645, 650 (1st Cir. 1990).

Geico's allegations of civil RICO take broad aim at Glassco's entire business model rather than detailing an actual pattern of racketeering.  As such, Geico conflates Glassco's presentment of each of 1773 customary and reasonable invoices for glass replacement services duly rendered with a predicate act of wire fraud under RICO. Geico's conduct is exactly the kind of abuse of the RICO statute that the Supreme

Court cautioned against in the two landmark RICO cases, <u>Sedima, S.P.R.L. v. Imrex Co., Inc.</u>, 473, U.S. 479 499-500 (1985) and <u>H.J. Inc. v. Northwestern Bell Tel. Co.</u>, 492 U.S. 229, 239-43(1989).   Geico's effort to recast its contractually-rooted disputes with independent auto glass companies such as Glassco into allegations of ongoing criminal conduct is unfairly anathema to the reputation of Bailey, and must not be countenanced by the Court.

### B.    <u>Legal Standard for a Cause of Action under Federal RICO</u>

The federal RICO statute provides that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . ." 18 U.S.C. §1962(c). To prove a RICO §1962(c) violation, a plaintiff must prove each of four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." <u>Langford v. Rite Aid of Ala., Inc.</u>, 231 F.3d 1308, 1311 (11th Cir. 2000).The phrase "racketeering activity" is defined as any act which is indictable under a lengthy list of criminal offenses. 18 U.S.C. §1961(1). Here, Geico alleges that Bailey has committed wire fraud. The Eleventh Circuit has explained that liability can be established for wire fraud when (1) a defendant intentionally participated in a scheme to defraud plaintiffs, and (2) used the U.S. interstate wires in furtherance of the scheme. <u>United States v. Phillips</u>, 647 F. App'x. 917, 918 (11th Cir. 2016).  A "scheme to defraud" "requires proof of a material misrepresentation, or the omission of a material fact calculated to deceive another out of money or property."   <u>United States v.</u>

Maxwell, 579 F.3d 1282, 1299 (11ᵗʰ Cir. 2009).  If the plaintiff alleges omission of a material fact, the plaintiff must allege facts showing a duty to disclose.  Ziemba v. Cascade Int'l., Inc., 256 F.3d 1194, 1202 (11ᵗʰ Cir. 2001).  To determine whether a defendant undertook actions with the "intent to defraud," a court must consider "whether the defendant attempted to obtain, by deceptive means, something to which he was not entitled." United States v. Bradley, 644 F.3d 1213, 1238 (11th Cir. 2011).

To successfully establish a "pattern" of racketeering activity, a plaintiff must demonstrate that (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature. See 18 U.S.C. § 1961(5); H.J. Inc., supra, 492 U.S. at 239-43.  It is well-established that the Supreme Court in H.J. intended to set the bar high for proving "continuity" of criminal conduct sufficient to establish a "pattern" of racketeering activity.  As explicated by the Eleventh Circuit in Jackson v. BellSouth Telecommunications, 372 F.3d 1250 (11ᵗʰ Cir. 2004), "[i]ndeed, in common parlance, two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. It is this factor of continuity plus relationship which combines to produce a pattern." Id. at 1264.

There are two types of continuity that may establish a federal RICO claim: closed-ended continuity and open-ended continuity. Id. Close-ended continuity is established by "proving a series of related predicates extending over a substantial period of time." Id. The relevant period for determining continuity is the time during which

10

the specific charged acts occurred. <u>Coquina Investments v. TD Bank, N.A.</u>, 760 F.3d 1300 (11th Cir. 2014). The Eleventh Circuit has held that closed-end continuity <u>cannot</u> be established upon a showing of schemes lasting less than a year; moreover, "where the RICO allegations concern only a single scheme with a discrete goal, the courts have refused to find a closed-ended pattern of racketeering even when the scheme took place over longer periods of time." <u>Jackson</u>, 372 F.3d at 1267.  Open-ended continuity can be established by showing that the misrepresentations were part of the "regular way of doing business" or threaten repetition in the future.  <u>Id.</u> at 1265.

A civil RICO claim "must be pled with an increased level of specificity," <u>Ambrosia Coal & Const. Co. v. Pages Morales</u>, 482 F.3d 1309, 1316 (11th Cir. 2007).  RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." <u>Id.</u>, *citing* <u>Brooks v. Blue Cross & Blue Shield of Fla., Inc.</u>, 116 F.3d 1364, 1380-81 (11th Cir. 1997).

## II.   ARGUMENT

### A.   <u>Summary judgment for Bailey under federal civil RICO (Count II).</u>

The federal RICO statute creates a civil cause of action for "[a]ny person injured in his business or property by reason of a violation" of the substantive provisions contained in Section 1962 of the RICO Act. 18 U.S.C. §1964(c). To have standing to recover on a federal civil RICO claim, then, plaintiffs must prove "first, that § 1962 was violated; second, that the plaintiffs were injured in their business or property; and third,

that the substantive §1962 violation caused the injury." <u>Williams v. Mohawk Indus.,</u> <u>Inc.</u>, 411 F.3d 1252, 1256 (11th Cir. 2005).

Summary judgment must be granted in Bailey's favor because the evidence in this case does not establish a triable issue as to whether 18 U.S.C. §1962(c) or (d) has been violated.   Moreover, the record reflects that Geico has voluntarily paid Geico some amount for those claims as to which it now seeks reimbursement, and the differences between what Geico <u>has</u> paid and the amounts which remain owing to Glassco is strictly a contractual dispute between the parties, for which Geico has adduced no evidence regarding any injury-in-fact or causation.

