## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

GOVERNMENT EMPLOYEES
INSURANCE CO., et al.

                                      Case No.: 8:19-cv-01950-KKM-JSS

      Plaintiffs,

           v.

GLASSCO INC., et al.

      Defendants.

_____/

## PLAINTIFFS' MEMORANDUM IN OPPOSITION
## TO BAILEY'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., and GEICO General Insurance Company, (collectively "GEICO" or "Plaintiffs") respectfully submit this memorandum in opposition to the motion for summary judgment by Defendant John Bailey ("Bailey" or "Defendant"). See ECF No. 122.

As discussed below, none of Bailey's conclusory statements or incorrect legal arguments entitle him to summary judgment. To the contrary, some of Bailey's contentions actually weigh in favor of summary judgment for Plaintiffs. Accordingly, Bailey's motion should be denied, and – instead – Plaintiffs' motion for summary judgement should be granted. See ECF Nos. 125-126.

## ARGUMENT

### I.    The Standard on Bailey's Motion for Summary Judgment

As courts in this district have noted:

> Where the non-moving party bears the burden of proof on an issue at trial, the moving party [is not required to] support its motion with affidavits or other similar materials <u>negating</u> the [non-moving party's] claim. … Instead, the movant simply bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any which it believes demonstrate the absence of a genuine issue of material fact. … Once the movant presents evidence that, if not controverted, would entitle the movant to a judgment at trial, the burden shifts to the non-moving party to assert specific facts demonstrating the existence of a genuine issue of fact for trial.

<u>Baker v. Parsons</u>, 2019 U.S. Dist. LEXIS 125454 at * 4 - * 5 (M.D. Fla. 2019)(Internal

quotations and citations omitted)(emphasis in original).

### II.   None of Bailey's Incorrect Legal Arguments and Conclusory Statements Entitle Him to Summary Judgment

To put Bailey's motion in its proper context, it is worthwhile to briefly summarize

GEICO's claims against Defendants Glassco Inc ("Glassco"), Bailey, Jason Wilemon

("Wilemon) and Andrew Victor ("Victor")(collectively the "Defendants") in this action.

GEICO has maintained in this action that Glassco, which is registered in Florida as a

motor vehicle repair shop[1], and its three, one-third owners – Bailey, Wilemon, and

Victor[2] – purported to provide windshield replacement services ("Glass Services") to

GEICO insureds in exchange for assignments of the insureds' comprehensive insurance

---

[1] <u>See</u> Declaration of Susanna Eberling ("Eberling Decl."), ¶ 10.
[2] <u>See</u> Eberling Decl., 6 – "between at least 2014 and October 2019, Bailey owned 34% of Glassco, Wilemon owned 33% of Glassco, and Victor owned 33% of Glassco"; <u>see also</u> Glassco Dep., 66:7-11.

benefits.[3]  Then, the Defendants caused Glassco to bill GEICO for the Glass Services.

As demonstrated by the evidentiary record discussed in GEICO's own pending summary judgment motion (see ECF Nos. 125-126), although Glassco purported to be registered in Florida as a motor vehicle repair shop, the Defendants operated Glassco in pervasive violation of various material provisions of the Florida Motor Vehicle Repair Act (the "Repair Act", Fla. Stat. § 559.901, et seq).[4]

In this context, and as discussed herein, the Repair Act is a remedial statute that is designed to protect consumers and the public. As a result, and as set forth more fully below, numerous courts – including Florida District Courts of Appeal – consistently have held that repair shops which violate the Repair Act are not entitled to collect on their charges, even in quantum meruit.

At bottom, and as demonstrated in GEICO's own summary judgment motion (see ECF Nos. 125-126), the uncontroverted evidence clearly establishes that all of the

---

[3] See Eberling Decl., ¶ 12; Bailey Dep., 28:11-12
[4] Among other things, the record in this action demonstrates that the Defendants: (i) unlawfully subcontracted all of their purported Glass Services to independent contractors without notice to or consent from the relevant GEICO insureds, and then falsely billed GEICO for the purported Glass Services as if they actually had been provided by Glassco or its employees;  (ii) falsely represented to GEICO that they had obtained valid assignments of comprehensive insurance benefits from the insureds, when in fact they had not, because the purported "consideration" for the assignments – namely Glassco's actual performance of the Glass Services – was illusory, considering that Glassco subcontracted  the Glass Services to independent contractors without notice to, or consent from, the insureds; (iii) in many cases, falsely represented to GEICO that they had obtained valid assignments of comprehensive insurance benefits from the GEICO insureds, when in fact they had not, because the insureds' signatures had been forged on the purported assignments of benefits; (iv) never complied with the estimate waiver and written estimate provisions of the Repair Act, which are designed to ensure that motor vehicle repair shops provide advance notice of the amounts they intend to charge for repairs such as Glass Services; and (v) never complied with the invoice provisions of the Repair Act, which are designed to ensure that repair shop customers receive – among other things – actual notice of the amounts charged for repairs, and the basis for the charges.

billing for purported Glass Services that the Defendants submitted through Glassco to GEICO falsely represented that Glassco was entitled to payment on the charges, when in fact Glassco was never entitled to payment because it lacked valid assignments of comprehensive insurance benefits from GEICO insureds, and because it operated in violation of various material provisions of the Repair Act.

Against that backdrop, GEICO asserts claims against Bailey for violation of the civil RICO statutes (18 U.S.C. § 1962(c) and (d), violation of the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA", Fla. Stat. § 501.201 et. seq.), violation of the Florida Civil Remedies for Criminal Practices Act (the "FCRCPA", Fla. Stat. § 772.103(3)), common law fraud, and unjust enrichment. Through these claims, GEICO seeks to recover the more than $700,000.00 that it has paid to Glassco pursuant to the Defendants' unlawful claims for Glass Services.

## A. Bailey is Not Entitled to Summary Judgment on His Conclusory "Anti-SLAPP" Claim

Bailey begins his argument by purporting to incorporate a "special" motion for summary judgment to the effect that the present lawsuit somehow violates Florida's anti-SLAPP statute, Fla. Stat. § 768.295. See ECF No. 122, pp. 1-5. Bailey's "special" motion is conclusory, meritless, and should be denied.

As Bailey notes, Florida's anti-SLAPP statute prohibits a person from filing a suit that is: (a) "without merit" and (b) "primarily" because the person against whom the suit was filed "exercised the constitutional right of free speech in connection with a public issue...." See ECF No. 122, p. 2, citing Bongino v. Daily Beast Co., LLC,

4

2020 U.S. Dist. LEXIS 208381 at * 19 (S.D. Fla. 2020); <u>see also</u> Fla. Stat. § 768.295(3). Under the anti-SLAPP statute, the initial burden is on the SLAPP defendant to set forth a <u>prima facie</u> case that the statute applies. Then, the burden shifts to the claimant to demonstrate that the claims have merit, and are not primarily based on the exercise of First Amendment rights in connection with a public issue. <u>See</u>, <u>e.g.</u>, <u>Gundel v. AV Homes, Inc.</u>, 264 So. 3d 304, 314 (Fla. 2d DCA 2019).

In the present case, however, Bailey has not demonstrated – and cannot demonstrate – that either of the two requirements for an anti-SLAPP violation is satisfied.

