## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

GOVERNMENT EMPLOYEES
INSURANCE CO., et al.

Case No.: 8:19-cv-01950-KKM-JSS

      Plaintiffs,

            v.

GLASSCO INC., et al.

      Defendants.

_____/

## PLAINTIFFS' MEMORANDUM IN OPPOSITION
## TO GLASSCO INC'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., and GEICO General Insurance Company, (collectively "GEICO" or "Plaintiffs") respectfully submit this memorandum in opposition to the motion for summary judgment by Defendant Glassco, Inc ("Glassco" or "Defendant") See ECF No. 123.

As discussed below, none of Glassco's conclusory statements or incorrect legal arguments entitle it to summary judgment. To the contrary, some of Glassco's contentions actually weigh in favor of summary judgment for Plaintiffs. Accordingly, Glassco's motion should be denied, and – instead – Plaintiffs' motion for summary judgement should be granted. See ECF Nos. 125-126.

**ARGUMENT**

I.   **The Standard on the Defendant's Motion for Summary Judgment**

As courts in this district have noted:

> Where the non-moving party bears the burden of proof on an issue at trial, the moving party [is not required to] support its motion with affidavits or other similar materials <u>negating</u> the [non-moving party's] claim. … Instead, the movant simply bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any which it believes demonstrate the absence of a genuine issue of material fact. … Once the movant presents evidence that, if not controverted, would entitle the movant to a judgment at trial, the burden shifts to the non-moving party to assert specific facts demonstrating the existence of a genuine issue of fact for trial.

<u>Baker v. Parsons</u>, 2019 U.S. Dist. LEXIS 125454 at * 4 - * 5 (M.D. Fla. 2019)(Internal quotations and citations omitted)(emphasis in original).

II.   **None of Glassco's Incorrect Legal Arguments and Conclusory Statements Entitle it to Summary Judgment**

To put Glassco's motion in its proper context, it is worthwhile to briefly summarize GEICO's claims in this action. GEICO has maintained in this action that Glassco, which is registered in Florida as a motor vehicle repair shop[1], and its three, one-third owners – John Bailey ("Bailey"), Jason Wilemon ("Wilemon"), and Andrew Victor ("Victor")(collectively with Glassco, the "Defendants")[2] – purported to provide windshield replacement services ("Glass Services") to GEICO insureds in exchange for assignments of the insureds' comprehensive insurance benefits. Then, the Defendants

---

[1] <u>See</u> Declaration of Susanna Eberling ("Eberling Decl."), ¶ 10.
[2] <u>See</u> Eberling Decl., 6 – "between at least 2014 and October 2019, Bailey owned 34% of Glassco, Wilemon owned 33% of Glassco, and Victor owned 33% of Glassco"; <u>see</u> <u>also</u> Glassco Dep., 66:7-11.

2

caused Glassco to bill GEICO for the Glass Services as the supposed assignee of the insureds' benefits.[3] See ECF No. 1, passim.

As demonstrated by the evidentiary record discussed in GEICO's own pending summary judgment motion (see ECF Nos. 125-126), although Glassco purported to be registered in Florida as a motor vehicle repair shop, the Defendants operated Glassco in pervasive violation of various material provisions of the Florida Motor Vehicle Repair Act (the "Repair Act", Fla. Stat. § 559.901, et seq.)[4]

In this context, and as discussed herein, the Repair Act is a remedial statute that is designed to protect consumers and the public. As a result, and as discussed more fully below, numerous courts – including Florida District Courts of Appeal – consistently have held that repair shops which violate the Repair Act are not entitled to collect on their charges, even in quantum meruit.

At bottom, and as demonstrated in GEICO's own summary judgment motion

---

[3] See Eberling Decl., ¶ 12; Bailey Dep., 28:11-12

[4] Among other things, the record in this action demonstrates that Glassco: (i) unlawfully subcontracted all of its purported Glass Services to independent contractors without notice to or consent from the relevant GEICO insureds, and then falsely billed GEICO for the purported Glass Services as if they actually had been provided by Glassco or its employees; (ii) falsely represented to GEICO that it had obtained valid assignments of comprehensive insurance benefits from the insureds, when in fact they had not, because the purported "consideration" for the assignments – namely Glassco's actual performance of the Glass Services – was illusory, considering that Glassco subcontracted all of the Glass Services to independent contractors without notice to, or consent from, the insureds; (iii) in a number of case, falsely represented to GEICO that they had obtained valid assignments of comprehensive insurance benefits from the GEICO insureds, when in fact they had not, because the insureds' signatures had been forged on the purported assignments of benefits; (iv) never complied with the estimate waiver and written estimate provisions of the Repair Act, which are designed to ensure that motor vehicle repair shops provide advance notice of the amounts they intend to charge for repairs such as Glass Services; and (v) never complied with the invoice provisions of the Repair Act, which are designed to ensure that repair shop customers receive – among other things – actual notice of the amounts charged for repairs, and the basis for the charges. See ECF Nos. 125-126.

(see ECF Nos. 125-126), the uncontroverted evidence clearly establishes that all of the billing for purported Glass Services submitted through Glassco to GEICO falsely represented that Glassco was entitled to payment on the charges, when in fact Glassco was never entitled to payment because it lacked valid assignments of comprehensive insurance benefits from GEICO insureds, and because it operated in violation of various material provisions of the Repair Act.

Against that backdrop, GEICO asserts claims against Glassco for common law fraud, unjust enrichment, and violation of the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA", Fla. Stat. § 501.201 et. Seq.[5] Through these claims, GEICO seeks to recover the more than $700,000.00 that it has paid to Glassco pursuant to Glassco's unlawful claims for Glass Services. In addition, GEICO seeks a declaratory judgment against Glassco, to the effect that GEICO is not liable to pay any of the outstanding charges from Glassco, because of the unlawful acts set forth in the Complaint. See ECF No. 1, ¶¶ 111, et seq.

## A.   Glassco is Not Entitled to Summary Judgment on its Conclusory "Anti-SLAPP" Claim

Glassco begins its argument by purporting to incorporate a "special" motion for summary judgment to the effect that the present lawsuit somehow violates Florida's anti-SLAPP statute, Fla. Stat. § 768.295. See ECF No. 123, pp. 1-4. Glassco's "special" motion is conclusory, meritless, and should be denied.

---

[5] In addition to these claims against Glassco, GEICO also asserts claims against Bailey, Wilemon, and Victor for violation of the civil RICO statutes (18 U.S.C. § 1962(c) and (d)) and violation of the Florida Civil Remedies for Criminal Practices Act (the "FCRCPA", Fla. Stat. § 772.103(3)).

As Glassco notes, Florida's anti-SLAPP statute prohibits a person from filing a suit that is: (a) "without merit" and (b) "primarily" because the person against whom the suit was filed "exercised the constitutional right of free speech in connection with a public issue...." See ECF No. 123, p. 3, citing Bongino v. Daily Beast Co., LLC, 2020 U.S. Dist. LEXIS 208381 at * 19 (S.D. Fla. 2020); see also Fla. Stat. § 768.295(3). Under the anti-SLAPP statute, the initial burden is on the SLAPP defendant to set forth a prima facie case that the statute applies. Then, the burden shifts to the claimant to demonstrate that the claims have merit, and are not primarily based on the exercise of First Amendment rights in connection with a public issue. See, e.g., Gundel v. AV Homes, Inc., 264 So. 3d 304, 314 (Fla. 2d DCA 2019).