**<u>Parsing Geico's civil RICO allegations.</u>**

Count II of the Complaint is a claim against Bailey for violation of the federal civil RICO statute, 18 U.S.C. § 1962(c). Geico's civil RICO claim is premised upon the sweepingly broad allegation that:

> Bailey [and the other individual defendants] have knowingly conducted and/or participated, directly or indirectly, in the conduct of Glassco' affairs through a pattern of racketeering activity consisting of repeated violations of the federal wire fraud statute, 18 U.S.C. § 1343, based upon the use of the wires in interstate commerce to submit or cause to be submitted hundreds of fraudulent claims for Glass Services on a continuous basis for more than three years seeking insurance payments under GEICO insurance policies that Glassco was never entitled to receive because: (i) the claims were the product of illegal, deceptive, unfair, and manipulative conduct directed at GEICO Insureds; and (ii) the claims were submitted through Glassco, which never actually performed the services, never obtained valid assignments of insurance benefits from the Insureds, and was ineligible to seek reimbursement from GEICO for the claims in the first instance because of the Defendants' pervasive violations of the Repair Act.

DE-1, at ¶119.

The allegations of Geico's Complaint fall into two plainly distinguishable categories:  (1) claims that Glassco's bills are fraudulent (and thus non-reimbursable because of Glassco's technical non-compliance with the Florida Motor Vehicle Repair Act ("FMVRA"); and (2) claims of deceptive conduct irrespective of whether Glassco was non-compliant with the FMVRA.  This distinction is of considerable consequence because a civil RICO action predicated on wire fraud will not reach conduct that is not deceptive.  Nevertheless, Geico's Complaint parades a potpourri of purported "terribles" and indiscriminately commingles all alleged conduct so as to conflate the vast majority of Geico's allegations which are comprised of non-deceptive technical violations of FMVRA with a trivial number of unsupported allegations of deceptive conduct.  Geico attempts to parlay this analytic sleight of hand to create the gross misimpression that each of the 1773 cases which are listed in Exhibit "1" to the Complaint are "non-reimbursable" and actionable under civil RICO.

The first category of Geico's claims consist of the following types of alleged violations of the FMVRA: (1) failing to provide written repair estimates to Geico's insureds (§559.905, Fla. Stat.) (DE-1, ¶¶ 67-76); (2) failure to provide Geico's insureds with copies of invoices upon completion of the work (§559.911, Fla. Stat.) (DE-1, ¶¶ 77-82); (3) failure to provide odometer readings on work orders (§559.920(11), Fla. Stat.) (DE-1, ¶¶ 83-88); and (4) using independent contractors as sales reps and glass installers without notice to Geico's insureds (§559.920(14), Fla. Stat.) (DE-1, ¶¶ 49-66).

The second category of Geico's claims consist of the following types of alleged "deception":  (1) forgeries of insureds' signatures on work orders and assignment of

benefits (DE-1, at ¶¶ 89-93; and (2) performance of illusory or unnecessary glass services, or billed more time than actually expended (DE-1, at ¶¶ 94-97).

1.   **Category 1:   No RICO for "pervasive" violations of the FMVRA**

Throughout its Complaint, Geico alleges falsely that motor vehicle repair shops that violate the FMVRA are not entitled to receive payment for repair work, including Glass Services, even if the repair work otherwise was legitimately and actually performed. *See e.g.* DE-1, at ¶¶ 47, 64, 66, 76, 83, 66, 97, 101, 141, 148. It is undeniable that the FMVRA contains no provision which would entitle to Geico to restitution for monies paid to Glassco based on Glassco's alleged "pervasive violations" of the FMVRA, which fact was duly noted by Judge Merryday in his order on Defendant's motion to dismiss. DE-59 at 16-17. In fact, contrary to Geico's misleading allegations of entitlement to reimbursement, the FMVRA expressly contemplates *quantum meruit* payment for bona fide services rendered:

> If, in any proceeding brought pursuant to this part, it is determined that the repairs and costs thereof were in fact authorized, orally or in writing, the repairs were completed in a proper manner, and the consumer benefited therefrom, then the enforcing authority may consider such factors in assessing penalties or damages and may award the reasonable value of such repairs.

§559.21(7), Fla. Stat.   Geico's authority for its assertion that it is entitled to reimbursement for violations of the FMVRA is staked on <u>Osteen v. Morris</u>, 481 So.2d 1287 (Fla. 5th DCA 1986), <u>Gonzalez v. Tremont Body & Towing, Inc.</u>, 483 So.2d 503 (Fla. 3d DCA 1986), and <u>Safari Tours, Inc. v. Pasco</u>, 255 So.3d 415, 417 (Fla. 3d DCA 2018).   As noted by Judge Merryday after reviewing those cases, there is no authority

that would allow Geico, who has no right of private action under the FMVRA because it is not a customer, to subrogate the customer's private right of action for reimbursement. *See* <u>Allstate Ins. Co. v. Auto Glass America, LLC</u>, 418 F. Supp. 3d 1009, 1024–25 (M.D. Fla. 2019).

a. <u>Glassco does not violate the FMVRA's requirements for written repair estimates and written invoices of completed work</u>

In any event, Geico's allegations that Glassco violates the FMVRA by failing to provide the customer with a written estimates (§559.905, Fla. Stat.) or written invoices upon completion of the work (§559.911, Fla. Stat.) are red herrings, because Glassco has no statutory obligation to provide its customers, who will be paying nothing at all for their glass replacement, with a written estimate.  The FMVRA only requires a repair shop to provide customers with a "written repair estimate" when "the cost of the repair work will exceed $100 **to the customer**."  §559.905(1), Fla. Stat.  (emphasis supplied); *see also* <u>Auto Glass America, LLC</u>, 418 F. Supp. 3d at 1024-25.  The FMVRA defines "customer" as the "person who signs the written repair estimate or any other person whom the person designates on the written repair estimate as a person who may authorize repair work." §559.903(1), Fla. Stat. Glassco's customer form, which is essentially the equivalent of a "written estimate," expressly indicates that windshield replacements will be at no cost to the customer.  Glassco has never charged, and never will charge, a customer for a windshield replacement, even when there is no coverage. *See* Ex. 2 at 161:12-162:25; Ex. 3 at 76:2-77:19, 113:12-114:2, and Ex. 2 to Ex. 3, at p. 3. Accordingly, because the "customer" will never have to pay anything for glass repair