As to the first requirement under the anti-SLAPP statute, for all the reasons set forth in GEICO's own motion for summary judgment (<u>see</u> ECF Nos. 125 and 126), and for the reasons that are set forth herein, GEICO's suit <u>does</u> have merit. As a result, Bailey has not satisfied the first requirement under the statute.[5]

Moreover, Bailey has not demonstrated that the second factor required under the anti-SLAPP statute is met, either. In particular, Bailey offers <u>zero</u> support for his conclusory contention that this suit was filed because Bailey, Glassco, or anyone else "exercised the constitutional right of free speech in connection with a public issue". <u>See</u> ECF No. 122, p. 3. In fact, Bailey does not even manage to identify any "public issue" on which he or Glassco (or anyone) exercised any right of "free speech". Nor,

---

[5] Bailey appears to contend that GEICO's claims in this action lack merit because GEICO has settled 53 out of 1773 of Glassco's allegedly-fraudulent claims after commencing the present action. <u>See</u> ECF No. 122, pp. 3-4. However, Bailey provides no information regarding the circumstances surrounding the settlements, nor does Bailey explain how or why GEICO's settlement of a very small fraction of Glassco's outstanding charges demonstrates that GEICO's claims in this case lack merit.

by extension, does Bailey demonstrate – as a matter of law, no less – how this lawsuit <u>actually</u> interfered with anyone's unidentified "speech" on any unidentified "public issue".

In fact – and to the extent that they can be deciphered at all – Bailey's "anti-SLAPP" claims seem to be based entirely on the notion that: (i) Glassco has filed collections lawsuits against GEICO in Florida county court, seeking to collect on some of its outstanding claims for Glass Services; (ii) GEICO's commencement of this action somehow constitutes an improper attempt to "leverage settlement in the state court cases"; and therefore (iii) GEICO's commencement of this action somehow violates the anti-SLAPP statute. See ECF No. 122, p.4. Bailey is incorrect. Though Bailey contends that this lawsuit is somehow improper, numerous federal courts (including this Court) – adjudicating insurance fraud actions just like this one – have sustained identical claims by plaintiff-insurers, seeking declarations that a defendant service provider is not entitled to collect on its outstanding insurance billing because of some fraudulent or unlawful activity. See, e.g., ECF No. 59, p.8 (denying Defendants' motion to dismiss, noting that "a dispute about the defendants' entitlement to payment for pending claims presents an actual case or controversy under Article III."). [6] Accordingly, this Court should deny Bailey's motion for summary Judgment under Florida's anti-SLAPP statute.[7]

---

[6] See also Gov't Emples. Ins. Co. v. Martineau, M.D. Fla. Case No. 8:19-cv-01382-MSS-SPF, ECF No. 29, pp. 10-11 (denying defendants' motion to dismiss in very similar case, noting that "courts have routinely allowed insurer-plaintiffs to pursue similar forms of declaratory relief".)

[7] Bailey also contends – in conclusory manner – that GEICO improperly failed to identify Glassco's county court collections cases as being "related" to the present case. See ECF No. 122, p. 4. Bailey is

**B.    Bailey is Not Entitled to Summary Judgment on Any of GEICO's Claims**

Bailey advances two main arguments to support his contention that he is entitled to summary judgment on GEICO's claims. In particular, Bailey argues he is entitled to summary judgment – on each of GEICO's causes of action – because: (i) supposedly, nothing in the Repair Act establishes that a repair shop not in compliance with the Repair Act forfeits its right to compensation (see ECF No. 122, p.14); and (ii) contrary to GEICO's claims, Glassco supposedly did obtain valid assignment of benefits from GEICO insureds, and in any case did not even need to obtain a valid assignment of benefits in order to submit Glass Services claims to GEICO (see ECF No. 122, p.21).

As discussed below, none of these arguments has any merit.

**1.    As a Matter of Law, Repair Shops that Violate the Repair Act May <u>Not</u> Collect on Their Charges, Even in <u>Quantum</u> Meruit**

While Bailey is correct that the Repair Act <u>itself</u> does not specify whether a repair shop that violates the Repair Act forfeits its right to compensation, <u>every Florida court that has considered this issue has ruled that a Repair Shop that violates the</u>

---

incorrect, considering that a service provider's county court insurance collections suits are not truly related to a plaintiff-insurer's federal insurance fraud and racketeering action. See, e.g., State Farm Mut. Auto. Ins. Co. v. Physicians Group of Sarasota, L.L.C., 9 F. Supp. 3d 1303, 1309 (M.D. Fla. 2014)(in similar federal insurance fraud action, rejecting abstention in favor of defendants' state court collections lawsuits, where the legal issues did not overlap, even though both the federal and state actions involved disputes between some of the parties regarding insurance charges); see also United Auto. Ins. Co. v. Fla. Wellness & Rehab. Ctr., 2009 U.S. Dist. LEXIS 141145 at * 22 (S.D. Fla. 2009)(rejecting argument that defendants' state court insurance collections lawsuits involved substantially the same issues as plaintiffs' federal insurance fraud action, where – as in this case – it did not appear that the state court actions "raised the type of Civil RICO fraud allegations presented in the Amended Complaint, and thus the Court cannot determine that the issues in the federal and state proceedings are substantially the same.")

Repair Act *does* forfeit its right to compensation. See, e.g., Osteen v. Morris, 481 So. 2d 1287 (Fla. 5th DCA 1986)(holding that – because the repair shop had failed to comply with the Repair Act – it was not entitled to recover the remaining balance on its repair bill, even in quantum meruit, and it also had to refund the customer's partial payment); Gonzalez v. Tremont Body & Towing, Inc., 483 So. 2d 503 (Fla. 3d DCA 1986)(same);1616 Sunrise Motors, Inc. v. A-Leet Leasing of Florida, 547 So. 2d 267 (Fla. 4th DCA 1989)(affirming trial court decision denying recovery to repair shop that violated the Repair Act's prohibition against making or charging for repairs without the express or implied authorization of the customer); Perez-Priego v. Bayside Carburetor & Ignition Corp., 633 So. 2d 1190, 1191 (Fla. 5th DCA 1994)("Petitioner is correct that, under Florida law, a consumer who is not given a written estimate [in violation of the Repair Act] may recover the amount of the repair bill and still retain the benefit of the repairs."); Reynolds v. Gorilla Motors, Inc., 11 Fla. L. Weekly Supp. 1047a (Fla. 15th Jud. Cir. August 31, 2004)("Under Florida law, a repair shop that fails to comply with Florida Statute 559.901 et seq. may not recover or retain the amount of the repair bill, despite the fact that the customer obtains a benefit and the overall result appears unjust."); Git R Done Concrete Cutting, LLC v. Swinsons Car Care Center, Inc., 22 Fla. L. Weekly Supp. 226a (Fla. 9th Jud. Cir. July 30, 2014)(repair shop that failed to comply with the Repair Act was not entitled to recover on its charges); Safari Tours, Inc. v. Pasco, 255 So. 3d 415, 417 (Fla. 3d DCA 2018)(repair shop that failed to comply with Repair Act was not entitled to recover on its charges).