In the present case, however, Glassco has not demonstrated – and cannot demonstrate – that either of the two requirements for an anti-SLAPP violation is satisfied. As to the first requirement under the anti-SLAPP statute, for all the reasons set forth in GEICO's own motion for summary judgment (see Nos. 125-126), and for the reasons that are set forth herein, GEICO's suit does have merit. As a result, Glassco has not satisfied the first requirement under the statute.[6] Moreover, Glassco has not demonstrated that the second factor required under the anti-SLAPP statute is

---

[6] In keeping with the fact that GEICO's claims in this case have merit, the Court previously denied all of the Defendants' motions to dismiss, except to the limited extent of dismissing GEICO's Repair Act claim. See ECF No. 59. Even so, Glassco appears to contend that GEICO's claims in this action lack merit because GEICO has settled 53 out of 1773 of Glassco's allegedly-fraudulent claims after commencing the present action. See ECF No. 123, pp. 3-4. However, Glassco provides no information regarding the circumstances surrounding the settlements, nor does Glassco explain how or why GEICO's settlement of a small fraction of Glassco's outstanding charges demonstrates that GEICO's claims in this case lack merit.

met, either. In particular, Glassco offers <u>zero</u> support for its conclusory contention that this suit was filed because Glassco "exercised the constitutional right of free speech in connection with a public issue". <u>See</u> ECF No. 123, p.3. In fact, Glassco does not even manage to identify any "public issue" on which Glassco exercised any right of "free speech". Nor, by extension, does Glassco demonstrate – as a matter of law, no less – how this lawsuit <u>actually</u> interfered with Glassco's unspecified "speech" on any unidentified "public issue".

In fact – and to the extent that they can be deciphered at all – Glassco's "anti-SLAPP" claims seem to be based entirely on the notion that: (i) Glassco has filed collections lawsuits against GEICO in Florida county court, seeking to collect on some of its outstanding claims for Glass Services; (ii) GEICO's commencement of this action somehow constitutes an improper attempt to "leverage settlement in the state court cases"; and therefore (iii) GEICO's commencement of this action somehow violates the anti-SLAPP statute. <u>See</u> ECF No. 123, p3. Glassco is incorrect. Though Glassco contends that this lawsuit is somehow improper, numerous federal courts (including this Court) – adjudicating insurance fraud actions just like this one[7] – have sustained identical claims by plaintiff-insurers, seeking declarations that a defendant service provider is not entitled to collect on its outstanding insurance billing because of some fraudulent or unlawful activity. <u>See</u> ECF No. 59, p.8 (denying Defendant's

---

[7] <u>See also</u> <u>Gov't Emples. Ins. Co. v. Martineau</u>, M.D. Fla. Case No. 8:19-cv-01382-MSS-SPF, ECF No. 29, pp. 10-11 (in extremely similar Glass Services fraud and declaratory judgment action, denying defendants' motion to dismiss, and noting that "courts have routinely allowed insurer-plaintiffs to pursue similar forms of declaratory relief".)

motion to dismiss, noting that "a dispute about the defendants' entitlement to payment for pending claims presents an actual case or controversy under Article III.").[8]

Accordingly, this Court should deny Glassco's motion for summary Judgment under Florida's anti-SLAPP statute.

## B.    Glassco is Not Entitled to Summary Judgment on Any of GEICO's Claims

Glassco advances two main arguments to support its contention that it is entitled to summary judgment on GEICO's claims. In particular, Glassco argues that it is entitled to summary judgment – on each of GEICO's causes of action at issue – because: (i) supposedly, "nothing in the [Repair Act] establishes that a repair shop not in compliance with the [Repair Act] forfeits its right to compensation" (see ECF No. 123, p.9); and (ii) contrary to GEICO's claims, Glassco supposedly did obtain valid assignment of benefits from GEICO insureds – through some sort of equitable assignment – and GEICO supposedly lacks standing to challenge the validity of the purported assignments (see ECF No. 123, pp. 18-20). See ECF No. 123, pp. 8-12.

As discussed below, none of these arguments has any merit.

---

[8] Glassco also contends – in a conclusory manner – that GEICO improperly failed to identify Glassco's county court collections cases as being "related" to the present case. See ECF No. 123, p. 3. Glassco is incorrect, considering that a service provider's county court collections suits are not truly related to a plaintiff-insurer's federal insurance fraud and racketeering action. See, e.g., State Farm Mut. Auto. Ins. Co. v. Physicians Group of Sarasota, L.L.C., 9 F. Supp. 3d 1303, 1309 (M.D. Fla. 2014)(in similar federal insurance fraud action, rejecting abstention in favor of defendants' state court collections lawsuits, where the legal issues did not overlap, even though both the federal and state actions involved disputes between some of the parties regarding insurance charges); see also United Auto. Ins. Co. v. Fla. Wellness & Rehab. Ctr., 2009 U.S. Dist. LEXIS 141145 at * 22 (S.D. Fla. 2009)(rejecting argument that defendants' state court insurance collections lawsuits involved substantially the same issues as plaintiffs' federal insurance fraud action, where – as in the present case – it did not appear as if the state court collections actions "raised the type of Civil RICO fraud allegations presented in the Amended Complaint, and thus the Court cannot determine that the issues in the federal and state proceedings are substantially the same.")

1.   **As a Matter of Law, Repair Shops that Violate the Repair Act May <u>Not</u> Collect on Their Charges, Even in <u>Quantum</u> <u>Meruit</u>**

Glassco first argues that the Repair Act <u>itself</u> does not specify whether a repair shop that violates the Repair Act "forfeits its right to compensation. See ECF No. 123, p.9. That may be so, but <u>every Florida court that has considered this issue has ruled that a Repair Shop that violates the Repair Act *does* forfeit its right to compensation</u>.[9]

Glassco next argues that since GEICO is not a "customer", as that term is defined under the Repair Act, GEICO "has no actionable rights under the Repair Act." <u>Id.</u> Notably, Glassco ignores the decision in <u>1616 Sunrise Motors, Inc.</u>, <u>supra</u>, a District Court of Appeals decision that completely refutes its argument.[10]

---

[9] <u>See</u>, <u>e.g.</u>, <u>Osteen v. Morris</u>, 481 So. 2d 1287 (Fla. 5th DCA 1986)(holding that – because the repair shop had failed to comply with the Repair Act – it was not entitled to recover the remaining balance on its repair bill, even in <u>quantum</u> <u>meruit</u>, and it also had to refund the customer's partial payment); <u>Gonzalez v. Tremont Body & Towing, Inc.</u>, 483 So. 2d 503 (Fla. 3d DCA 1986)(same); <u>1616 Sunrise Motors, Inc. v. A-Leet Leasing of Florida</u>, 547 So. 2d 267 (Fla. 4th DCA 1989)(affirming trial court decision denying recovery to repair shop that violated the Repair Act's prohibition against making or charging for repairs without the express or implied authorization of the customer); <u>Perez-Priego v. Bayside Carburetor & Ignition Corp.</u>, 633 So. 2d 1190, 1191 (Fla. 5th DCA 1994)("Petitioner is correct that, under Florida law, a consumer who is not given a written estimate [in violation of the Repair Act] may recover the amount of the repair bill <u>and</u> still retain the benefit of the repairs."); <u>Reynolds v. Gorilla Motors, Inc.</u>, 11 Fla. L. Weekly Supp. 1047a (Fla. 15th Jud. Cir. August 31, 2004)("Under Florida law, a repair shop that fails to comply with Florida Statute 559.901 <u>et seq</u>. may not recover or retain the amount of the repair bill, despite the fact that the customer obtains a benefit and the overall result appears unjust."); <u>Git R Done Concrete Cutting, LLC v. Swinsons Car Care Center, Inc.</u>, 22 Fla. L. Weekly Supp. 226a (Fla. 9th Jud. Cir. July 30, 2014)(repair shop that failed to comply with the Repair Act was not entitled to recover on its charges); <u>Safari Tours, Inc. v. Pasco</u>, 255 So. 3d 415, 417 (Fla. 3d DCA 2018)(repair shop that failed to comply with Repair Act was not entitled to recover on its charges). Against this legal backdrop, Glassco's does not cite to any authority for its meritless assertion that "for a statutory violation to render a claim or bill for insurance reimbursement void or unenforceable, the statute must expressly so provide." <u>See</u> ECF No. 123, p.10.