15

in view of §627.7288, Fla. Stat., which eliminates the deductible for glass replacement for insureds with comprehensive insurance coverage, the statutory written repair estimate requirement simply does not apply to transactions between Glassco and its customers.  Thus, Geico's allegations relating to Glassco's "failure" to provide written estimates are unsustainable even to demonstrate a technical FMVRA violation, let alone as a RICO predicate act.

          b.  <u>Failure to provide odometer readings is not actionable under RICO</u>

Geico is aware that it is customary in the auto glass industry that repair shops do not provide odometer readings on work orders.  *See* <u>Eberling Depo.</u>, Ex. 4, at 103:23-104:11; *see also* Laughlin Depo., Ex. 5, at 49:7-10.  For purposes of evaluating this "violation" under civil RICO, the failure to state an odometer reading cannot support the cause of action for wire fraud because (1) it involves no deception, and (2) it cannot be the proximate cause of harm to Geico, because (1) Geico routinely pays all claims which do not present odometer readings, and (2) the FMVRA does not establish any reimbursement right (to either the customer or Geico as subrogee) for this violation.  *See* <u>Auto Glass America, LLC</u>, *supra*, 418 F. Supp. 3d at 1024-25.

          c.  <u>Glassco's alleged use of undisclosed independent contractors as sales reps and glass installers is not actionable under civil RICO</u>

Geico alleges that Glassco's use of undisclosed independent contractors as sales reps and installers "divest[s] Glassco of any right to collect comprehensive insurance benefits in connection with the Glass Services claims."  (DE-1, at ¶66).  Geico can cite no authority whatsoever for this misstatement of law.  The delegation of windshield

replacement work to third parties is customary throughout the auto glass replacement industry. There is nothing under federal or state law that forbids sellers of goods and services from delegating performance to a third party. Instead, there is a Florida statute expressly permitting it – § 672.210(a), Fla. Stat. – part of the Uniform Commercial Code governing sales of goods and services in Florida – which specifically provides:

> A party may perform her or his duty through a delegate unless otherwise agreed or unless the other party has a substantial interest in having her or his original promisor perform or control the acts required by the contract. No delegation of performance relieves the party delegating of any duty to perform or any liability for breach.

§672.210(a), Fla. Stat.

For Glassco's use of undisclosed independent contractors to be actionable under civil RICO, Geico would need to establish a §1962(c) violation and an intent to deceive, which hurdles Geico cannot overcome.  First, it is doubtful that Geico is correct that Glassco's use of independent contractors, who are given 1099s rather than W2s, even constitutes a violation of the letter of the FMVRA which prohibits "repair work [to be] subcontracted without the knowledge or consent of the customer."  §559.920(14), Fla. Stat. (emphasis added).  While Geico interchangeably refers to "subcontractors" and "independent contractors," the FMVRA does not define either "subcontractor" or "independent contractor."  In common parlance, however, there is a difference:

> Subcontractor vs Independent contractor is a difference in an employment relationship with a laborer. Independent contractors are employed and paid directly by the employer while subcontractors are employed by an independent contractor and are paid by them.

17

www.upcounsel.com, at "*Subcontractor vs. Independent Contractor:  Everything You Need to Know.*"  Applying this commonly understood distinction, Glassco's use of independent contractors to perform glass installation does not violate the statute in the first instance.  Bailey testified that the sales representatives (called "safety inspectors") and installers are functionally equivalent to "employees," except for the fact that they are responsible for their own payroll taxes.  Bailey hires and fires them.  He trains them and provides detailed direction.  He provides shirts with a Glassco logo. He provides all the materials that they use at the point of sale which explain the legalities and dangers of driving with a damaged windshield. Ex. 3 at 33:13-35:7; 38:16-39:24.  Glassco's installers, similarly, are responsible to represent the Glassco brand and implement Glassco's procedures and policies without deviation.  Ex. 1 at ¶¶ 4, 5, 16, 24; Ex. 3 at 42:19-43:2.  Glassco has primarily two installers who work basically full time for Glassco.  Ex. 3 at 46:17-21.  Glassco orders, pays for, and picks up all the materials needed for the installations, except for the glass, which is purchased by Glassco and picked up by the installer.  Ex. 3 at 114:15-115:15.  These facts all tend to establish that Glassco's safety inspectors and installers are "independent contractors" rather than "subcontractors" as a matter of law.  To the extent that the FMVRA's proscription against undisclosed "subcontractors" serves a public policy of ensuring accountability of the licensed repair shop, Glassco is fully accountable.  Glassco expressly warranties its work and has an impeccable record of fulfilling its warranties. Ex. 2 at 112:4-24; Ex. 3 at 45:23-46:4; 47:4-11; 76:6-12; 97:19-98:3; 114:22-115:1.