Bailey attempts to distinguish some of these authorities by noting that – in many

of these cases – the repair shop forfeited its right to collect from the "customer", but GEICO supposedly is not a "customer" as that term is defined in the Repair Act. See ECF No. 122, pp. 14-15.[8] Tellingly, however, while Bailey is obviously familiar with all of the Florida authorities regarding the Repair Act, he somehow avoids mentioning – much less addressing – 1616 Sunrise Motors, Inc., supra, a District Court of Appeals decision that completely refutes his argument.[9]

In 1616 Sunrise Motors, Inc., a car rental agency leased an automobile to a driver. 547 So. 2d at 268. There was an accident, and the automobile was towed to a repair shop, evidently at the request of the driver/lessee. Id. Without obtaining the verbal or written authorization of the driver/lessee, the repair shop repaired the vehicle. Id. Thereafter, the driver/lessee failed to respond to the repair shop's requests to pay for the repair and retrieve the vehicle. Id. As a result, the repair shop filed suit against the car rental agency/lessor to recover the costs of the repairs and vehicle storage. Id. However, the trial court found that the repair shop was precluded from recovery, because it had violated Fla. Stat. § 559.920(2) by performing repairs without

---

[8] The Repair Act defines "customer" as "the person who signs the written repair estimate or any other person whom the person who signs the written repair estimate designates on the written repair estimate as a person who may authorize repair work." See Fla. Stat.§ 559.903(1).

[9] Bailey also cites to Judge Merryday's decision in this case. See ECF No. 11, pp.14 citing ECF No. 59. In particular, Bailey contends that this decision supports his argument that, since a plaintiff-insurer is not a "customer" under the Repair Act, it cannot assert fraud-based or unjust enrichment claims to recover payments made to a repair shop based on the fact that the shop misrepresented its compliance with the Repair Act and entitlement to payment, and that Judge Merryday based this supposed decision on the Osteen, Gonzalez, and Safari decisions. See ECF No. 123, pp. 14. However, this argument mischaracterizes Judge Merryday's decision. In fact, Judge Merryday did not resolve this issue, and instead deferred this issue "until summary judgment and the presentation of more considered argument". See ECF No. 59, p.18.

the authorization of the "customer" – i.e., the driver/lessee. Id. On appeal, the repair shop – much like the Defendants herein – argued that: (i) the repair shop's violation of the Repair Act only precluded the shop from holding the "customer" liable for the repairs; (ii) the car rental agency/lessor did not meet the statutory definition of "customer"; and therefore (iii) the repair shop could recover the costs of the repair from the car rental agency/lessor, even if it could not recover the costs of the repair from the driver/lessee or "customer". Id. However, the District Court of Appeals rejected this argument, holding that:

> under the circumstances of this case, the requirements of the [Repair Act] cannot be avoided by permitting recovery by the errant repair shop against an owner-lessor who may *not* be a "customer" within the definition portion of the Act. The repair transaction involved herein is one that is covered by the Act. A holding to the contrary would undermine the purposes of the Act.

Id. (emphasis in original); see also Raymar Constr. Co., supra (reversing trial court, which improperly had imposed a narrow construction on the term "consumer transaction" in the Repair Act, and noting that "[i]n so holding we follow the general principle that remedial statutes are entitled to a liberal construction so as to advance the remedy provided where it is consistent with the legislative purpose."); Results Real Estate, Inc. v. Lazy Days R.V. Center, Inc., 505 So.2d 587 (Fla. 2d DCA 1987)(holding that trial court construed consumer statute too narrowly by finding corporations ineligible for consumer protection).

In this context, and as the Court is aware, if the Florida Supreme Court has not spoken on an issue, Florida District Court of Appeals decisions control absent persuasive indication that the Florida Supreme Court would rule otherwise. See, e.g.,

Hilson v. GEICO Gen. Ins. Co., 2016 U.S. Dist. LEXIS 79764 fn. 5 (M.D. Fla. 2016);

Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co., 250 F. Supp. 2d 1357, fn. 3

(M.D. Fla. 2003). In the present case, the Florida Supreme Court has never ruled on

the proper construction of the Repair Act. Accordingly, the District Court of Appeals'

on-point decisions in 1616 Sunrise Motors, Inc. and Raymar Constr. Co. should

control.

Applying 1616 Sunrise Motors, Inc., Raymar Constr. Co., and the many other

authorities cited above, it is clear that – as a matter of law – a repair shop that operates

in violation of the Repair Act may not recover on its charges, whether or not the

recovery is sought directly from a customer, from a customer's insurer, or from anyone

else. "A holding to the contrary would undermine the purposes of the Act." 1616

Sunrise Motors, Inc., supra.

Even so, Bailey cites to Allstate Ins. Co. v. Auto Glass America, LLC, 418 F.

Supp. 3d 1009, 1024-1025 (M.D.Fla. 2019) in his brief to argue that: (i) an insurer is

not a "customer" under the Repair Act; and therefore (ii) a repair shop that violates

the Repair Act may collect from a customer's insurer, even if it is barred from

collecting from the customer, itself. See ECF No. 122, pp. 15, 16. Though the court in

Auto Glass America found that the Repair Act applied to "customers", and that an

insurer was not a "customer" under the Repair Act, the court also explicitly

acknowledged that it had reached its decision because neither party in that case had

provided "helpful binding legal authority" on the question. See id.; see also Allstate

Ins. Co. v. Auto Glass America at ECF Nos. 22 and 29. In particular, none of the

parties in the <u>Auto Glass America</u> case had presented the District Court of Appeals' decision in <u>1616 Sunrise Motors, Inc.</u> to the court. <u>Id</u>. Consequently, it appears that the <u>Auto Glass America</u> court was <u>unaware</u> of the District Court of Appeals' decision in <u>1616 Sunrise Motors, Inc.</u>, which is controlling. As discussed above, it is evident from the <u>1616 Sunrise Motors, Inc.</u> decision – which is definitely "helpful binding legal authority" – that a repair shop that violates the Repair Act cannot recover on its charges, whether it is seeking to recover from a "customer" or anyone else.[10]

Accordingly – and contrary to Bailey's contentions – it is clear that a repair shop that operates in violation of the Repair Act may not collect on its charges, from anyone, even in <u>quantum</u> <u>meruit</u>. "A holding to the contrary would undermine the purposes of the Act." <u>1616 Sunrise Motors, Inc.</u>, <u>supra</u>.

## 2.     The Facts in the Record Demonstrate That the Defendants Operated Glassco in Pervasive Violation of Various Material Provisions of the Repair Act

It likewise is clear from the record in this action that the Defendants operated Glassco in pervasive violation of numerous, material provisions of the Repair Act.

### (i)     The Violations of the Written Estimate Provisions of the Repair Act– Fla. Stat. § 559.905(1) and Fla. Stat. § 559.905(2).

First, the Defendants violated the Repair Act's written estimate waiver provision, which requires that if the cost of a replacement will exceed $100.00, the repair shop is required to provide a specific disclosure, in a specific form, advising the customer of their right to receive or waive a written estimate. <u>See</u> Fla. Stat. §

---

[10] Notably, Judge Merryday <u>did not</u> adopt the court's ruling from <u>Auto Glass America.</u>

559.905(2). In the present case, though the cost of the Glass Services billed through Glassco always exceeded $100.00, the Defendants never provided any written notices to GEICO's insureds or GEICO in the form required by Fla. Stat. § 559.905(2). See Eberling Decl., ¶ ¶ 19, 21. Notably, Bailey does not address this issue in his motion. Nor did the Defendants ever provide GEICO or its insureds with any written estimate setting forth the estimated cost of the proposed repairs, despite the fact that the cost of the Glass Services always exceeded $100.00 – in violation of Fla. Stat. § 559.905(1). See Eberling Decl., ¶ 24; Glassco Dep., 80:23-25; 81:1; Bailey Dep., 125:16-22; 140:18-21.