[10] Glassco does not actually specifically address any of these authorities in its motion for summary judgment. Instead, it contends that "GEICO cites to cases brought under the [Repair Act] by a customer" who was seeking to discharge a repair shop's possessory lien. <u>See</u> ECF No. 123, p.11. Since Glassco does not name a single one of these cases, it is completely unclear which cases Glassco is referring to. Notwithstanding, Glassco is incorrect. First, as noted above, the <u>Sunrise Motors</u> case did <u>not involve a customer</u>, and the court still held that a repair shop could not recover on its charges since it violated the Repair Act. Second, as it relates to Glassco's possessory lien argument, to the extent

In <u>1616 Sunrise Motors, Inc.</u>, a car rental agency leased an automobile to a driver. 547 So. 2d at 268. There was an accident, and the automobile was towed to a repair shop, evidently at the request of the driver/lessee. <u>Id</u>. Without obtaining the verbal or written authorization of the driver/lessee, the repair shop repaired the vehicle. <u>Id</u>. Thereafter, the driver/lessee failed to respond to the repair shop's requests to pay for the repair and retrieve the vehicle. <u>Id</u>. As a result, the repair shop filed suit against the car rental agency/lessor to recover the costs of the repairs and vehicle storage. <u>Id</u>. However, the trial court found that the repair shop was precluded from recovery, because it had violated Fla. Stat. § 559.920(2) by performing repairs without the authorization of the "customer" – <u>i.e.,</u> the driver/lessee. <u>Id</u>. On appeal, the repair shop – much like the Defendants herein – argued that: (i) the repair shop's violation of the Repair Act only precluded the shop from holding the "customer" liable for the repairs; (ii) the car rental agency/lessor did not meet the statutory definition of "customer"; and therefore (iii) the repair shop could recover the costs of the repair from the car rental agency/lessor, even if it could not recover the costs of the repair from the driver/lessee or "customer". <u>Id</u>. However, the District Court of Appeals rejected this argument, holding that:

---

that <u>some</u> of the authorities cited above (<u>e.g.,</u> <u>Osteen</u>, <u>Safari Tours</u>, <u>Gonzalez</u>, <u>1616 Sunrise Motors</u>) do involve possessory liens, Glassco never manages to explain why this purported "distinction" makes any difference. In fact neither the <u>Osteen</u>, <u>Safari</u>, nor the <u>Gonzalez</u> court even referenced the possessory lien statute in their rulings at all. Moreover, the <u>1616 Sunrise Motors</u> court denied recovery on the basis of <u>Osteen</u>, and noted that – in <u>Osteen</u> – the court held that a repair shop had to comply with the Repair Act "before a repair company can claim a lien <u>or otherwise recover for the repairs.</u>" <u>1616 Sunrise Motors</u>, at fn. 1. In other words, and contrary to Glassco's artificial "distinction", a repair shop's failure to comply with the Repair Act not only precludes it from claiming any lien on a vehicle, but also precludes it from otherwise recovering on its repairs.

> under the circumstances of this case, the requirements of the [Repair Act] cannot be avoided by permitting recovery by the errant repair shop against an owner-lessor who may <u>*not*</u> be a "customer" within the definition portion of the Act. The repair transaction involved herein is one that is covered by the Act. A holding to the contrary would undermine the purposes of the Act.

<u>Id</u>. (emphasis in original).[11] In this context, and as the Court is aware, if the Florida Supreme Court has not spoken on an issue, Florida District Court of Appeals decisions control absent persuasive indication that the Florida Supreme Court would rule otherwise. <u>See</u>, <u>e.g.</u>, <u>Hilson v. GEICO Gen. Ins. Co.</u>, 2016 U.S. Dist. LEXIS 79764 fn. 5 (M.D. Fla. 2016); <u>Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.</u>, 250 F. Supp. 2d 1357, fn. 3 (M.D. Fla. 2003). In the present case, the Florida Supreme Court has never ruled on the proper construction of the Repair Act. Accordingly, the District Court of Appeals' on-point decisions in <u>1616 Sunrise Motors, Inc.</u> and <u>Raymar Constr. Co.</u> should control.

Applying <u>1616 Sunrise Motors, Inc.</u>, <u>Raymar Constr. Co.</u>, and the many other authorities cited above, it is clear that – as a matter of law – a repair shop that operates in violation of the Repair Act may not recover on its charges, whether or not the recovery is sought directly from a customer, from a customer's insurer, or from anyone else. "A holding to the contrary would undermine the purposes of the Act." <u>1616 Sunrise Motors, Inc.</u>, <u>supra</u>.

---

[11] <u>See</u> <u>also</u> <u>Raymar Constr. Co.</u>, <u>supra</u> (reversing trial court, which improperly had imposed a narrow construction on the term "consumer transaction" in the Repair Act, and noting that "[i]n so holding we follow the general principle that remedial statutes are entitled to a liberal construction so as to advance the remedy provided where it is consistent with the legislative purpose."); <u>Results Real Estate, Inc. v. Lazy Days R.V. Center, Inc.</u>, 505 So.2d 587 (Fla. 2d DCA 1987)(holding that trial court construed consumer statute too narrowly by finding corporations ineligible for consumer protection).

In an attempt to evade the consequences the Sunrise Motors case has on its argument, Glassco cites to Allstate Ins. Co. v. Auto Glass America, LLC, 418 F. Supp. 3d 1009, 1024-1025 (M.D.Fla. 2019) to argue that: (i) an insurer is not a "customer" under the Repair Act; and therefore (ii) a repair shop that violates the Repair Act may collect from a customer's insurer, even if it is barred from collecting from the customer, itself. See ECF No. 123, pp. 9, 12, 25. Though the court in Auto Glass America found that the Repair Act applied to "customers", and that an insurer was not a "customer" under the Repair Act, the court also explicitly acknowledged that it had reached its decision because neither party in that case had provided "helpful binding legal authority" on the question. See id.; see also Allstate Ins. Co. v. Auto Glass America at ECF Nos. 22 and 29. In particular, none of the parties in the Auto Glass America case had presented the District Court of Appeals' decision in 1616 Sunrise Motors, Inc. to the court. Id. Consequently, it appears that the Auto Glass America court was unaware of the District Court of Appeals' decision in 1616 Sunrise Motors, Inc., which is controlling. As discussed above, it is evident from the 1616 Sunrise Motors, Inc. decision – which is definitely "helpful binding legal authority" – that a repair shop that violates the Repair Act cannot recover on its charges, regardless of whether it is seeking to recover from a "customer", a customer's insurer, or anyone else.

Glassco also cites to Judge Merryday's decision in this case. ECF No. 59. In particular, Glassco contends that this decision supports its argument that, since a plaintiff-insurer is not a "customer" under the Repair Act, it cannot assert fraud-based or unjust enrichment claims to recover payments made to a repair shop based on the

fact that the shop misrepresented its compliance with the Repair Act and entitlement to payment. See ECF No. 123, pp. 9. However, this argument mischaracterizes Judge Merryday's decision. In fact, Judge Merryday did not resolve this issue, did not adopt the court's ruling from Auto Glass America, and instead deferred this issue "until summary judgment and the presentation of more considered argument". See ECF No. 59, p.18. [12]

Accordingly – and contrary to Glassco's contentions – it is clear that a repair shop that operates in violation of the Repair Act may not collect on its charges, from anyone, even in quantum meruit. "A holding to the contrary would undermine the purposes of the Act." 1616 Sunrise Motors, Inc., supra.[13]

## 2. The Facts in the Record Demonstrate That the Defendants Operated Glassco in Pervasive Violation of Various Material Provisions of the Repair Act

It likewise is clear from the record in this action that the Defendants operated Glassco in pervasive violation of numerous, material provisions of the Repair Act.