While Geico has adduced absolutely **no** evidentiary basis to support its threadbare allegations of "fraud" as to any of the discrete 1773 claims that comprise this lawsuit, Geico stakes this lawsuit on the novel legal theory that the 1773 claims are reimbursable based on the postulation that **all** bills from Glassco are "fraudulent" for the sole reason that the glass replacement was not performed by an employee of Glassco, the billing entity. This blatantly overreaching postulation is the brainchild of Geico's attorneys, as in reality, Geico's claims representatives are well-aware that glass replacement companies typically operate through independent contractors and have never refused to pay a claim on that basis. That the use of independent contractors is of no moment to Geico in its processing of claims is a matter of record. Ex. 5, at 30:23-32:2 (use of independent contractors never considered to be an unlawful practice that would divest a glass replacement company from its right to reimbursement).

Geico stakes this overreaching assertion on the misimpression it fashions, that the FMVRA creates a blanket right to reimbursement for every technical violation of the Act. As has been demonstrated above, this view is without merit and has no support in the express language of the statute.

Even if it were determinable on this evidentiary record that Glassco's use of independent contractors did indeed violate the FMVRA, which it does not, Geico is unable to establish that the failure to disclose such use of independent contractors involved any "intent to deceive" either Geico or its insureds by Bailey, or that Geico was injured by the violation and that the violation was the proximate cause of injury. The record is bereft of any evidence whatsoever implying that a single Glassco

customer had a substantial interest in having a Glassco employee (as opposed to an independent contractor) perform the windshield replacement, or that either a "customer" or Geico itself detrimentally relied on the alleged failure to disclose the use of independent contractors to perform glass installations.[3]

Neither the allegations of the Complaint nor the evidence in Geico's SIU case files (*see* p. 26, *infra*) identifies the manner in which any alleged misrepresentation misled or deceived Geico. Moreover, with knowledge at all times material that Glassco's installations were performed by independent contractors, Geico "short-paid" all 1773 claims for which it now seeks restitution. (DE-1-1). Geico cannot expect for this Court to intervene as a super-accountant for the purpose of recharacterizing amounts which it voluntarily [under]paid as "injury" causally arising from a predicate act under civil RICO. For these reasons, Glassco's alleged use of independent contractors cannot constitute grounds for the imposition of civil RICO liability on Bailey as a matter of law.

> d. <u>Assignment of benefits allegations cannot support a civil RICO action.</u>

Geico also argues that it is entitled to reimbursement because Glassco falsely represents to Geico's insureds that there will be an assignment of benefits to Glassco despite the fact that Glassco is not the actual entity performing the glass replacement,

---

[3]A RICO plaintiff must show that <u>someone</u> relied on the defendant's alleged misrepresentations, and a plaintiff that cannot show detrimental reliance on a fraudulent act will have difficulty demonstrating it was directly injured "by reason of" that fraudulent act. *See e.g.* <u>In re Actimmune Mktg. Litig.</u>, 614 F. Supp. 2d 1037, 1052 (N.D. Cal. 2009) (granting motion to dismiss class action RICO claim, citing <u>Bridge v. Pheonix Bond &Indem. Co.</u>, 553 U.S. 639 (2008).

and because Glassco forged insureds' signatures "to create the false impression that Insureds had authorized the performance of the purported Glass Service." (DE-1, at ¶¶ 65, 90). For a myriad of reasons, these arguments are without merit.[4]

First, there is no statute or regulation which imposes a duty on Glassco to disclose to an insured that insurance benefits are being assigned to Glassco or that the signature of an insured be obtained to verify that the insured understands the meaning of assignment of benefits.  *See* Langford v. Rite Aid of Alabama, Inc., 231 F.3d 1308, 1310 (11th Cir. 2000) (RICO claim dismissed where defendant pharmacy failed to disclose that it charged uninsured customers more for prescription drugs than its insured customers but the defendant was not alleged to have made any actual affirmative misrepresentations).  Further, Geico's corporate representative admitted that an insured is not required to sign an assignment of benefits in order for a glass replacement claim to be processed and a glass vendor to be compensated. Ex. 4, at 47:3-24.  Finally, SIU investigator Laughlin testified that in his field investigations, notwithstanding that most insureds told him that they did not understand the meaning of "assignment of benefits" when they signed the documents, all insureds understood that the glass replacement would be at no cost to themselves and that Geico would pay Glassco for the installation. Ex. 5 at 50:12-56:17.  In view of the foregoing, the record

---

[4] The futility of argument in support of a civil RICO claim that any assignment of benefits by Glassco is invalid because "Glassco" is not the entity actually installing the auto glass has been addressed in section B.1.c., *supra*, inasmuch as the argument is a corollary of the fallacious proposition that Glassco has no entitlement to compensation for duly performed work because it engages independent contractors to perform glass installation.

in support of Geico's allegations of fraudulent assignment of benefits fails to establish a triable issue as to whether Bailey violated §1962(c), and fails to establish that Geico suffered any injury which was proximately caused by the violation.

> **2.** **Category 2:  Alleged acts of deception:  The evidence does not support allegations that Bailey (1) conducted or participated in (2) a RICO enterprise (3) through a pattern of racketeering.**
>
>> a.  <u>"Conduct or participation":  Geico has no evidence against Bailey of any unlawful conduct, let alone evidence of scienter to violate RICO.</u>

Because RICO is predicated on criminal conduct, plaintiffs must plead and establish that each defendant willfully intended to engage in the conduct with actual knowledge of the illegal activities, <u>Friedlob v. Trustees of Alpine Mut. Fund Trust</u>, 905 F. Supp. 843, 859 (D.Colo. 1995).  A defendant acts "willfully" within the meaning of RICO if he acts "deliberately and intentionally and his acts, statements, or omissions are not the result of innocent mistake, negligence, inadvertence or other innocent conduct." <u>In re Colonial Ltd. Partnership Litig.</u>, 854 F.Supp. 64, 106 (D.Conn.1994).  Mere reckless disregard of the truth does not justify a finding of RICO civil liability.  <u>In re Cascade Intern. Securities Litigation</u>, 840 F. Supp. 1558, 1566 (S.D.Fla. 1993). Civil RICO allegations based on mail and wire fraud require proof of scienter. <u>Liquidation Com'n of Banco Intercontinental, S.A. v. Renta</u>, 530 F.3d 1338, 1354 (11th Cir. 2008).