Even so, in his motion for summary judgment, Bailey contends that the written estimate provisions of the Repair Act do not apply because GEICO is not a "customer", and this portion of the Repair Act only applies when the cost of repair work "will exceed $100 to the customer" (i.e the insured), which "never" occurs. See ECF No. 122, p.15. The Court should reject this argument for two reasons. First, as discussed above, Florida District Courts of Appeal have rejected these same kinds of attempts to circumvent the remedial purpose of the Repair Act though an improperly narrow construction of its terms. See 1616 Sunrise Motors, Inc., supra; Raymar Constr. Co., supra; Results Real Estate, Inc. v. Lazy Days R.V. Center, Inc., 505 So.2d 587 (Fla. 2d DCA 1987)(holding that trial court construed consumer statute too narrowly by finding corporations ineligible for consumer protection). Second, and contrary to Bailey's claims that the customer was "never" responsible for the cost of the Glass Services, in every claim there was always the possibility that the "customer"

would be responsible for the cost of the Glass Services. In particular, Glassco required GEICO insureds to sign forms stating that the insureds <u>would</u> be responsible to pay for any charges that their insurers did not pay. See Bailey Dep., 80:13-18; Eberling Decl., ¶ 25.[11]

### (ii) The Violations of the Written Invoice Requirement – Fla. Stat. § 559.911

What is more, Glassco also violated the invoice requirements of Fla. Stat. § 559.911. Specifically, upon the completion of the purported Glass Services, none of the Defendants nor any other person ever provided any GEICO insureds with any invoices for the Glass Services. See Eberling Decl., ¶ 26; Glassco Dep., 92:19-20; Bailey Dep., 114: 7-11; 147:20-22. Nor – by extension – did the Defendants or anyone else ever provide any GEICO insureds with invoices in the form required by the Repair Act. See Eberling Decl., ¶ 27.[12] The Defendants do not dispute these facts, and instead advance a defective legal argument to the effect that – because GEICO insureds supposedly

---

[11] Bailey falsely posits that "Glassco's customer form [is] essentially the equivalent of a written estimate" See ECF No. 122, p.16. This is incorrect. The only "estimate" provided on the customer form was language indicating that there was "no cost to the customer". See Eberling Decl., ¶¶ 22-25. This is not an estimate at all – let alone an estimate in compliance with the Repair Act. Moreover, as noted above, the customer form itself provided that the insured would be responsible for costs in all instances if the insurance company failed to make payment. See Eberling Decl., ¶¶ 22-25.

[12] Containing – among other things – an "itemized description of all labor, parts, and merchandise supplied and the costs thereof, indicating what is supplied to the customer without cost or at a reduced cost because of a shop or manufacturer's warranty", a "statement identifying any replacement part as being used, rebuilt, or reconditioned, as the case may be", a "statement indicating what, if anything, is guaranteed in connection with the repair work". See Eberling Decl., ¶ 27; see also Fla. Stat. § 559.911. Moreover, Glassco also permitted insureds to sign work orders that did not state the automobiles' odometer readings, in further violation of the Repair Act. See Eberling Decl., ¶ 28; Fla. Stat. § 559.920 (making it unlawful for any repair shop to "[c]ause or allow a customer to sign any work order that does not state ... the automobile's odometer reading at the time of repair ... ."). In his motion papers, Bailey appears to acknowledge that Glassco failed to comply with Section 559.920(11), but contends – in substance – that "everyone else does it", and so it should not matter. See ECF No. 122, pp. 16. GEICO respectfully submits that the Court should reject this argument. See, e.g., State v. Goode, supra

14

assigned their insurance benefits to Glassco, and the insureds supposedly would never owe Glassco any money – Glassco was not required to provide the insureds with invoices for the Glass Services as <u>explicitly</u> required by the Repair Act. <u>See</u> ECF No.123, p.17; <u>see also</u> Fla. Stat. § 559.911. As the Court may note, Glassco does not advance any actual authority to support this proposition, which is at odds with the plain language of Section 559.911. In fact, if the Court were to credit this argument, it would nullify the Repair Act's written invoice provision. <u>See</u>, <u>e.g.</u>, <u>State v. Goode</u>, 830 So. 2d 817, 824 ("[A] basic rule of statutory construction provides that the Legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless.")

**(iii)   The Unlawful Subcontracting of Glass Services Without the Knowledge or Consent of GEICO or GEICO's Insureds – Fla. Stat. § 559.920(14)**

The Repair Act also makes it unlawful for a repair shop to have repair work subcontracted without notice to, and consent from, the customer. <u>See</u> Fla. Stat. § 559.920(14). There are obviously sound public policy reasons for this remedial provision. Even so, it is clear from the record in this action that Glassco subcontracted all of its purported Glass Services to independent contractors. <u>See</u> Bailey Dep., 29:12-16, 24-25; 30:1-4; Wilemon Dep., 38:16-20; Victor Dep., 48:23-25; <u>see also</u> ECF No. 122, p. 18 (admitting that the Glass Services billed through Glassco to GEICO were performed by independent contractors).[13] It is likewise clear from the record in this

---

[13] Lest there be any doubt about this, the record clearly establishes that the independent contractors were completely unaffiliated with Glassco. For instance, the independent contractor/installers typically had their <u>own</u> separate windshield repair/replacement shops – and were usually not even

action that Glassco had contact information for the GEICO insureds, and obviously had the ability to advise the insureds that it intended to subcontract the Glass Services to independent contractors, and to obtain the insureds' consent to the subcontracting. See Glassco Dep., 83:16-21; Bailey Dep., 97:16-23; Eberling Decl., ¶ 20.

Nonetheless, the Defendants did not obtain this consent from the insureds. To the contrary, the Defendants specifically instructed the independent contractors to tell the insureds that they worked for Glassco, and not to tell the insureds they were in fact independent contractors. See Glassco Dep., 102:18-20; Wilemon Dep., 41:23-25; 42:1-9; 19-23; Victor Dep., 82: 19-25. What is more, the independent contractors followed this instruction, and – at least in the instances where Wilemon and Bailey were present for the installations – indeed told the insureds that they worked for Glassco, and did not mention they were independent contractors.[14] See Wilemon Dep., 43: 6-15; Victor Dep., 83:11-16. In keeping with the fact that the insureds had no idea that the Glass Services

---

paid by Glassco, rather they were paid by the company the installer actually worked for – used their own equipment and vehicles when they purported to perform the Glass Services, did not receive any training from Glassco, did not work for Glassco for any significant amount of time, and did not have a fixed schedule with Glassco; rather they worked when needed. See Eberling Decl., ¶¶ 17, 18; Glassco Dep., 45:19-22; 61: 2-4; 107: 15; 108:12-20; Bailey Dep., 28:22-25; 34:15-16 36:23-25; 38:1-4; 60:20-23; 62:15-19; 63:4-6;82: 9-13; 68:2-5; 82: 9-13. Moreover, Glassco itself acknowledged in its general ledgers that independent contractors performed the Glass Services (repeatedly noting in the memo column of its general ledgers reflecting payments made for an installer expense, "[i]installation of Windshield by Independent Contractor"). See Exhibits D and E to Eberling Declaration. Lastly, and underscoring the fact that there was no affiliation between Glassco and the independent contractor installers, Bailey, the CEO of Glassco, as recently as March 2020, could not name a single Glassco installer. See Bailey Dep., 62:12-14.