---

[12] See also Gov't Emples. Ins. Co. v. Martineau, supra, ECF No. 29, pp. 16-17 (in a highly-analogous glass services fraud case, denying motion to dismiss GEICO's claims, where "GEICO's theory of the case is not that Defendants' violations of the Repair Act, standing alone, caused it to suffer financial losses. The Amended Complaint makes clear that GEICO's alleged injuries stem from Defendants' alleged submission of fraudulent claims seeking payment for non-reimbursable services. … On GEICO's theory, Defendants' alleged Repair Act violations made them ineligible to receive payment for the windshield-related services and were thus a component of the fraudulent scheme.")

[13] Glassco also argues that, pursuant to Section 559.921(7) of the Repair Act, a repair shop that violates the Repair Act may still recover in quantum meruit. See ECF No. 123, p.p.11-12; see also Fla. Stat. § 559.921(7)(providing that if, "in any proceeding brought pursuant to this part, it is determined that the repairs and costs thereof were in fact authorized, orally or in writing, the repairs were completed in a proper manner, and the consumer benefited therefrom, then the enforcing authority may consider such factors in assessing penalties or damages and may award the reasonable value of such repairs.")(emphasis added). However, Glassco ignores the fact that Section 559.921(7) applies only if the costs of the repairs were, in fact, authorized. In the present case, it is undisputed that no one ever "authorized" the costs of any of the purported repairs. See Glassco Dep., 85:11-15; Bailey Dep., 125:16-22; Eberling Decl., ¶ 24.

**(i)**      **The Violations of the Written Estimate Written Estimate Provisions of the Repair Act– Fla. Stat. § 559.905(1) and Fla. Stat. § 559.905(2).**

First, Glassco violated the Repair Act's written estimate waiver provision, which requires that if the cost of a replacement will exceed $100.00, the repair shop is required to provide a specific disclosure, in a specific form, advising the customer of their right to receive or waive a written estimate. See Fla. Stat. § 559.905(2). In the present case, though the cost of the Glass Services billed through Glassco always exceeded $100.00, the Defendants never provided any written notices to GEICO's insureds or GEICO in the form required by Fla. Stat. § 559.905(2). See Eberling Decl., ¶¶ 19, 21.[14] Nor did the Defendants ever provide GEICO or its insureds with any written estimate setting forth the estimated cost of the proposed repairs, despite the fact that the cost of the Glass Services always exceeded $100.00 – in violation of Fla. Stat. § 559.905(1). See Eberling Decl., ¶ 24; Glassco Dep., 80:23-25; 81:1; Bailey Dep., 125:16-22; 140:18-21. [15]

---

[14] Glassco contends that "each customer, for each claim, waived in writing the right to receive a written repair estimate on the work order. See ECF No. 123, p.13. However, Glassco does not cite to any support in the record for this proposition. No waiver of written estimate of any kind appears anywhere on any Glassco work order. In fact, and further demonstrating the falsity of Glassco's contention, GEICO served a document request on Glassco specifically requesting "all documents provided to GEICO insureds containing any disclosures relating to estimates or waivers". See Eberling Decl., 22. Glassco responded to this document request by providing 3,171 files, each containing a work order, invoice, and a Customer Form. Not a single one of these files contained any written estimate waiver – let alone an estimate in compliance with the specific language and form required by Fla. Stat. § 559.905(2) See Eberling Decl., ¶ 23

[15] Glassco cites to three cases in which courts held that repair shops could recover on their charges. See ECF No. 123, pp.17-18, citing Lieberman v. Collision Specialists, Inc., 526 So. 2d 102 (Fla. 4th DCA 1987); KT's Kar Kare, Inc. v. Laing, 617 So. 2d 325 (Fla. 4th DCA 1993); and Siam Motors, Inc. v. Spivey, 136 So. 3d 692 (Fla. 2d DCA 2014). However, all three of these cases are inapposite as in all three the Repair Shop was in complete or substantial compliance with the Repair Act. None of these cases dealt with a situation like the one in the present case, where the record is clear that Glassco was

Even so, in its motion for summary judgment, Glassco contends that the written estimate provisions of the Repair Act do not apply because GEICO is not a "customer", and this portion of the Repair Act only applies when the cost of repair work "will exceed $100 to the customer" (i.e. the insured), which "never" occurs. See ECF No. 123, p.13. The Court should reject this argument for two reasons. First, as discussed above, Florida District Courts of Appeal have rejected these same kinds of attempts to circumvent the remedial purpose of the Repair Act though an improperly narrow construction of its terms. [16]Second, and contrary to Glassco's claims that the customer was "never" responsible for the cost of the Glass Services, there was always the possibility the "customer" would be responsible for the cost of the Glass Services. In particular, Glassco required GEICO insureds to sign forms stating that the insureds would be responsible to pay for any charges that their insurers did not pay. See Bailey Dep., 80:13-18; Eberling Decl., ¶ 25.

**(ii)     The Violations of the Written Invoice Requirement – Fla. Stat. § 559.911**

What is more, Glassco also violated the invoice requirements of Fla. Stat. § 559.911. Specifically, upon the completion of the purported Glass Services, none of the Defendants nor any other person ever provided any GEICO insureds with any invoices for the Glass Services. See Eberling Decl., ¶ 26; Glassco Dep., 92:19-20; Bailey Dep.,

---

not in compliance at all with various material provisions of the Repair Act, let alone "substantial compliance".

[16] See 1616 Sunrise Motors, Inc., supra; Raymar Constr. Co., supra; Results Real Estate, Inc. v. Lazy Days R.V. Center, Inc., 505 So.2d 587 (Fla. 2d DCA 1987)(holding that trial court construed consumer statute too narrowly by finding corporations ineligible for consumer protection).

114: 7-11; 147:20-22. Nor – by extension – did the Defendants or anyone else ever provide any GEICO insureds with invoices in the form required by the Repair Act. See Eberling Decl., ¶ 27.[17] Glassco does not dispute these facts, and instead advances a defective legal argument to the effect that – because GEICO insureds supposedly assigned their insurance benefits to Glassco, and the insureds supposedly would never owe Glassco any money – Glassco was not required to provide the insureds with invoices for the Glass Services as explicitly required by the Repair Act. See ECF No.123, p.17; see also Fla. Stat. § 559.911. As the Court may note, Glassco does not advance any actual authority to support this proposition, which is at odds with the plain language of Section 559.911. In fact, if the Court were to credit this argument, it would nullify the Repair Act's written invoice provision. See, e.g., State v. Goode, 830 So. 2d 817, 824 ("[A] basic rule of statutory construction provides that the Legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless."). [18]

---

[17] Containing – among other things – an "itemized description of all labor, parts, and merchandise supplied and the costs thereof, indicating what is supplied to the customer without cost or at a reduced cost because of a shop or manufacturer's warranty", a "statement identifying any replacement part as being used, rebuilt, or reconditioned, as the case may be", a "statement indicating what, if anything, is guaranteed in connection with the repair work". See Eberling Decl., ¶ 27. Moreover, Glassco also permitted insureds to sign work orders that did not state the automobiles' odometer readings, in further violation of the Repair Act. See Eberling Decl., ¶ 28; Fla. Stat. § 559.920 (making it unlawful for any repair shop to "[c]ause or allow a customer to sign any work order that does not state … the automobile's odometer reading at the time of repair … ."). In its motion papers, Glassco appears to acknowledge that it failed to comply with Section 559.920(11), but contends – in substance – that "everyone else does it", and so it should not matter. See ECF No. 123, pp. 16-17. GEICO respectfully submits that the Court should reject this argument. See, e.g., State v. Goode, supra.

[18] What is more, beyond Glassco's defective legal argument, its factual contention that the insureds would never be responsible for payment to Glassco is wrong. As noted above, Glassco required GEICO insureds to sign forms stating that the insureds would be responsible to pay for any charges that their insurers did not pay. See Bailey Dep., 80:13-18; Eberling Decl., ¶ 25.