Geico has adduced no evidence whatsoever that establishes any connection between Bailey, the individual Defendant, and any "intent to deceive" in furtherance of the alleged predicate RICO act of wire fraud.  To survive summary judgment, Geico

would need to establish that Bailey, specifically, made affirmative misrepresentations. Statements made by others are not imputable to Bailey in the absence of proof of an agency relationship between the person or entity responsible for the misrepresentation and Bailey.  Sun Life Ass. Co. of Canada (U.S.) v. Imperial Holdings, Inc., 2014 WL 12452450, at *6-7 (S.D.Fla. June 26, 2014).

Geico is simply unable to come forward with any evidence which implicates Bailey in any scheme to deceive in any way.  Faced with the high hurdle of proving a pattern of ongoing criminal activity by Bailey, Geico has not, and cannot, adduce a single witness statement that even mentions Bailey's name.  Given the dearth of probative evidence to support any affirmative misrepresentation from Bailey, what is fatal to Geico's ability to survive summary judgment is that its record contains no evidence to establish an agency relationship between Bailey and the sales reps who purportedly make affirmative misrepresentations.  To the contrary, Geico's Complaint explicitly alleges the contrary, that there is no legal association between the "independent contractors" and Glassco. (DE-1, *passim*).

In John Bailey's combined discovery requests, Geico is asked to identify all evidence to support the allegation that Bailey was directly involved in various types of conduct which Geico alleges to be actionable.  Geico's responses are grossly insufficient to establish any specific conduct by Bailey, let alone scienter, which would enable Geico to survive summary judgment based on civil RICO.  Instead, Geico's effort to create a nexus between Bailey himself and fraudulent conduct is limited to the general response that Bailey is an owner and operator of Glassco.  For example, asked

to identify evidence that demonstrates that Bailey has directed any "forgery," Geico responds:

> GEICO responds that during the relevant time period: (i) John Bailey was at least a 1/3 owner of Glassco, a closely held company; (ii) was Glassco's CFO; (iii) was directly involved in the operation and management of Glassco; (iv) provided financial support to Glassco; and (v) received money from Glassco. In this context, GEICO's claims and investigative files – which have been produced – contain many reports of instances in which GEICO insureds have denied the validity of their purported "signatures" on documents presented in support of Glassco claims, and have in some cases denied that they ever had the underlying work performed in the first instance.

*See* Ex. 6, at Response to Interrogatory 1.

Geico's interrogatory answer betrays its inability to adduce competent probative evidence to establish that Bailey had actual knowledge of illegal activity such as is required to support a claim under civil RICO.  Friedlob, *supra*, 905 F. Supp. at 859. Because Geico's record is devoid of any such evidence against Bailey, Geico is unable to satisfy the first element of a prima facie cause of action for civil RICO: that Bailey's conduct evinces scienter to violate civil RICO. *See* State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC, 278 F. Supp. 3d 1307, 1321-22 (S.D.Fla. 2017) (dismissing claim for fraud against individual owners of orthopedic clinic in the absence of allegations that individuals were involved in a fraudulent scheme other than through their ownership interests in the entity defendant).  For this reason alone, summary judgment as to Count II is due to be granted in favor of Bailey.

b.    Enterprise:  No "distinctiveness" of the enterprise.

A plaintiff asserting a RICO claim must allege the existence of an enterprise, which "must exhibit three basic characteristics:  (1) a common or shared purpose; (2)

some continuity of structure or personnel; and (3) <u>an ascertainable structure distinct from that inherent in a pattern of racketeering</u>.  <u>Catano v. Capuano</u>, 2019 WL 3035752, at *5 (S.D.Fla. 2019) (emphasis added).  To determine whether an alleged enterprise is distinct from a pattern of racketeering, courts apply a test formulated by the Eight Circuit, to wit:  "[i]n assessing whether an alleged enterprise has an ascertainable structure distinct from that inherent in a pattern of racketeering, <u>it is our normal practice to determine if the enterprise would still exist were the predicate acts removed from the equation</u>.  <u>Id.</u>, *quoting* <u>Handeen v. Memaire</u>, 112 F.3d 1139, 1352 (8th Cir. 1997) (emphasis added); *see also* <u>Bank v. Brooklyn Law School</u>, 2000 WL 1692844 at *4 (S.D.N.Y. 2000) (granting motion to dismiss RICO where plaintiff failed to allege that the enterprise existed separate from a pattern of racketeering).

Paragraph 120 of Geico's Complaint alleges, in pertinent part:

> Glassco' business is racketeering activity, inasmuch as **the enterprise exists solely for the purpose of submitting fraudulent charges to Florida automobile insurers.**  The predicate acts of wire fraud are the regular way in which [the other individual defendants] and Bailey operate Glassco, insofar as Glassco was never eligible to bill GEICO or other automobile insurers for the Glass Services, and the acts of wire fraud therefore are essential in order for Glassco to function.

DE-1, at ¶120 (emphasis added).  Applying the <u>Handeen</u> distinctiveness test, Geico's express allegation that Glassco's enterprise would **<u>not</u>** exist but for the predicate acts of racketeering is exposed as fatally flawed in a manner that could not be more explicit. In sum, Geico has unwittingly obviated its ability to satisfy the "distinctive enterprise" element of a cause of action for civil RICO. For this reason alone, the Complaint fails to state a cause of action for civil RICO.

c.  Pattern of Racketeering: No "pattern of racketeering".