[14] Both Timothy Wagner and Damian Surface testified that when they would perform Glass Services that were billed through Glassco, they would tell the insureds that they worked for Glassco and – as far as they could recall – did not mention that they were independent contractors to whom Glassco had subcontracted the Glass Services. See Surface Dep., 31:11-12; 34:24-25; 35:1-15; Wagner Dep., 19:13-16; 20:7-17.

had been subcontracted to independent contractors, not only did the independent contractors tell the insureds that they worked for Glassco, they also wore clothing – including t-shirts and hats – with Glassco insignia on it, further actively concealing from the insureds that they were independent contractors, completely unaffiliated with Glassco. See Glassco Dep., 102: 6-15; Bailey Dep., 95: 6-19; Wilemon Depo., 54:19-25; 55:1-4.

Bailey attempts to evade the Repair Act's remedial anti-subcontracting provisions by advancing a "red herring" argument to the effect that "[t]here is nothing under federal or state law that forbids sellers of goods and services from delegating performance to a third party". See ECF No. 122, p.17. That may be so, but the actual issue here is whether a repair shop may subcontract repair work without providing notice to, or obtaining consent from, the customer. The Repair Act clearly forbids such conduct. See Fla. Stat. § 559.920(14).

Glassco also tries to evade the Repair Act's anti-subcontracting provisions with a tortured semantic argument to the effect that: (i) the Repair Act only provides that repair work cannot be "subcontracted" without notice or consent; (ii) though all of the Glass Services billed through Glassco admittedly were performed by "independent contractors", the "independent contractors" somehow were not "subcontractors"; and therefore: (iii) the Repair Act's anti-subcontracting provisions supposedly do not apply. See ECF No. 122, pp.17-18. In keeping with the meritless nature of this argument, the only "authority" proffered by Glassco is a citation to an article called "Subcontractor vs. Independent Contractor: Everything You Need to Know" on a

website called "upcounsel.com". See id.[15] In fact, Black's Law Dictionary defines "subcontractor" as "[s]omeone who is awarded a portion of an existing contract by a contractor", and defines "contractor" as "one who contracts to do work for or supply goods to another".[16]

In this context, when Glassco outsourced the actual performance of the Glass Services to third-party independent contractors – who used their own equipment and vehicles to perform the Glass Services, received no training from Glassco, typically had their own repair shops, and were usually not even paid by Glassco – it obviously was "subcontracting" the repair work.[17] Accordingly, for all the reasons set forth herein, Glassco pervasively failed to comply with various material provisions of the Repair Act when providing Glass Services, rendering the purported Glass Services non-compensable. Consequently, it is GEICO – and not Glassco – that is entitled to summary judgment. See ECF No. 125.

**3. The Defendants Did Not Obtain Valid Assignments of Insurance Benefits from GEICO Insureds.**

---

[15] According to its website, "upcounsel.com" appears to be a legal staffing or networking website that connects attorneys and prospective clients.

[16] Similarly, according to the Bouvier Law Dictionary, a "sub-contractor is any person or entity contracted by a contractor to perform work on the primary contract for a job or services to another". For its part, the Merriam-Webster dictionary defines "subcontractor" as "an individual or business firm contracting to perform part or all of another's contract".

[17] Bailey cites to the deposition testimony of Chris Laughlin, a GEICO investigator, in an attempt to make it appear as if GEICO does not care if the Defendants unlawfully subcontracted the Glass Services without notice to or consent from GEICO's insureds or GEICO. See ECF No. 122, p.19. However, Bailey completely mischaracterizes Mr. Laughlin's testimony. Contrary to Bailey's assertion, Mr. Laughlin simply testified that he would look into whether a repair shop was using subcontractors and would then forward that information to someone else to make the decision about what to do about it. See Laughlin Dep., 32:23-25; 33: 1-9.

18

Additionally, the facts in the record demonstrate that Glassco lacked valid assignments of benefits from the GEICO insureds, and therefore never was entitled to collect on Glassco's claims for Glass Services in the first place. In particular, to the extent that the GEICO insureds ever purported to assign their insurance benefits to Glassco, the assignments were made – <u>explicitly</u> – in consideration for Glass Services that were to be "performed by" <u>Glassco</u>, not by some third-party independent contractor with no oversight by Glassco. <u>See</u> Eberling Decl., ¶ 13; Bailey Dep., 104:23-25; 105:1-7; 118:8-11; 126:17-24.

Bailey appears to contend that it does not matter whether Glassco had valid assignments of benefits (<u>i.e.</u>, assignments supported by proper consideration and mutual assent), because "there is no statute or regulation that imposes a duty on Glassco to disclose to an insured that insurance benefits are being assigned to Glassco or that the signature of an insured be obtained to verify that the insured understands the meaning of assignment of benefits". <u>See</u> ECF No. 122, p. 21. However, Bailey does not cite to any authority which actually supports his disturbing contention that, somehow, an assignment can be valid without proper consideration and mutual assent.[18] If anything, the contention underscores the deceptive and unfair nature of Glassco's business operations.

In fact, the law is clear that, without a valid assignment supported by

---

[18] The one case Bailey <u>does</u> cite to – <u>Langford v. Rite Aid of Alabama, Inc.</u>, 231 F.3d 1308, 1310 (11th Cir. 2000) – is inapposite. <u>See</u> ECF No. 48, p.15. In fact, it is completely unclear how – from this case – Bailey reached the conclusion that Glassco somehow did not need to obtain a valid assignment of benefits, with proper consideration and mutual assent.

consideration and mutual assent, there is no contract and Glassco has no right to collect on its claims for the purported Glass Services. See, e.g., Rubinstein v. Keshet Inter Vivos Trust, 2018 U.S. Dist. LEXIS 185666 at * 33 (S.D. Fla. 2018)(noting that, under Florida law, an assignment is considered a contract and must be supported by consideration to be valid); Petersen v. Am. Gen. Life Ins. Co., 2016 U.S. Dist. LEXIS 202728 at * 8 (M.D. Fla. 2016)(granting summary judgment for defendant on breach of contract claim, where "[n]o meeting of the minds took place, as required by black letter contract law."); University Creek Assocs. II, Ltd. v. Boston Am. Fin. Group, Inc., 100 F. Supp. 2d 1337, 1340 (S.D. Fla. 1998)("A binding and enforceable contract requires mutual assent to certain and definite contractual terms; without a meeting of the minds on all of the essential terms, no enforceable contract arises.")(Internal quotations and citation omitted).[19]

## 4. Bailey is Not Entitled to Summary Judgment on Either of GEICO's Civil RICO Claims

Bailey first seeks summary judgment on GEICO's claim against him for violation of the civil RICO statute (18 U.S.C. § 1962(c)). See ECF No. 122, pp. 11-30. Bailey