(iii)    **The Unlawful Subcontracting of Glass Services Without the Knowledge or Consent of GEICO or GEICO's Insureds – Fla. Stat. § 559.920(14)**

The Repair Act also makes it unlawful for a repair shop to have repair work subcontracted without notice to, and consent from, the customer. See Fla. Stat. § 559.920(14). There are obviously sound public policy reasons for this remedial provision. Even so, it is clear from the record in this action that Glassco subcontracted all of its purported Glass Services to independent contractors. See Bailey Dep., 29:12-16, 24-25; 30:1-4; Wilemon Dep., 38:16-20; Victor Dep., 48:23-25; see also ECF No. 123, p. 15 (admitting that the Glass Services billed through Glassco to GEICO were performed by independent contractors).[19] It is likewise clear from the record in this action that Glassco had contact information for the GEICO insureds, and obviously had the ability to advise the insureds that it intended to subcontract the Glass Services to independent contractors, and to obtain the insureds' consent to the subcontracting. See Glassco Dep., 83:16-21; Bailey Dep., 97:16-23; Eberling Decl., ¶ 20.

---

[19] Lest there be any doubt about this, the record clearly establishes that the independent contractor/installers were completely unaffiliated with Glassco. For instance, the independent contractor/installers typically had their own separate windshield repair/replacement shops – and were usually not even paid by Glassco, rather they were paid by the company the installer actually worked for – used their own equipment and vehicles when they purported to perform the Glass Services, did not receive any training from Glassco, did not work for Glassco for any significant amount of time, and did not have a fixed schedule with Glassco; rather they worked when needed. See Eberling Decl., ¶¶ 17, 18; Glassco Dep., 45:19-22; 61: 2-4; 107: 15; 108:12-20; Bailey Dep., 28:22-25; 34:15-16 36:23-25; 38:1-4; 60:20-23; 62:15-19; 63:4-6;82: 9-13; 68:2-5; 82: 9-13.Moreover, Glassco itself acknowledged in its general ledgers that independent contractors performed the Glass Services (repeatedly noting in the memo column of its general ledgers reflecting payments made for an installer expense, "[i]installation of Windshield by Independent Contractor. See Exhibits D and E to Eberling Declaration. Lastly, and further underscoring the fact that there was virtually zero affiliation between Glassco and the independent contractor installers, Bailey, the CEO of Glassco, as recently as March 2020, could not name a single installer. See Bailey Dep., 62:12-14.

Nonetheless, the Defendants did not obtain this consent from the insureds. To the contrary, the Defendants specifically instructed the independent contractors to tell the insureds that they worked for Glassco, and <u>not</u> to tell the insureds they were in fact independent contractors. <u>See</u> Glassco Dep., 102:18-20; Wilemon Dep., 41:23-25; 42:1-9; 19-23; Victor Dep., 82: 19-25. What is more, the independent contractors followed this instruction, and – at least in the instances where Wilemon and Bailey were present for the installations – indeed told the insureds that they worked for Glassco, and did not mention they were independent contractors.[20] <u>See</u> Wilemon Dep., 43: 6-15; Victor Dep., 83:11-16. In keeping with the fact that the insureds had no idea that the Glass Services had been subcontracted to independent contractors, not only did the independent contractors tell the insureds that they worked for Glassco, they also wore clothing – including t-shirts and hats – with Glassco insignia on it, further actively concealing from the insureds that they were independent contractors, completely unaffiliated with Glassco. <u>See</u> Glassco Dep., 102: 6-15; Bailey Dep., 95: 6-19; Wilemon Depo., 54:19-25; 55:1-4. [21]

---

[20] Both Timothy Wagner and Damian Surface testified that when they would perform Glass Services that were billed through Glassco, they would tell the insureds that they worked for Glassco and – as far as they could recall – did not mention that they were independent contractors to whom Glassco had subcontracted the Glass Services. <u>See</u> Surface Dep., 31:11-12; 34:24-25; 35:1-15; Wagner Dep., 19:13-16; 20:7-17.

[21] Glassco contends that "all of Glassco's customers had knowledge of and consented to" the use of independent contractors, because the work order indicated to the customer would use independent contractors and that the insured's signature consented to that practice. <u>See</u> ECF No. 123, p.14. In support of this contention, Glassco cites to the Declaration of John Bailey, but does not specify which paragraph of the declaration supports its contention. However, to the extent Glassco contends that paragraphs 14 and 16 support this contention – and indeed these are the only paragraphs applicable to this issue – this is highly misleading. In particular, although the assignment of benefits that Glassco transposed onto paragraph 14 of Bailey's declaration includes language authorizing "*sublet* work", Glassco <u>does not actually include this assignment of benefits paragraph, nor the "sublet" language, on</u>

Glassco attempts to evade the Repair Act's remedial anti-subcontracting provisions by advancing a "red herring" argument to the effect that "[t]here is nothing under federal or state law that forbids sellers of goods and services from delegating performance to a third party". See ECF No. 123, p.14. That indeed may be so, but the actual issue here is whether a repair shop may subcontract repair work without providing notice to, or obtaining consent from, the customer. The Repair Act clearly forbids such conduct. See Fla. Stat. § 559.920(14).

Glassco also tries to evade the Repair Act's anti-subcontracting provisions with a tortured semantic argument to the effect that: (i) the Repair Act only provides that repair work cannot be "subcontracted" without notice or consent; (ii) though all of the Glass Services billed through Glassco admittedly were performed by "independent contractors", the "independent contractors" somehow were not "subcontractors"; and therefore (iii) the Repair Act's anti-subcontracting provisions supposedly do not apply. See ECF No. 123, pp.15-16. In keeping with the meritless nature of this argument, the

---

the work order that the insureds purportedly signed at the time of the Glass Services. See Exhibit H to Eberling Declaration for what the actual assignment of benefits that appears on the work order looks like. Rather, this assignment of benefits language appears to be taken from a separate page annexed to the "customer form" that Glassco did not start providing to insureds until at least 2018. See Bailey Dep., 105:5-7; 136:9-11; 170:9-16. Before 2018, the assignment of benefits on the customer form, containing the "sublet" language, was virtually illegible. See Exhibit H to Eberling Declaration; see also "Composite D" included as part of Wilemon's motion for summary judgment – ECF No. 127, p.73. Additionally, this "customer form" was not actually provided to the insured at the time the independent contractor performed the Glass Services, instead it was provided when the "safety inspector" approached the insureds, and Glassco never did anything to verify that the signature on the customer form actually belonged to the customer. See Bailey Dep., 105:15-18, 24-25: 106:1-2. Lastly, it is entirely unclear what "sublet" even means in this context, but that word alone tucked into – at least until 2018 – a virtually illegible form that is not even given to the insureds at the time of installation is not sufficient notice, especially in light of the fact that the installers otherwise completely represented that they worked for Glassco, when in fact they were independent contractors to whom Glassco had subcontracted the work.

only "authority" proffered by Glassco is a citation to an article called "Subcontractor vs. Independent Contractor: Everything You Need to Know" on a website called "upcounsel.com". See id.[22] In fact, Black's Law Dictionary defines "subcontractor" as "[s]omeone who is awarded a portion of an existing contract by a contractor", and defines "contractor" as "one who contracts to do work for or supply goods to another".[23] In this context, when Glassco outsourced the actual performance of the Glass Services to third-party independent contractors – who used their own equipment and vehicles to perform the Glass Services, received no training from Glassco, and typically had their own repair shops, and were usually not even paid by Glassco – it obviously was "subcontracting" the repair work.[24] Accordingly, for all the reasons set forth herein, Glassco pervasively failed to comply with various material provisions of the Repair Act when providing Glass Services, rendering the purported Glass Services non-compensable. Consequently, it is GEICO – and not Glassco – that is entitled to summary judgment. See ECF No. 125.

### 3.    Glassco Did Not Obtain Valid Assignments of Insurance Benefits from GEICO Insureds.

---

[22] According to its website, "upcounsel.com" appears to be a legal staffing or networking website that connects attorneys and prospective clients.

[23] Similarly, according to the Bouvier Law Dictionary, a "sub-contractor is any person or entity contracted by a contractor to perform work on the primary contract for a job or services to another". For its part, the Merriam-Webster dictionary defines "subcontractor" as "an individual or business firm contracting to perform part or all of another's contract".