By no stretch of the imagination can Geico's evidentiary record establish a "pattern of racketeering."  Upon scouring through documents disclosed by Geico under Rule 26(a), it becomes apparent that Geico's claims are staked on nothing other than the hearsay statements of insureds which are incorporated into approximately 38 Special Investigation Unit ("SIU") case files.   Ex. 5 at 12:2-6.  The statements are compiled by a special investigator from field interview regarding "flagged" claims. Typically, the investigator is tasked to focus on three areas of inquiry:  (1) whether documents were signed; (2) whether the glass was replaced; and (3) if insureds were aware of the assignment of benefits.  (Ex. 5 at 13:23-14:2). In very few instances, the case files also contain hearsay statements from unsatisfied insureds who are quoted stating that bills shown to them by the special investigator reflect labor charges for time expended that was in excess of the actual amount of time expended by the installer.  In its Complaint, Geico relies on these hearsay statements to allege "unnecessary work." Ex. 4 at 27:7-21; *see also* DE-1 at ¶95.   Even considering the evidence in the light most favorable to Geico, Geico's allegations of "unnecessary work" are legal red herrings. To the extent that Geico intends for its claims of "unnecessary work" to be inextricably correlated to those invoices reflecting time expended to be in excess of the time that an installer has actually expended on an installation, as per the testimony of Susan Eberling, id., the evidentiary record is a nullity for purposes of proving "deception." This is because Glassco's invoices are based on National Auto Glass Specifications (NAGS) standards of time billed for particular windshields for particular makes of

26

vehicle.  Ms. Eberling herself expressly admits that Geico accepts and abides by the NAGS industry standards when compensating labor hours expended for windshield replacement.   Ex. 4 at 30:12-31:15 ("We do pay for the applicable labor hours associated with a specific part number that's identified by the [NAGS]."); *see also* Ex. 2 at 121:3-21 (because NAGS sets the amount of hours, it really doesn't matter how much time the installer actually is there).  While sweeping allegations of "unnecessary work" might appear at first blush to be serious, it is noteworthy that Geico's insureds who state that installers are billing excess time indeed have no knowledge whatsoever of the variables upon which NAGS standards are based, including, for example, factors such as travel time involved in procuring the windshield or in discarding replaced glass. Geico's allegations that it is actionable for Glassco to bill for glass replacement time which exceeds actually expended time, especially in view of Geico's admission that the amounts invoiced by Glassco for labor time are 100% in conformity with industry standards, are entirely untenable.

Geico's Complaint alleges two instances of "illusory" work, that is, where Glassco allegedly billed for services which were not performed.  DE-1 at ¶ 95(ii) and (x).  The record is devoid of admissible probative evidence to support even one instance wherein Glassco billed for illusory services (or that Bailey himself had the scienter to bill for illusory services), let alone to support a "pattern" of racketeering.  In view of the stark underwhelming record to support Geico's claim of a "pattern of racketeering" based on "illusory" work, Geico's temerity is nothing short of astonishing.  With full knowledge that there is nothing about Glassco's business model that veridically stands

out as criminally and intentionally "fraudulent," Geico has nevertheless disingenuously subjected Bailey to reputation damage and obloquy in furtherance of its true motive – to leverage the amounts it pays in settlement of Glassco's state court contractually based lawsuits against Geico.  The is precisely the kind of abuse of civil RICO against which the Supreme Court cautioned, and the pernicious impact of Geico's overreaching allegations should not be lost on the Court.

1.  No closed-ended or opened-ended continuity.

Geico also cannot survive summary judgment because the record is bereft of evidence to establish either closed-ended or open-ended continuity, as those terms are construed by the federal courts. A review of Exhibit 1 demonstrates that 1488 of the 1773 claims were submitted between January 2016 and December 2017.  In Jackson v. BellSouth Telecommunications, *supra*, the Eleventh Circuit approvingly cited Efron v. Embassy Suites (P.R.), Inc., 223 F.3d 12 (1st Cir. 2000), to explain that there can be no closed-ended continuity for predicate acts that occurred even over a 21-month period, in view of "the fact that a defendant has been involved in only one scheme with a singular objective and a closed group of targeted victims."  Jackson, 372 F.3d at 1267, *quoting* Efron, 223 F.3d at 18.  This is precisely analogous to the situation *sub judice*. Closed-ended continuity has been routinely held to be a function of not only the substantial duration of time, but also the number and variety of predicate acts, the number of victims, the presence of separate schemes, and the occurrence of distinct injuries.  *See e.g.*, Edmondson & Gallagher v. Alban Towers Tenants Ass'n, 48 F.3d 1260, 1265 (D.C.Cir. 1995) (finding that predicate acts occurring over a three-year

period is insufficient to allege a pattern of racketeering when the complaint alleged a single scheme with a single goal).

While Geico alleges a scheme involving "hundreds of fraudulent and unlawful claims" (DE-1, at ¶ 1), the inescapable fact is that Geico posits only <u>one</u> scheme with <u>one</u> victim, to wit, Geico,[5] for the singular alleged purpose of "seeking reimbursement for phony, unnecessary, unlawful, and otherwise non-reimbursable windshield replacement services." <u>Id.</u> Geico's Complaint would rhetorically reverse-hammer the molehill into a mountain simply by duplicitously characterizing each and every invoice received from Glassco as "fraudulent."  This tactic cannot succeed, just as the Seventh Circuit has fittingly instructed that "[a]lthough the sheer number of predicate acts might appear at first glance to prove continuity, when it comes to a pattern premised on acts of mail or wire fraud, the volume of mailings is not dispositive." <u>U.S. Textiles, Inc. v. Anheuser-Busch Cos.</u>, 911 F.2d 1261, 1266 (7th Cir. 1990).  Consequently, courts do not look favorably on many instances of wire fraud to form a pattern.  <u>Hartz v. Friedman</u>, 919 F.2d 469, 473 (7th Cir. 1990); <i>see also</i> <u>Talbot v. Robert Matthews Distrib. Co.</u>, 951 F.2d 654, 663 (no pattern where single scheme involved multiple acts of mail fraud causing identical injury).