---

[19] In an attempt to show that Glassco did not need to obtain a valid assignment of benefits from GEICO insureds in order to bill GEICO for Glass Services, Bailey points to the testimony of a GEICO employee named Susanna Eberling, in which Ms. Eberling noted that GEICO does not require a signed assignment of benefits in order to process a Glass Services claim. See ECF No. 122, pp.21. This is misleading. Ms. Eberling testified that GEICO would check to see if its insured had signed a work order before paying a Glass Services claim, but would not require submission of a signed assignment of benefits in order to process a claim. See Eberling Dep., 47:11-13; 90:1-15; 91:1-9. However, whether GEICO requires submission of a signed assignment of benefits as a condition precedent to processing a claim is a wholly different matter than whether Glassco needs to actually obtain an assignment of benefits from an insured in order to have standing to make the claim to the insurer in the first place. Even Bailey acknowledges that repair shops require assignments of benefits in order to submit insurance claims to insurers. See ECF No. 122, p.6.

begins his argument by contending he is entitled to summary judgment because GEICO has not established that Bailey committed wire fraud, which is the predicate act of racketeering activity alleged by GEICO in support of its RICO claim. See ECF No.122, pp. 12-13. To support this mistaken argument, Bailey contends that "wire fraud will not reach conduct that is not deceptive", and then erroneously concludes that Glassco's violations of the Repair Act were mere "technical" violations, and therefore were "non-deceptive". Id

Bailey is incorrect. Numerous federal courts – including in Gov't Emples. Ins. Co. v. Martineau, supra, ECF No. 29, pp. 16-17, a highly-analogous glass services fraud case – have rejected identical arguments to the effect that a plaintiff-insurer was improperly trying to predicate fraud-based claims on supposedly "technical" violations of state law. ("GEICO's theory of the case is not that Defendants' violations of the Repair Act, standing alone, caused it to suffer financial losses. The Amended Complaint makes clear that GEICO's alleged injuries stem from Defendants' alleged submission of fraudulent claims seeking payment for non-reimbursable services. … On GEICO's theory, Defendants' alleged Repair Act violations made them ineligible to receive payment for the windshield-related services and were thus a component of the fraudulent scheme.").[20]

---

[20]See also Government Employees Insurance Co. et al v. Cereceda, et al., S.D. Fla. Case No. 19-cv-22206, at Docket Nos. 57, 72 (though the defendants argued that Florida laws regulating advertising by chiropractors contained no private right of action for a plaintiff-insurer, the court denied their motion to dismiss, because GEICO did not assert a private right of action under the chiropractor advertising laws – instead, it alleged unjust enrichment, FDUTPA, declaratory, and fraud-based claims based on the theory that Bailey's violations of the chiropractor advertising laws divested them of the right to collect on their insurance claims); State Farm Mut. Auto. Ins. Co. v. Pointe Physical

More generally, Bailey and his co-Defendants' conduct was indeed deceptive because it was likely to – and did – mislead GEICO into believing that it had an obligation to pay $720,249.18 worth of Glassco's Glass Services charges, when in fact GEICO had no such obligation because of Glassco's violations of the Repair Act. See Eberling Decl., ¶ 14.

Bailey goes on to argue that GEICO has not come forward with any evidence that implicates Bailey in any scheme to deceive, and that Bailey did not have any knowledge of the illegal activity at Glassco. See ECF No.122, pp. 22-24. This argument does not withstand inspection. There is ample evidence in the record to demonstrate that Bailey participated in the operation and management of Glassco, and in fact directed the deceptive conduct that was carried out through Glassco. In particular, the record establishes that Bailey was a one-third owner of Glassco, was the CEO of Glassco, managed the day-to day operations of Glassco, and was responsible for "pretty much everything" at Glassco. See Glassco Dep., 22:25; 23:1-6; Bailey Dep., 36:2-4. 7.[21]

---

Therapy, LLC, 107 F. Supp. 3d 772, 797-798 (E.D. Mich. 2015)(rejecting, as "[t]rue but irrelevant", defendant healthcare providers' contention that the plaintiff-insurer lacked standing to sue under Michigan's self-referral law, where the insurer's fraud claims were not based on allegations that the defendants violated the self-referral law per se, but rather on misrepresentations in the defendants' billing to the effect that the services were "were lawfully rendered and reimbursable").

[21] It is entirely unclear what Bailey means when he claims "GEICO has not [] adduce[d] a single witness statement that even mentions Bailey's name. See ECF No. 122, p.23. Virtually every single witness who testified in this case mentioned Bailey's name. See ECF No. 126, Exhibit Nos. 4,5,6,9. In any event, the record is clear that Bailey "participated in the operation or management of the enterprise", which is sufficient to establish individual liability under RICO. Even lower lever participants of a RICO enterprise – let alone CEOs, like Bailey, who are responsible for "pretty much everything" – have been found to satisfy the operation and management test. See State Farm Mut. Auto. Ins. Co. v. Kugler, 2011 U.S. Dist. LEXIS 107005 at * 22 - * 25 (S.D. Fla. 2011)(physicians who worked under the direction of others to perform and submit bills for medically unnecessary services sufficiently participated in the operation and management of healthcare practices that employed them); see also Pereira v. United States, 347 U.S. 1, 8 (1954) (to prove mail or wire fraud, "it is not necessary to show

Bailey then argues that GEICO supposedly has not demonstrated the existence of a RICO "enterprise" that is distinct from the underlying "pattern" of racketeering activity (i.e., the predicate acts of wire fraud). See ECF No. 122, pp. 24-25. This is incorrect. As clearly set forth in the Complaint, Glassco is alleged to be a separate, corporate racketeering enterprise. See Docket No. 1, ¶¶ 118, 125. As a corporate racketeering enterprise, Glassco has its own independent corporate existence and is inherently distinct from the action in which it engages, including racketeering activity. Though Bailey tries to make an issue out of GEICO's allegation that Glassco existed for the purpose of submitting fraudulent insurance charges (see ECF No. 122, p.25), that does not change the fact that – as a corporate enterprise – Glassco had a separate legal existence from the pattern of racketeering activity, which is all that is required.[22]

---

that [defendants] actually mailed [or wired] . . . anything themselves." Instead, "it is sufficient if [a defendant] caused it to be done.").

[22] See, e.g., State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic P.C., 2015 U.S. Dist. LEXIS 104332 at * 13 (E.D. Mich. 2015)("[T]o the extent Defendants claim that the pattern of racketeering activity cannot be used to reveal the existence of an enterprise, or that the enterprise cannot exist for the purpose of accomplishing the racketeering activity, this position was rejected by the Supreme Court in" Boyle v. United States, 556 U.S. 938 (2009)); Lyons, supra, 843 F. Supp. 2d at 368 (rejecting argument analogous to the one raised by the Defendants herein, and noting that "the Supreme Court has made clear that a wholly illegitimate enterprise, just like a legitimate enterprise, may constitute an enterprise under RICO."); Liberty Mut. Ins. Co. v. Excel Imaging, P.C., 879 F. Supp. 2d 243, 274 (E.D.N.Y. 2012)(rejecting identical argument, and holding that "Corporations are expressly included in the definition of enterprise. … Although the purpose of Excel was fraud, a wholly illegitimate organization, just like a legitimate one, may constitute a RICO enterprise.").