[24] Glassco contends that since Andrew Victor, a shareholder of Glassco, performed installations, therefore the Glass Services were not subcontracted to independent contractors. See ECF No. 123, p.16. This is another entirely misleading representation of the record in this case. Out of the 1783 windshield replacements  at issue in this case, Victor purported to install, at most, five of these windshields. See Exhibit E to Eberling Declaration highlighting five instances where Victor was compensated for an "installer expense"; see also Victor Dep., 35:16-17 (in which Victor noted that he may "have done one or two" installations at most).

Additionally, the facts in the record demonstrate that Glassco lacked valid assignments of benefits from the GEICO insureds, and therefore never were entitled to collect on Glassco's claims for Glass Services in the first place. In particular, to the extent that the GEICO insureds ever purported to assign their insurance benefits to Glassco, the assignments were made – <u>explicitly</u> – in consideration for Glass Services that were to be "performed by" Glassco, not by some third-party independent contractor with no oversight by Glassco. See Eberling Decl., ¶ 13; Bailey Dep., 104:23-25; 105:1-7; 118:8-11; 126:17-24.[25] Glassco contends that GEICO somehow lacks standing to challenge the validity of these purported assignments of benefits. This contention is totally baseless, and the central case Glassco cites to for this meritless proposition – Livonia Prop. Holdings, L.L.C. v. 12840-12976 Farmington Rd. Holdings, L.L.C., 717 F. Supp. 2d 724, 736-37 (E.D. Mich. 2010),[26] – is inapposite. See ECF no. 123, p.18,19. In contrast to the situation in Livonia, GEICO is not a debtor challenging an assignment of its debts. Rather GEICO contends that Glassco lacks standing to pursue collection from GEICO as the purported assignee of GEICO insureds' insurance benefits.[27]

---

[25] In this context, Glassco's subsequent contention that there was some sort of "equitable assignment" here is completely baseless. See ECF no. 123, p.18,19.

[26] The three other cases Glassco cites to – Lugassy v. Independent Fire Ins. Co., 636 So.2d 1332, 1335 (Fla. 1994), Kerr v. Wells Fargo Bank, 2015 WL 8042272 (M.D.Fla. 2015), and In re Canellas, 2012 WL 868772, at *3 (M.D.Fla. 2012) – are also completely inapposite, and other than just inserting the case citations, Glassco makes no attempt to show how these cases apply. See ECF No. 123, p.19

[27] Furthermore, and contrary to Glassco's contention – see ECF No. 123, p.28, citing Eberling Depo – whether GEICO requires submission of a signed assignment of benefits as a condition precedent to processing a claim is a wholly different matter than whether Glassco needs to actually obtain an assignment of benefits from an insured in order to have standing to make the claim to the insurer in the first place. Even Glassco acknowledges that repair shops require assignments in order to submit insurance claims to insurers. See ECF No. 123, p.2.

At bottom, Glassco did not obtain a valid assignment supported by actual consideration and mutual assent, consequently, there is no contract and Glassco has no right to collect on its claims for the purported Glass Services. See, e.g., Rubinstein v. Keshet Inter Vivos Trust, 2018 U.S. Dist. LEXIS 185666 at * 33 (S.D. Fla. 2018)(noting that, under Florida law, an assignment is considered a contract and must be supported by consideration to be valid); Petersen v. Am. Gen. Life Ins. Co., 2016 U.S. Dist. LEXIS 202728 at * 8 (M.D. Fla. 2016)(granting summary judgment for defendant on breach of contract claim, where "[n]o meeting of the minds took place, as required by black letter contract law.").

## 4. The Defendants are Not Entitled to Summary Judgment on GEICO's Declaratory Judgment Claim

Even so, Glassco contends they it is entitled to summary judgment on GEICO's declaratory judgment claim.. See ECF No. 123, p. 8-22. For all the reasons set forth above, Glassco is incorrect, as there is ample evidence in the record to demonstrate that Glassco operated in pervasive violation of the Repair Act – and therefore forfeited its right to payment. See, e.g., Osteen, 1616 Sunrise Motors, Inc., supra.[28]

Accordingly, Glassco's summary judgment motion should be denied.

---

[28] Inasmuch as it: (i) subcontracted all of the purported Glass Services to independent contractors without notice to or consent from GEICO or the relevant GEICO insureds, in violation of Fla. Stat. § 559.920(14); (ii) falsely represented to GEICO – in every claim – that they had obtained valid assignments of comprehensive insurance benefits from the GEICO insureds, when in fact it had not obtained valid assignments, in violation of Fla. Stat. § 559.920(8); (iii) violated – in every claim – the written estimate and estimate waiver provisions of the Repair Act, in violation of Fla. Stat. § 559.905(1) and (2); and (iv) violated – in every claim – the invoice provisions of the Repair Act, in violation of Fla. Stat. § 559.911. Moreover, the record here amply demonstrates that Glassco lacked valid assignments of benefits from the GEICO insureds, and – as a result – lacked standing to collect on its outstanding Glass Services charges in the first instance.

5.      **Glassco is Not Entitled to Summary Judgment on GEICO's FDUTPA Claim**

Glassco next argues that it entitled to summary judgment on GEICO's FDUTPA claim because: (i) it supposedly had not committed any deceptive acts or unfair practices; (ii) there supposedly was no harm to consumers; (iii) GEICO supposedly did not suffer any actual damages; and (iv) GEICO supposedly cannot establish that the "practices of which it complains are the cause of its damages". See ECF No. 123, pp. 22-29. These arguments lack merit. First, contrary to Glassco's argument, Glassco has engaged in deceptive acts and unfair practices.[29] These acts were deceptive because they were likely to – and did – mislead GEICO into believing that it had an obligation to pay $720,249.18 worth of Glassco's Glass Services charges, when in fact GEICO had no such obligation[30]. See Eberling Decl., ¶ 14.

---

[29] For example, as noted herein, as well as in GEICO's own motion for summary judgment, the record demonstrates that Glassco: (i) unlawfully subcontracted all of its purported Glass Services to independent contractors without notice to or consent from the relevant GEICO insureds; (ii) falsely represented to GEICO that it had obtained valid assignments of comprehensive insurance benefits from the insureds, when in fact it had not; (iii) never complied with the written estimate provisions of the Repair Act; (iv) never complied with the invoice provisions of the Repair Act; and (v) falsely represented that Glassco was entitled to reimbursement on the charges, when in fact it was not. See ECF No. 125, pp.13-25.

[30] Glassco's argument for summary judgment on GEICO's FDUTPA claim is simply a reiteration of the same theory it posits throughout its brief – namely, that Glassco could operate in pervasive violation of the Repair Act, and still collect on its unlawful charges to GEICO, because GEICO does not fall within the Repair Act's definition of a "customer" since it is an insurer. See ECF No. 123, p.24. However, Glassco ignores the fact that the highest court in Florida to have considered this question – the District Court of Appeals – rejected a virtually identical attempt to circumvent the Repair Act's remedial provisions through an improperly-narrow construction of the term "customer". See 1616 Sunrise Motors, Inc., supra; see also Raymar Constr. Co., supra (reversing trial court, which improperly had imposed a narrow construction on the term "consumer transaction" in the Repair Act). While it is true – as noted above – that the court in Auto Glass America dismissed a plaintiff-insurer's FDUTPA claim that was predicated on a repair shop's violation of the Repair Act – because the insurance company was not a "customer" as defined the Repair Act – the Auto Glass America court specifically noted in its decision that it had not been presented with any helpful, binding authority on the issue. See Auto Glass America at *1024. In the present case, Plaintiffs respectfully

At a minimum, these practices were "unfair" as a matter of law because they offended established public policy, as set forth in the Repair Act's remedial provisions regarding subcontracting, misleading statements, written estimates, work orders, and invoices. See, e.g., State Farm Mut. Auto. Ins. Co. v. First Care Solution, Inc., 232 F. Supp. 3d 1257, 1268-1269 (granting summary judgment to plaintiff-insurer on FDUTPA claim, where facts indicated that defendant engaged in unfair and deceptive acts and practices by obtaining payment for services that insurer had a right to deny as unlawfully rendered); Med. Serv. Ctr. of Fla., 103 F. Supp. 3d at 1354-1355 (same).[31]

Second, Glassco contends that there was no harm to the *consumer* because the consumer received a "brand new windshield and, who, would never pay any amount out of pocket, because of the no-deductible statute". See ECF No. 123, p.27. In this context, it appears Glassco is arguing that FDUTPA only permits a cause of action to an individual, natural person consumer, and not to an insurance company like GEICO. If this is what Glassco is driving at, it is wrong.[32]

---

submit that the District Court of Appeals decision in 1616 Sunrise Motors, Inc. – which had not been presented to the court in Auto Glass America – is controlling.