---

[5] Despite Geico's allegation that Glassco's scheme is "committed, more broadly, against the Florida automobile insurance industry," Geico has neither pursued nor adduced any evidence that Glassco's scheme targets other automobile insurers, and there is no evidence of record that any other carrier shares Geico's view of Glassco's business as constituting a pattern of racketeering.

Another significant evidentiary fact which militates against Geico's in asserting open-ended continuity is Geico's policy, which went into effect June 15, 2017, of requiring inspections of all vehicles as a condition precedent to the issuance of authorization to perform the work.  Ex. 1, at ¶ 12 and Ex. A; *see also* Ex. 4, at 17:17-18:12; 23:25-24:24.  Geico's June 15, 2017 policy initiative regarding inspection obviates against any and all open-ended continuing threat that auto glass vendors will perform unnecessary repairs.  Nevertheless, even with knowledge that Geico does not issue work orders to Glassco until verifying the need for auto glass replacement, Geico's Complaint is staked in large part on the frivolous allegations that Geico is subject to an ongoing threat of being billed by Glassco for "unnecessary work."  Geico cannot establish either closed-ended or open-ended continuity to create a triable issue as to Bailey's participation in a "pattern of racketeering".  Therefore, summary judgment as to RICO must be awarded.

**B.**     **Summary judgment on federal RICO conspiracy (Count III).**

Geico's third cause of action asserts a claim against Bailey, individually, alleging that he violated 18 U.S.C. §1962(d) by conspiring with codefendants Wilemon and Victor to conduct and/or participate in a pattern of racketeering. To establish a RICO conspiracy claim under 18 U.S.C. §1962(d), Geico must prove that the defendants objectively manifested, through words or actions, an agreement to participate in the enterprise through the pattern of racketeering activity, not on the agreement to commit the individual predicate acts.  <u>U.S. v. Starrett</u>, 55 F.3d 1525, 1543 (11th Cir. 1995) (citations omitted).

Because the RICO conspiracy claim is based on the same allegations and evidence as the civil RICO claim, and Geico has failed to establish a factual basis for a substantive civil RICO violation, its claim for conspiracy to commit a federal RICO violation must also fail as a matter of law. *See* Jackson, *supra*, 372 F.3d at 1269 (noting that a conspiracy claim must fail where plaintiffs allege defendants conspired to commit conduct which in itself does not constitute a RICO violation).

### C.    Summary judgment on Florida civil RICO statute.

Geico's fifth cause of action charges Bailey and the other individual defendants with violation of §772.103(3), Fla. Stat., the Florida civil RICO statute. A Florida RICO claim is examined in the same way as a federal RICO claim. *See* Ferrell v. Durbin, 311 F. App'x 253, 256 (11th Cir. 2009). Thus, as in a federal civil RICO claim, a Florida RICO claim requires at least two predicate acts to bring conduct within the ambit of racketeering activity. And, likewise, establishing a "pattern of racketeering activity" under the Florida RICO statute also requires a showing of "continuity." Horace-Manassee v. Wells Fargo Bank, N.A., 521 Fed.Appx. 782, 783 (11th Cir. 2013); *see also* Lugo v. State, 845 So. 2d 72, 99 (Fla. 2003) (same). The Eleventh Circuit has applied the same tests for "open-ended" and "close-ended" continuity when evaluating RICO claims under both federal and state law. Daedalus Capital LLC v. Vinecombe, 625 F. App'x 973, 977 (11th Cir. 2015) (plaintiffs unable to show closed-ended continuity where "there is only one victim and only a single scheme with a discrete goal connecting the predicate acts").

In short, there is nothing intrinsic to Geico's Florida civil RICO claim against Bailey that would alter the analysis which applies to the federal RICO claims. Pursuant to that analysis, summary judgment must also be granted for Bailey as to Geico's Florida civil RICO claim.

**D.    Summary judgment on FDUTPA claim**.

Geico's fourth cause of action alleges a FDUTPA claim against Glassco and all individual Defendants. There can be no individual liability under FDUTPA unless and until corporate liability is established. Nationwide Mut. Co. v. Ft. Myers Total Rehab Center, Inc., 657 F. Supp. 2d 1279, 1287 (M.D.Fla. 2009). Once corporate liability is established, Geico would need to show either "(1) that [the individual defendant] participated directly in the practices or acts" or (2) "had authority to control them" or had some knowledge of the practices. Fed. Trade Comm'n v. Life Mgmt. Srevs. /Of Orange Cty, LLC, 350 F. Supp. 3d 1246, 1260 (M.D.Fla. 2018).

For the manifold reasons described in Glassco's companion Motion for Summary Judgment, Geico cannot establish corporate liability as to its fourth cause of action against Glassco; therefore, there can be no individual liability against Bailey. Even if corporate liability were to be regarded as a fact question for trial, however, the record is devoid of any evidence that Bailey "participated directly" or "had authority to control" or "knowledge of" any specific underlying practices which Geico alleges causes Glassco's bills to be unfair or deceptive. Accordingly, summary judgment must be granted in favor of Bailey as to FDUTPA.