In contrast to these apposite cases, Bailey attempts to support his "distinctiveness" arguments with citations to a couple of totally inapposite cases. See ECF No. 122, p. 25, citing Catano v. Capuano, 2019 WL 3035752, at *5 (S.D.Fla. 2019) (the alleged RICO enterprise was an "association in fact" RICO enterprise, rather than a corporate RICO enterprise, and would not have any independent existence if the predicate acts of racketeering activity were stripped away); By contrast, in the present case, Glassco is alleged to be a corporate enterprise – not an "association in fact" enterprise – and as such would exist even if the predicate acts of racketeering were stripped away. What is more, the "Handeen distinctiveness" test Bailey refers to actually undermines his argument. For instance, in Handeen v. Lemaire, 112 F.3d 1339, 1352 (8th Cir. 1997), the court ruled that "[s]eparating the

Bailey next advances an argument that he is entitled to summary judgment on GEICO's RICO claim because GEICO has not established "closed-ended" or "open-ended" continuity, and as a result there is no "pattern" of racketeering activity. See ECF No. 122, pp. 26-30. Again, Bailey is incorrect. First, GEICO has established closed-ended continuity, which occurs when "a series of related predicates extend[s] over a substantial period of time." H.J., Inc. v. N.W. Bell Telephone Co., 492 U.S. 229, 242 (1989). The facts in the record demonstrate that the Defendants submitted hundreds of fraudulent and unlawful claims through Glassco to GEICO on a continuous basis from early 2016 through mid-2019. See Eberling Decl., ¶¶ 12-33. In this context, courts within this Circuit have sustained RICO claims where the challenged pattern of racketeering lasted for as little as 13 months. See, e.g., Walgreen Co. v. Premier Prod. of Am., Inc., 2012 WL 527169, at *4 (M.D. Fla. 2012)(sustaining RICO claim where scheme "lasted for one year and one month"); see also Magnifico v. Villanueva, 783 F.Supp.2d 1217, 1229 (S.D. Fla. 2011)(18 months). In the present case, Bailey's predicate acts of wire fraud spanned a period of more than three years.[23] Accordingly, GEICO respectfully submits that it has sufficiently established closed-ended continuity.[24]

---

enterprise from the pattern of racketeering is generally not problematic where a legal entity is involved, since this entity is likely to be clearly distinct from the acts of racketeering".

[23] In this context, Bailey's contention that there is no closed-end continuity because 1488 of the 1773 claims at issue occurred between January 2016 and December 2017 is meritless. See ECF No. 122, p.28. First, that is a two year time span, which is sufficient in this district to establish closed-ended continuity. See Walgreen Co and Magnifico, supra. Second, from January 2018 through July 2019, the Defendants continued to submit fraudulent claims through Glassco to GEICO 285 times.

[24] Bailey also posits that GEICO has not sufficiently proven a closed-ended pattern of racketeering because there is only a single victim and a single scheme. See ECF No. 122, p.29. First, there are three GEICO plaintiffs, not one. Furthermore, it is clear from the record in this action that GEICO's insureds also were victims in the Defendants' scheme, considering – among other things – that numerous insureds swear that their "signatures" were forged on Glassco claims submissions. See

In any event, the evidence in the record with regard to Glassco is also sufficient to establish "open-ended" continuity, which occurs when "the misrepresentations were part of the 'regular way of doing business' or threaten repetition in the future." Ferrell v. Durbin, 311 Fed.Appx. 253, 257 (11th Cir. 2009). To demonstrate open-ended continuity, a plaintiff does not have to prove a currently-existing threat that the pattern of racketeering activity will continue. Rather, "[i]t is sufficient that a threat of continuity inhered in the alleged racketeering activity, even if that activity lasted only a brief time and is indisputably over." Allstate Ins. Co. v. Lyons, 843 F. Supp.2d at 369, 370 (E.D.N.Y. 2012). Put another way, "in the context of an open-ended period of racketeering activity, the threat of continuity must be viewed at the time the racketeering activity occurred." Id.[25]

In this case, the facts in the record demonstrate that all of the hundreds of claims

---

Eberling Decl., ¶¶ 31-33. In any event, Bailey's legal arguments also are wrong, as cases where "single victim/single scheme" patterns were held insufficient generally involved allegations of open-ended continuity. As the Court may note, all of the cases cited by Bailey for his "single victim/single scheme" argument present inapposite fact patterns. Specifically, in Hartz v. Friedman, 919 F.2d 469, 473 (7th Cir. 1990), there were only 16 acts of mail or wire fraud – some of which were not even in furtherance of the alleged scheme. Id. at 473. In U.S. Textiles, Inc. v. Anheuser-Busch Cos., 911 F.2d 1261, 1266 (7th Cir. 1990), while the mail and wire fraud "may have been felt over the course of two years", it all stemmed from a single transaction. Id. at 1268. Talbot v. Robert Matthews Distrib. Co., 951 F.2d 654, 663 appears to have dealt with an open-ended pattern and, nonetheless, involved only three allegations of fraud. See Talbot v. Robert Matthews Distrib., Co., at fn. 5 (N.D. Ill. Jan. 11, 1989). At bottom, none of these cases dealt with a situation even remotely similar to the one in the present case, where the record demonstrates that the Defendants submitted hundreds of distinct fraudulent and unlawful claims to an insurance company through the wires on a continuous basis for more than three years. Numerous federal courts in Florida have sustained RICO claims under similar circumstances. See, e.g., Cereceda, supra; Gov't Emples. Ins. Co. v. Clear Vision Windshield Repair, L.L.C., 2017 U.S. Dist. LEXIS 47353 at * 4 - * 5 (M.D. Fla. 2017).

[25] Accordingly, Bailey's contentions to the effect that GEICO has now instituted an inspection policy that limits the risk of unnecessary repairs, and so there no longer is any continuing threat of criminal activity, lack merit. See ECF No. 122, p.30. The actual inquiry is whether there was any continuing threat of criminal activity at the time when the Defendants' were submitting the fraudulent and unlawful billing through Glassco to GEICO.

that Bailey and his co-Defendants submitted through Glassco to GEICO falsely represented that Glassco was entitled to payment, when in fact it was not entitled to payment because it lacked valid assignments of benefits and operated in pervasive non-compliance with the Repair Act. The facts in the record likewise demonstrate that the Defendants are continuing to pursue collection on much of this fraudulent and unlawful billing. Accordingly, there is ample evidence to demonstrate that the misrepresentations were part of the regular way in which Bailey and his co-Defendants operated Glassco, and that they did – and do – threaten repetition in the future. See Eberling Decl., ¶ 16; see also Warren Chiropractic, supra (holding that Plaintiff sufficiently alleged facts to demonstrate open-ended continuity where the defendants continued to submit fraudulent bills for payments – which was their regular way of doing business).[26]

Bailey next offers perfunctory arguments to the effect that GEICO failed to establish its RICO conspiracy claim because it supposedly failed to establish its substantive RICO claim. See ECF No.11, p.30. However, and as discussed above, GEICO has established its substantive RICO claim. Bailey also cites to U.S. v. Starrett, 55 F. 3d 1525, 1543 (11th Cir. 1995) for the general law regarding what a party must

---

[26] Bailey also makes a general reference to 38 SIU case files that contain "hearsay statements of insureds". From there, Bailey discusses the various intricacies of NAGS pricing and what would be considered "unnecessary work" and "illusory work". See ECF No. 122, p.26. However, Bailey does not provide the name of any insured, the claim number, or any other identifiable information that would make it possible for GEICO to know which specific claims he is referring to. Instead, Bailey cites to the deposition transcript of Susanna Eberling where Ms. Eberling generally refers to investigations surrounding *another* glass company. GEICO respectfully submits that – to the extent this argument can be deciphered – it does not appear to entitle Bailey to summary judgment.

establish to prove a RICO conspiracy (i.e. an *agreement to participate* in the underlying racketeering conspiracy), but never gets around to actually arguing – or providing a single fact from the record – that GEICO has not sufficiently established this agreement, which indeed it has. Id.[27] Accordingly, the Court should reject Bailey's motion for summary judgment on GEICO's civil RICO claims.