[31] The fact that the Repair Act itself does not include language "that expressly indicates that if can form the predicate for a FDUTPA" violation (see ECF No. 123, p.24), is irrelevant, as various Florida courts have ruled that a plaintiff-insurer may recover damages under the FDUTPA based on evidence that a defendant misrepresented its compliance with Florida law and entitlement to recover insurance benefits in the first instance – as is the case in the present matter. See, e.g., State Farm Mut. Auto. Ins. Co. v. Physicians Group of Sarasota, L.L.C., 9 F. Supp. 3d 1303, 1313 (M.D. Fla. 2014)(observing that the FDUTPA is to be "liberally construed", and rejecting motion to dismiss plaintiff-insurer's FDUTPA claims based on insurance fraud scheme); State Farm Mut. Auto. Ins. Co. v. Med. Serv. Ctr. of Fla., 103 F. Supp. 3d 1343, 1354-1355 (S.D. Fla. 2015)(granting plaintiff-insurer summary judgment on FDUTPA claim, where "Defendants engaged in unfair and deceptive acts and practices in the conduct of their trade and commerce by unlawfully operating medical clinics, in violation of Florida law.").

[32] See, e.g., Physicians Injury Care Ctr., Inc., supra; State Farm Mut. Auto. Ins. Co. v. Med. Serv. Ctr. of Fla., 103 F. Supp. 3d 1343, 1354-1355 (S.D. Fla. 2015)(granting plaintiff-insurer summary judgment on

Third, Glassco contends that GEICO cannot prove actual damages under FDUTPA. <u>See</u> ECF No. 123, p.27. This is incorrect. GEICO has demonstrated that it suffered actual damages in this case, which are measured by "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties", in the amount of $720,249.18. <u>See</u> <u>S. Wind Aviation, LLC v. Cessna Aircraft Co.</u>, 2014 U.S. Dist. LEXIS 194299 at *26- 27(M.D. Fla. 2014). As discussed above, a repair shop that violates the Repair Act is not entitled to <u>any</u> payment, even in <u>quantum</u> <u>meruit</u>, and regardless of whether services were actually performed.  Accordingly, Glassco, which was in violation of the Repair Act with respect to <u>every single claim</u>, was not entitled to any payment for its services. Consequently, the value of Glassco's purported "services" in the condition in which they were delivered was $0, and the value of the services in the condition in which they should have been delivered was $720,249.18. The difference between these two numbers – <u>i.e.</u>, $720,249.18 – represents the actual damages in this case.[33]

---

FDUTPA claim); <u>Gov't Emples. Ins. Co. v. Clear Vision Windshield Repair, L.L.C.</u>, 2017 U.S. Dist. LEXIS 47353 at *9 (M.D. Fla. 2017)(noting that an insurance company has standing to bring a claim under FDUTPA).In any case, GEICO insureds were also harmed as they had their "signatures" forged on assignments of benefits, and, as set forth herein, were led to believe that Glassco would perform the Glass Services, when in fact the Glass Services were subcontracted to totally independent third-parties without their knowledge or consent. <u>See</u> Eberling  Decl., ¶¶ 13, 31-33.

[33] In this setting, and contrary to Glassco's assertion that a refund and restitution is not permitted under FDUTPA (<u>see</u> ECF No. 123, p.27), many state and federal courts have held that a party can seek restitution or a refund under FDUTPA. <u>See</u>  <u>Bohlke v. Shearer's Foods, LLC</u>, 2015 U.S. Dist. LEXIS 6054, at *8, *23 (S.D. Fla. 2015) (allowing for a full refund under FDUTPA when the product as issue was rendered valueless in part because of Defendant's unfair trade practices);  <u>Outreach Hous., LLC v. Office of the AG</u>, 221 So. 3d at 697 (Fla. 4th DCA 2017)(allowing for restitution under FDUTPA); <u>FTC v. Mylan Labs., Inc.</u>, 99 F. Supp. 2d 1 (D.D.C. 1999)(noting that "part of the 'liberal' construction required by [FDUTPA] is to construe statutory damage remedies in a way that makes

Finally, Glassco argues that GEICO cannot establish causation. <u>See</u> ECF No. 123, pp. 27-29. Once again, Glassco is incorrect. The Defendants misled GEICO into believing that it had an obligation to pay $720,249.18 worth of Glassco's Glass Services charges, when in fact GEICO had no such obligation. These deceptive acts and unfair practices were the cause of GEICO's damages.

Accordingly, Glassco is not entitled to summary judgment on GEICO's FDUTPA claim.

### 6.   The Defendants are Not Entitled to Summary Judgment on GEICO's Common Law Fraud Claim

Glassco first argues that GEICO's fraud claims are barred by the Economic Loss Rule, because the parties' relationship supposedly is governed by contract as the result of assignments of insurance benefits. <u>See</u> ECF 122, pp.29-30. This is an argument that repeatedly has been rejected in analogous insurance fraud and racketeering cases, because an insured's assignment of insurance benefits does not create a contractual relationship between the assignee and the insurer. <u>See</u>, <u>e.g.</u>, <u>State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.</u>, 427 Fed. Appx. 714 (11th Cir. 2011)(rejecting identical argument that plaintiff-insurer's common law fraud claim was barred because the plaintiff-insurer and the defendants supposedly were in privity of contract as the result of assignments of insurance benefits); <u>Altamonte Springs Diagnostic Imaging,</u>

---

consumers whole); <u>see also</u>  <u>E-Racer Tech, LLC v. Office of the Attorney Gen. Dep't of Legal Affairs</u>, 198 So. 3d 1107, 1110 (Fla. 4th DCA 2016)(holding that restitution is an available remedy under FDUTPA). The one case that Glassco cites to that supposedly supports its contention that a refund or restitution is not permitted under FDUTPA – <u>Gibson v. Resort at Paradise Lakes, LLC</u>, 2017 WL 3421532, at *5 (M.D.Fla. 2017) – never mentions restitution or refund. <u>See</u> ECF No.123, p.27. Rather that case held that consequential or special damages are is not permitted under FDUTPA.

Inc., supra, at * 10 - * 11 (M.D. Fla. 2011)(rejecting identical argument).[34]

Glassco next argues that it is entitled to summary judgment on GEICO's common law fraud claim, based on conclusory contentions that: (i) Glassco did not make any false statement to GEICO; and (ii) GEICO did not rely on any of Glassco's misrepresentations. See ECF No. 123, pp. 30-31.

Glassco's arguments do not withstand inspection. As set forth herein and in GEICO's own pending motion for summary judgment, Glassco – in every claim – falsely represented it had valid assignments of insurance benefits, and was entitled to payment, when in fact it did not have valid assignments, operated in pervasive violation of the Repair Act, and therefore was not entitled to payment.