**E.    Summary judgment for common law fraud**.

Geico's sixth cause of action is for common law fraud against all Defendants. The elements of common law fraud include: "(1) a false statement of fact; (2) known by the person making the statement to be false at the time it was made; (3) made for the purpose of inducing another to act in reliance thereon; (4) action by the other person in reliance on the correctness of the statement; and (5) resulting damage to the other person." Gandy v. Trans World Computer Tech. Group, 787 So. 2d 116, 118 (Fla. 2d DCA 2001).

With the broadest of brush strokes, Geico rather relies on its conclusory allegation that the fraud consisted of the "submission of hundreds of fraudulent and lawful claims for the purported Glass Services." DE-1 at ¶ 147. Geico expounds only that the claims were fraudulent because Glassco lacked valid assignments of benefits from Geico's insureds, and because the claims falsely represented that Glassco was eligible to receive payment when it was not "because of Defendants' illegal, deceptive, unfair, and manipulative conduct directed at Geico insureds, and pervasive violations of the Repair Act." DE-1 at ¶ 148.

As briefed above, Geico's allegations of fraud are vacuous because they depend on legal conclusions – that Glassco had no right to be paid for invoices for work duly performed – which are patently false. Even if the legal propositions upon which the claim of common law fraud are based were meritorious, which they are not, Geico has utterly failed to come forward with competent probative evidence of a factual basis to support **any**, let alone all, of the elements of a prima facie case for common law fraud.

Moreover, as discussed above, Geico's evidence against Bailey is staked solely on his being a controlling shareholder of a closely-held company, *See* Ex. 6. This evidence is insufficient as a matter of law. <u>Performance Orthopaedics</u>, *supra*, 278 F. Supp. 3d at 1321-22. *See also* <u>Taylor v. Wellington Station Condo. Ass'n. Inc.</u>, 633 So. 2d 43, 45 (Fla. 5th DCA 1994) (officers and stockholders are not liable for corporate acts simply by reason of their official relationship to the corporation; actual fraud would have to be established in order to trigger individual liability). Therefore, summary judgment is due to be granted in favor of Bailey as to Count VI.

**F.**     <u>**Summary judgment for unjust enrichment**</u>.

In Count VII, Geico seeks a refund of all amounts paid to Glassco regardless of whether or not Glassco has performed the work.  Geico bases its unjust enrichment theory on:  (1) statutory violations; and (2) various other conduct it alleges is unjust or inequitable. Neither provides a basis for unjust enrichment.

As discussed above, the FMVRA does not offer an insurer a private cause of action for redress.  Instead, Geico seeks its redress indirectly for the statutory violations under unjust enrichment.  In order for a statutory violation to provide a cause of action for unjust enrichment, the statute must also indicate that the underlying transaction is void or otherwise creates grounds for restitution. <u>Performance Orthopaedics</u>, *supra*, 278 F. Supp. 3d at 1321-22, *citing* <u>Buell</u>, *supra*, 267 Fed.Appx. at 910. Geico cites no provision in the FMVRA voiding a reimbursement claim submitted by non-compliant repair shop.  The best Geico can do is point to portions of the statute that prohibit a

repair shop from enforcing a possessory lien in *quantum meruit* when the repair shop is not in "substantial compliance" with the FMVRA's requirements.  But, this case involves no claim for enforcement of a possessory lien and no allegation by a customer seeking the return of its vehicle. This case involves a right to reimbursement for an assigned insurance claim, for which there is no statutory prohibition implicated.

The other inequities and wrongs Geico alleges all overlook that Glassco has undisputedly given adequate consideration to the customer for the benefit conferred and, as an assignee the insured vis-à-vis Geico.  "When a defendant has given adequate consideration to someone for the benefit conferred, a claim of unjust enrichment fails." Am. Safety Ins. Serv., Inc. v. Griggs, 959 So. 2d 332, 331-32 (Fla. 5th DCA 2007). Geico's insureds were promised a windshield replacement at no charge to them and they obtained the benefit of that bargain in an exchange for an assignment of benefits. Inasmuch as Geico has adduced no evidence to controvert the adequacy of consideration, Geico is unable to establish this element of unjust enrichment. Finally, because it is Glassco, and not Bailey, who is the assignee of the benefits of the claim, Geico is unable to establish that Bailey individually is unjustly enriched by Geico's payment.  Ft. Myers Total Rehab Center, Inc., *supra*.

## CONCLUSION

For the foregoing reasons, final summary judgment is properly granted in favor of Bailey on all Geico claims.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 12, 2021, I filed a true and correct copy of Defendant John Bailey's Motion for Summary Judgment with the CM/ECF portal which would in turn contemporaneously serve all CM/ECF case participants, as follows:  SMITH, GAMBRELL & RUSSELL, LLP, 50 North Laura Street, Suite 2600, Jacksonville, Florida 32202, attn.:  John P. Marino, Esq., jmarino@sgrlaw.com; Lindsey R. Trowell, Esq., ltrowell@sgrlaw.com; and Kristen L. Wenger, Esq., kwenger@sgrlaw.com; RIVKIN RADLER LLP, 626 RXR Plaza, Uniondale, New York 11550, attn.:  Max Gershenoff, Esq., max.gershenoff@rivkin.com; and Yonatan Bernstein, Esq., Yonatan.bernstein@rivkin.com; and AUSTIN & LAURATO, P.A., 1902 West Cass Street, Tampa, Florida 33606, attn.:  Michael V. Laurato, Esq., mlaurato@austinlaurato.com.

*Howard Jerome Levine, Esq.*
Howard Levine, Esq.
Fla. Bar No. 0075670
Law Office of Howard Levine
1560 Lenox Avenue, Suite 307
Miami Beach, FL 33139
Tel:  (305) 534-0403
Fax:  (305) 672-5305
Email:  Hlevineesq@aol.com
Attorneys for John Bailey
Fla. Bar No. 0075670