### 5.    Bailey is Not Entitled to Summary Judgment on GEICO's FCRCPA Claim

As Bailey points out, an FCRCPA claim is examined in the same way as a federal RICO claim. See ECF No. 122, pp. 30-31. Consequently, for all the reasons set forth above, this Court should reject Bailey's motion for summary judgment on GEICO's claim for violation of the FCRCPA, Fla. Stat. § 772.103(3)).

### 6.    Bailey is Not Entitled to Summary Judgment on GEICO's FDUTPA Claim

Bailey next contends that he is entitled to summary judgment on GEICO's FDUTPA claim. Bailey purports to adopt the arguments set forth in Glassco's motion in support of this contention. See ECF No. 122, p.32. Plaintiffs respectfully submit that this constitutes an improper attempt to circumvent the 35-page limit allowed by

---

[27]Not only has GEICO established Bailey's agreement to the overall objective of the racketeering conspiracy (namely, to defraud GEICO and other automobile insurers), but GEICO has established that Bailey orchestrated the fraudulent scheme. In particular, Bailey was a one-third owner of Glassco, was the CEO of Glassco, and most notably, was responsible for "pretty much everything" at Glassco. See Bailey Depo. p. 36, ll. 2-8. This is more than sufficient to establish the existence of Bailey's agreement. See State Farm Mut. Auto. Ins. Co. v. Kugler, 2011 U.S. Dist. LEXIS 107005 at *37 (S.D. Fla. 2011)(noting that the existence of an agreement may be established by circumstantial evidence of a scheme or inferences from the conduct of the alleged participant", and sustaining RICO conspiracy claims against defendants who were "instrumental in creating and implementing the scheme; see also Salinas v. United States, 522 U.S. 52, 63-64 (1997)("A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense. … The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other.")

this Court. <u>See</u> ECF No. 118. In this context, courts have counted arguments that similarly purport to be "incorporated by reference" against a movant's page limits, and have disregarded such arguments where they exceed the page limits.[28] However, to the extent this Court allows Bailey to adopt Glassco's arguments, GEICO respectfully adopts its arguments from its other opposition papers into this opposition brief.[29]

Accordingly, Bailey is Not entitled to summary judgment on GEICO's FDUTPA claim.

### 7. Bailey is Not Entitled to Summary Judgment on GEICO's Common Law Fraud Claim

Bailey also argues that he is entitled to summary judgment on GEICO's common law fraud claim, because GEICO's allegations of fraud are based on legal conclusions that are supposedly false. <u>See</u> ECF No. 122, pp. 32-33.

For all the reasons set forth herein, GEICO's legal conclusions are not false, and instead are supported by Florida courts interpreting the Repair Act which have all held that that a repair shop that violates the Repair Act is not entitled to payment –

---

[28] <u>See</u>, <u>e.g.</u>, <u>Government Employees Insurance Co. et al v. Path Medical</u>, et al., M.D. Fla. Case No. 17-cv-2848-T-17TGW, at Docket No. 79 (in similar insurance fraud and racketeering case, rejecting similar attempt to circumvent page limitations by incorporating arguments set forth in one defendant's brief by reference into other defendants' briefs, and noting that the "incorporate by reference" tactic is "inappropriate and unduly tax[es] the Court's resources").

[29] Bailey also contends that he has no individual liability under FDUTPA because the record supposedly is devoid of any evidence that he participated directly in Glassco's deceptive practices. <u>See</u> ECF No. 122, p.32. For all the reasons set forth above – not least the undisputed facts demonstrating that Bailey was a one-third owner and CEO of Glassco, and in charge of its day to day operations – Bailey is incorrect, and he is individually liable under FDUTPA. <u>See</u> <u>FTC v. Info. Mgmt. Forum</u>, 2013 U.S. Dist. LEXIS 91242 at *20 (M.D. Fla. 2013) <u>citing</u> <u>KC Leisure, Inc. v. Haber</u>, 972 So. 2d at *9 (Fla. 5th DCA 2008) (noting that it has "it has long been the law in Florida that in order to proceed against an individual using a FDUTPA violation theory an aggrieved party must allege that the individual was a direct participant in the improper dealing", and that it is not necessary to pierce the corporate veil).

even from someone that may not fall within the definition of a "customer" under the Repair Act. <u>See</u> e.g., <u>1616 Sunrise Motors, Inc.</u>, <u>supra</u>.[30]

## 8.   Bailey is Not Entitled to Summary Judgment on GEICO's Unjust Enrichment Claim

Bailey's argument for summary judgment on GEICO's unjust enrichment claim is just a variation of his argument for why he is entitled to summary judgment on GEICO's other claims. [31]

This is incorrect. Summary judgment on an unjust enrichment claim is warranted where – as here – a provider accepts and retains benefits it never was lawfully entitled to receive. In the present case, there is no dispute that GEICO paid Glassco $720,249.18 on the claims for Glass Services that Glassco purported to provide to GEICO insureds. <u>See</u> Eberling Decl., ¶ 14. It likewise is clear, as set forth herein – as a matter of law – that Glassco was never entitled to receive those payments because it operated in violation of the Repair Act and lacked valid assignments of benefits.  As a matter of law, GEICO was entitled to deny Glassco's claims for Glass Services, and it would be inequitable to permit Bailey or any of the Defendants to retain the proceeds of their unlawful activities.

---

[30] Bailey advances a perfunctory argument that GEICO has not met any of the elements of common law fraud, but never get around to actually explaining how GEICO has filed to satisfy these elements. <u>See</u> ECF No. 122, p.33. Additionally, contrary to Bailey's argument, GEICO's evidence against Bailey is not "staked" solely on him being a shareholder. Rather, the evidence in the record demonstrates that Bailey managed the day-to-day operations of Glassco, and was responsible for "pretty much everything" at Glassco. <u>See</u> Glassco Dep., 22:25; 23:1-6; Bailey Dep., 36:2-4. 7. This is more than sufficient to establish individual liability.

[31] Namely, that: (i) the Repair Act only provides a private right of action to a "customer"; (ii) insurance companies such as GEICO do not meet the statutory definition of a "customer"; and therefore (iii) GEICO cannot stake its unjust enrichment claim on Bailey's pervasive violations of the Repair Act. <u>See</u> ECF No. 122, pp.34-35.

## CONCLUSION

For the reasons stated above, Bailey's motion for summary judgment should be denied in its entirety.

Respectfully submitted,

*/s/ John P. Marino*
John P. Marino (FBN 814539)
SMITH, GAMBRELL & RUSSELL, LLP
50 North Laura Street, Suite 2600
Jacksonville, Florida 32202
Phone:  (904) 598-6100
jmarino@sgrlaw.com

and

Max Gershenoff (admitted pro hac vice)
Yonatan Bernstein (admitted pro hac vice)
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11550
Phone:  (516) 357-3000
max.gershenoff@rivkin.com
yonatan.bernstein@rivkin.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on March 5, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to the counsel of record in this case.

*/s/ John P. Marino*
*Attorney*