Glassco's "reliance" argument – which is based on conclusory statements regarding what GEICO knew and when GEICO knew it – does not entitle it to summary judgment, either. GEICO disputes Glassco's contentions, and maintains that it paid Glassco in reliance on the claims submitted through Glassco to GEICO. At the time when GEICO made these payments, GEICO did not know that Glassco: (i) did not itself provide the purported Glass Services; (ii) had subcontracted the Glass Services to independent contractors; (iii) lacked valid assignments of insurance benefits from the pertinent Insureds; (iv) operated in violation of the Repair Act; (v) and was not entitled to payment for the Glass Services in the first place. See Eberling Decl., ¶

---

[34] Though the Defendants cite to Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc., 657 F. Supp. 2d 1279 (M.D. Fla. 2009), and contend that it stands for the proposition that GEICO was in privity with the Defendants as the result of assignments of PIP Benefits (see ECF No. 122, p. 30), more recent decisions – including the 11th Circuit's decision in Physicians Injury Care Ctr., supra – have taken the contrary, controlling view.

14.[35]

## 7. Glassco is Not Entitled to Summary Judgment on GEICO's Unjust Enrichment Claim

Glassco's argument for summary judgment on GEICO's unjust enrichment claim is just a variation of their argument for why it is entitled to summary judgment on GEICO's other claims. Namely, that: (i) the Repair Act only provides a private right of action to a "customer"; (ii) insurance companies such as GEICO do not meet the statutory definition of a "customer"; and therefore (iii) GEICO cannot stake its unjust enrichment claim on the Defendant's pervasive violations of the Repair Act. See ECF No. 123, pp.32-34. This is incorrect. It is clear that a repair shop that operates in violation of the Repair Act is not entitled to collect on its charges, even in quantum meruit, even from someone that is not a customer, and must refund any payments that it has received. See, e.g., 1616 Sunrise Motors, Inc.[36]

---

[35] Glassco's contends that the "legislature has expressly rejected" the right to reimbursement in the "windshield arena". See ECF No. 123, p.31. This conclusory assertion is meritless, and indeed Glassco cites to no legislative or other authority for this proposition. As noted above, every Florida court to have considered this issue have held that repair shops which violate the Repair Act are not entitled to collect on their charges, even in quantum meruit. See e.g. Sunrise Motors, supra. Moreover, Glassco also cites to Totale, Inc v. Smith 877 So.2d 813 (Fla. 4th DCA 2004) which outlines the general standards for the measurement of damages for "fraudulent representation." Id. However, under either standard advanced by the court – the "benefit of the bargain" standard or the "out-of-pocket" standard – the actual value of Glassco's Glass Services was zero since, as discussed above, a repair shop that violates the Repair Act is not entitled to any payment, even in quantum meruit, and regardless of whether services were actually performed.

[36] See also State Farm Mut. Auto. Ins. Co. v. Physicians Group of Sarasota, L.L.C., 9 F. Supp. 3d 1303, 1312-1313 (M.D. Fla. 2014)(holding that unlawfully rendered services cannot qualify as adequate consideration to defeat an unjust enrichment claim); State Farm Fire & Cas. Co. v. Silver Star Health & Rehab, Inc., 2011 U.S. Dist. LEXIS 145629 at *16 (M.D. Fla. 2011)(holding that – as the result of the defendants' conduct – the plaintiff-insurer mistakenly paid claims it was entitled to deny, and it therefore would be inequitable to permit the defendants to retain the payments); State Farm Mut. Auto. Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc., 2011 U.S. Dist. LEXIS 146926 at * 13 (M.D. Fla. 2011)(holding that insurer did not bargain for unlawfully rendered services, and the defendant service provider's retention of payments for these services was sufficient to support

Even so, it is undisputed that between January 2016 and mid-2019, GEICO paid Glassco $720,249.18 on claims for the Glass Services that Glassco purported to provide to GEICO insureds. See Eberling Decl., ¶ 14. GEICO was entitled to deny these claims for Glass Services, and – for the reasons set forth herein – it would be inequitable to permit Glassco to retain the proceeds of its unlawful activities. Accordingly, it is GEICO, and not Glassco, that is entitled to summary judgment on its unjust enrichment claim.

**8.    Glassco is Not Entitled to Summary Judgment on its Affirmative Defenses**

**(i)    Glassco is Not Entitled to Summary Judgment on its Waiver/Voluntary Payment Doctrine Defense.**

The Defendants contend that it is entitled to summary judgment on its voluntary payment doctrine defense. See ECF No. 123, pp. 34-35. However, Glassco does not point to anything in the record that supports this assertion. The only evidence in the record relating to this issue demonstrates that GEICO <u>did not have knowledge</u> of the factual circumstances that rendered Glassco's charges to GEICO unlawful and non-reimbursable. See Eberling Dec., ¶ 14.

In this context, the law in the 11th Circuit is clear that the voluntary payment doctrine does not apply when a "a plaintiff makes the allegedly excessive payments to a defendant without the knowledge of the factual circumstances rendering them

---

a cause of action for unjust enrichment); <u>Gov't Emples. Ins. Co. v. Clear Vision Windshield Repair, L.L.C.</u>, 2017 U.S. Dist. LEXIS 47353 at * 14 (M.D. Fla. 2017)(sustaining unjust enrichment claim in similar case involving unlawful billing for Glass Services, and noting that GEICO's "remedy is unjust enrichment").

excessive or illegal". [37]Accordingly, it is GEICO that should be entitled to summary judgment on Glassco's waiver/voluntary payment defense as there is a complete absence of evidence to support this defense.[38]

**(ii)   Glassco is Not Entitled to Summary Judgment on its Compulsory Counterclaim Affirmative Defense**

Glassco advances a meritless argument to the effect that GEICO was required to assert its claims in this case as "compulsory counterclaims" in its multitude of county court collections cases, and that they are entitled to summary judgment on this issue. See ECF No. 123, p. 35. First, Glassco's contention that "Geico's claims in this case arose from the same operative facts as the facts of the underlying state court litigation"– see ECF No. 123, p.35 – is not supported by any evidence in the record. Second,  as noted above, federal courts – adjudicating fraud and racketeering cases – have rejected the notion that state court cases aimed at recovering on claims are related to federal insurance fraud and racketeering cases such as the present action.[39] Accordingly, Glassco's motion for summary judgment on its compulsory counterclaim defense should be denied.

---

[37] See Brink v. James, 341 F. Supp. 3d 1314 at *11(S.D. Fla. 2018)(fact question as to whether plaintiffs had knowledge of pertinent facts precluded summary judgment on voluntary payment doctrine).

[38]See Cox v. Porsche Fin. Servs., 2020 U.S. Dist. LEXIS 248834 at *11 (S.D. Fla. Aug. 17, 2020)(plaintiff met its "burden at summary judgment by showing that there is an absence of evidence to support [d]efendant's voluntary payment doctrine defense").

[39] See, e.g., Auto Glass Am., LLC, supra;  Physicians Group of Sarasota, L.L.C., supra; Physicians Injury Care Ctr., supra; see also State Farm Mut. Auto. Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc., 2012 U.S. Dist. LEXIS 59671 at * 3 - * 4 (M.D. Fla. 2012)(healthcare providers' claim that plaintiff-insurer systematically underpaid PIP claims was not a compulsory counterclaim in relation to plaintiff-insurer's PIP fraud claims, "even though both claims relate to the same bills", because the counterclaim was not based on the same core facts as the insurer's fraud-based claims).

## CONCLUSION

For the reasons stated above, Glassco's motion for summary judgment should be denied in its entirety.

Respectfully submitted,

/s/ John P. Marino
John P. Marino (FBN 814539)
SMITH, GAMBRELL & RUSSELL, LLP
50 North Laura Street, Suite 2600
Jacksonville, Florida 32202
Phone:  (904) 598-6100
jmarino@sgrlaw.com

and

Max Gershenoff (admitted pro hac vice)
Yonatan Bernstein (admitted pro hac vice)
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11550
Phone:  (516) 357-3000
max.gershenoff@rivkin.com
yonatan.bernstein@rivkin.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on March 5, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to the counsel of record in this case.

/s/ John P. Marino
*Attorney*