UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GOVERNMENT EMPLOYEES
INSURANCE CO., et al.,

      Plaintiffs,

v.                                   Case No. 8:19-cv-1950-KKM-JSS

GLASSCO INC., et al.,

      Defendants.

_____/

## ORDER

In response to being accused of orchestrating a sprawling scheme to defraud by Plaintiffs Government Employees Insurance Company, Geico Indemnity Company, and Geico General Insurance Company (collectively, Geico), Defendant Glassco brings counterclaims for an antitrust violation under the Sherman Act; a violation under the Florida Deceptive and Unfair Trade Practices Act; tortious interference with a business relationship; and violations under the Racketeer Influenced and Corrupt Organizations Act (RICO). Plaintiffs move to dismiss Glassco's counterclaims, (Doc. 72), which Glassco opposes (Doc. 75). Because Glassco fails to allege facts that would render any of its counterclaims plausible, the Court grants Geico's motion to dismiss for failure to state a claim for relief.

## I.   BACKGROUND

Geico initiated this lawsuit against Glassco and its joint owners, Jason Wilemon, John Bailey, and Andrew Victor. (Doc. 1.) Put briefly,[1] Geico alleges that the Defendants concocted a scheme in which Glassco used independent contractors to submit fraudulent claims to Geico for windshield repairs completed—or not completed—for Geico's insureds. (*See id.*)

Glassco answered Geico's complaint and also brought its own counterclaims. (Doc. 65.) Glassco seeks relief under the Sherman Act, 15 U.S.C. § 1 (Count I); the Florida Deceptive and Unfair Trade Practices Act, § 501.201, Fla. Stat. (Count II); Florida common law for tortious interference in a business relationship (Count III); and federal RICO (Count IV). (*See* Doc. 65.) In sum, Glassco alleges that Geico engaged in price-fixing by agreeing among themselves to set windshield reimbursements at 47% their costs and with Safelite Solutions, LLC, to administer their windshield repair and replacement claims. (Doc. 75 at 2.)

Geico challenges Glassco's Counterclaims in their entirety, arguing that they fail to state a plausible claim for an antitrust violation, a FDUTPA violation, tortious interference, and federal RICO. Glassco concedes the lack of merit on Count III, and the Court agrees that Glassco's remaining Counterclaims fail to state any plausible claim for relief and grants

---

[1] The details of Geico's claims are not relevant for determining the sufficiency of Glassco's counterclaims.

the motion to dismiss in full.

## II.   ANALYSIS

### a.  Motion to Dismiss

To survive a motion to dismiss, a complaint must include enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is facially plausible when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). This tenet, of course, is "inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

#### i.  Count I: Antitrust

Geico argues that Glassco fails to allege a *per se* antitrust violation because Glassco's allegations of horizontal price-fixing are conclusory. (Doc. 72 at 9.) And evaluating Glassco's allegations of vertical price-fixing under the rule of reason standard, Geico argues Glassco still fails to state a claim because Glassco never asserts an antitrust injury, i.e., an injury to the public, and fails to identify the relevant market in which the harm resulted.

(*Id.* at 10–12.) At bottom, Geico argues that Glassco's antitrust claim should be dismissed because it is conclusory and implausible. (*Id.* at 12–14.)

Glassco counters that it sufficiently alleges per se antitrust violations by alleging a horizontal price-fixing agreement between the three Geico entities and price-fixing and steering agreements with body shops conducting repairs. (Doc. 75 at 4–8.) Further Glassco argues that the distinction between horizontal and vertical agreements is not relevant because the violation here contains vertical and horizontal elements and is a per se violation. (*Id.* at 7.) Even so, Glassco argues that it adequately alleges antitrust violations under a rule of reason because it alleges that Geico's conduct affected the prices of goods and services in the Florida market for windshield repair. (*Id.* at 8–9.)

Section One of the Sherman Act prohibits combinations and conspiracies that restrain interstate trade. 15 U.S.C. § 1. Crucial to determining whether a plaintiff adequately alleges an antitrust violation is determining whether the plaintiff alleges a per se antitrust violation or an antitrust violation under the "rule of reason." *See Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007). Per se violations are rare and reserved for antitrust violations "whose character is well understood and that almost always harm[s] competition." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1334 (11th Cir. 2010). Examples of per se violations include horizonal price fixing among competitors, group boycotts, and horizontal market division. *Id.* Vertical price

agreements,[2] on the other hand, are usually analyzed under the rule of reason. *See id.* at 1335–36 ("After *Leegin* [*Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877 (2007)] therefore, courts must evaluate vertical resale price maintenance agreements using the rule of reason.").

Rule of reason violations occur when a practice imposes an unreasonable restraint on competition. *Spanish Broadcasting Sys. v. Clear Channel Commc'ns*, 376 F.3d 1065, 1071 (11th Cir. 2004). Whether a restraint on trade is unreasonable requires considering different factors, "including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect." *Id.* (quotation omitted). A plaintiff claiming a rule of reason violation must adequately allege (1) actual or potential harm to competition and (2) the relevant market that the defendant's conduct harms. *Clear Channel*, 376 F.3d at 1071–72; *Jacobs*, 626 F.3d at 1336. In alleging harm to competition, the plaintiff "must show harm to competition rather than to competitors." *Clear Channel*, 376 F.3d at 1071. And when specifying the relevant market, the plaintiff must define a geographic market and a product market. *Jacobs*, 626 F.3d at 1336.

---

[2] Antitrust actions implicate two kinds of agreements: horizontal and vertical ones. *Spanish Broadcasting Sys. v. Clear Channel*, 376 F.3d 1065, 1071 (11th Cir. 2004). A horizontal agreement consists of an agreement between companies that compete directly with each other. *Id.* A vertical agreement consists of an agreement between "businesses operating at different levels of the same product's production chain or distribution chain." *Id.*

Count I fails to specify whether it alleges a per se or rule of reason antitrust violation. (Doc. 65 at 7–10.) But under either theory, Glassco fails to adequately allege a claim for relief.

### 1. No Per Se Antitrust Violation

For per se antitrust violations, a plaintiff need not define the relevant market or prove market power. *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 316–17 (3d Cir. 2010) (citations omitted). But a per se violation claim premised on horizontal price fixing requires allegations that price fixing occurred between competitors. *See Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984); *Jacobs*, 626 F.3d at 1334.

In an attempt to satisfy this last requirement, Glassco alleges that the Geico entities "combined and agreed among themselves . . . to fix the price of windshield repairs and replacements," thereby violating the antitrust laws by "horizontally . . . fixing prices between the Geico [entities] themselves." (Doc. 65 at 7, 9.) Glassco also alleges that "[t]o further its price fixing scheme, the Geico [entities] steer their insureds to windshield companies that agreed to its fixed price." (*Id.* at 8.) Taking as true Glassco's allegations about horizontal price fixing between the Geico entities, Glassco fails to allege a claim for relief for a per se antitrust violation because notably absent are any allegations that the Geico entities are competitors with each other. Thus any per se violation claim for horizontal price fixing fails.

6

Per se antitrust violations also include group boycotts. *Jacobs*, 626 F.3d at 1334. But those violations are generally limited to situations in which "firms with market power boycott suppliers or customers in order to discourage them from doing business with a competitor." *FTC v. Indiana Fed'n of Dentists*, 476 U.S. 447, 458–59 (1986).

Glassco alleges that Geico committed antitrust violations by boycotting Glassco in the following ways:

> [S]teering actual and potential customers away from Glassco through dissemination of false and misleading statements about Glassco, causing delays and obstacles in the claims process, denial of claims, and other economically coercive threats which misrepresented that the use of Glassco's services will result in low quality work or greater out-of-pockets costs to customers and channeling windshield repairs and replacements to those windshield repair shops, primarily Safelite Solutions, which would abide by the Geico [entities'] fixed prices.

(Doc. 65 at 9.)  But nowhere in the counterclaims does Glassco allege that it is a supplier or customer of Geico or that Geico is boycotting Glassco to discourage Glassco from "doing business with a competitor." *Indiana Fed'n of Dentists*, 476 U.S. at 458–59. As a result, any claim for a per se antitrust violation for boycotting fails.

## 2.  *No Rule of Reason Antitrust Violation*

Glassco also fails to allege a plausible claim for relief under a rule of reason antitrust theory—nowhere does Glassco allege how Geico's actions harm competition or what constitutes the relevant geographic and product markets. Therefore, Glassco's antitrust claim fails under a rule of reason theory. Count I is dismissed.

ii.  Count II: Florida Deceptive and Unfair Trade Practices Act

Geico argues that Glassco fails to adequately allege a claim for relief under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA). (Doc. 72 at 19–21.) Geico argues that, like its antitrust claim, Glassco fails to specify which customers Geico steered to Safelite and other companies, to identify a single claim that was denied or delayed because of a failure to agree to Geico's fixed price, and to allege damages. (*Id.* at 19–20.) Glassco responds that it adequately alleges a cause of action under FDUTPA because it plausibly alleges an antitrust violation. (Doc. 75 at 15.)

To allege a claim for relief under FDUTPA, a plaintiff must allege (1) a deceptive act or unfair trade practice, (2) causation, and (3) actual damages. *Dolphin LLC v. WCI Commun., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013). A deceptive act is a representation, omission, or practice likely to mislead a consumer acting reasonably under the circumstances. *Alhassid v. Nationstar Mortg. LLC*, 771 F. App'x 965, 969 (11th Cir. 2019) (per curiam). An unfair trade practice "offends established public policy" and is "immoral, unethical, oppressive, and unscrupulous or substantially injurious to consumers." *Id.* (citations omitted). Under FDUTPA, actual damages equal "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016)

8

(quoting *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984)). Stated differently, the plaintiff must adequately allege a difference in value between what was promised and what was received. *Democratic Republic of the Congo v. Air Cap. Grp., LLC*, 614 F. App'x 460, 472 (11th Cir. 2015).

Glassco fails to allege a claim for relief under FDUTPA: it does not allege that Geico committed a deceptive act likely to mislead a consumer acting reasonably under the circumstances;[3] or that Geico's practice of "steering" insureds to certain repair shops offends established public policy. Thus, no factual allegations support the first element of a FDUTPA claim.

Further, Glassco fails to allege any facts that make it plausible that it suffered actual damages from Geico's actions. (Doc. 65 at 11.) Instead, Glassco's counterclaim puts forth conclusory allegations not entitled to a presumption of truth. *See Iqbal*, 556 U.S. at 681. As a result, Count II is dismissed.

### iii.  Count III: Tortious Interference

Glassco concedes that it fails to state a claim for relief for tortious interference with

---

[3] The closest Glassco comes on this point is alleging Geico "disseminat[ed]. . . false and misleading statements about Glassco" but this assertion does not state whether those misstatements were to consumers. (Doc. 65 at 9.) Even so, this statement alone would not be sufficient to establish a fraudulent statement under the heightened pleading standard of Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *Blair v. Wachovia*, 2012 WL 868878, at *3 (M.D. Fla. Mar. 14, 2012) ("While federal district courts have split as to whether FDUPTA claims are subject to Rule 9(b), this Court concludes that where the gravamen of the claim sounds in fraud, as here, the heightened pleading standard of Rule 9(b) would apply." (citations omitted)).

a business relationship. (Doc. 75 at 15.) The Court accepts Glassco's concession, and Count III is dismissed.

### iv. Count IV: RICO

Assuming Glassco alleges a substantive RICO claim under 18 U.S.C. Section 1962(c) and a conspiracy claim under Section 1962(d), Geico argues that Glassco fails to allege a pattern of predicate acts for racketeering activity, fails to allege causation, and fails to allege Geico's participation in the operation of a racketeering enterprise. (*Id.* at 14–18.) Glassco responds that it plausibly alleges more than two predicate acts and alleges that Geico directed the affairs of the enterprise. (Doc. 75 at 12–15.)

RICO provides a means of imposing civil liability for persons engaged in "a pattern of racketeering activity." *See* 18 U.S.C. § 1962(a)–(d). To bring a civil RICO action, the plaintiff must adequately allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity that (5) causes injury to his or her business or property (6) by reason of the substantive RICO violation. *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1158 (11th Cir. 2019). In addition, the plaintiff must adequately plead the elements of the predicate acts themselves. *See id.*

Glassco alleges that Geico committed the predicate acts of mail fraud, wire fraud, and obstruction of justice. (Doc. 65 at 13.) Glassco also alleges that Geico conspired to violate RICO. (*Id.*)

### 1. *Conduct of an Enterprise*

The first two elements of civil RICO require the plaintiff to plausibly allege "conduct of an enterprise" and that the enterprise had a common goal. *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1283 (11th Cir. 2006). An enterprise is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A plaintiff adequately pleads the existence of an enterprise by alleging facts of an ongoing organization (formal or informal) and facts that the various associates within the enterprise function as a continuing unit. *See Williams*, 465 F.3d at 1284. The "definitive factor" of an enterprise is that it "furnishes a vehicle for the commission of two or more predicate crimes, that is, the pattern of racketeering activity requisite to the RICO violation." *United States v. Goldin Indus., Inc.*, 219 F.3d 1271, 1275 (11th Cir. 2000). Further, the plaintiff must allege that the defendant participates in the operation or management of the enterprise. *See Williams*, 465 F.3d at 1284.

Glassco fails to adequately allege conduct of an enterprise. To begin, Glassco fails to clarify what is the alleged enterprise. (Doc. 65 at 13–18.) In their RICO claim, Glassco incorporates paragraphs 2 through 8 of their antitrust claim. (*Id.* at 13.) But those paragraphs allege an ongoing agreement between the Geico entities "themselves and with various other windshield repair and replacement companies, including Safelite." (*Id.* at 7.)

In its RICO claim, on the other hand, Glassco alleges the following: "Each of the Geico [entities] conducts a pattern of racketeering activity through the enterprise of Safelite Solutions." (*Id.* at 14.) These allegations muddle whether the enterprise is an association between the Geico entities and companies such as Safelite or if Safelite alone is the enterprise controlled by Geico.

To the extent Glassco alleges an enterprise between Geico and Safelite, Glassco fails to allege facts—as opposed to mere conclusions—that plausibly show that Geico participates in the operation or management of the enterprise. And although Glassco alleges that Geico carried out mail and wire fraud "through the enterprise of Safelite Solutions" (the potential second enterprise arrangement), these allegations are conclusory and do not make it plausible that Safelite serves as a vehicle (aka, an enterprise) for committing mail and wire fraud. These shortcomings in Glassco's RICO claim mean that Glassco fails to adequately allege conduct of an enterprise.

## 2. *Pattern of Racketeering*

To  establish a pattern of racketeering, the plaintiffs must plausibly allege that "(1) the defendants committed two or more predicate acts within a ten-year time-span; (2) the predicate acts were related to one other; and (3) the predicate acts demonstrated criminal conduct of a continuing nature." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004) (emphasis omitted); *see* 18 U.S.C. § 1961(5). Racketeering activity

includes an act indictable under a list of criminal provisions, including federal statutes prohibiting mail fraud, wire fraud, and obstruction of justice. *See* § 1961(1).

The continuity element of a pattern of racketeering targets crime that is a "part of a pattern of ongoing, continuing criminality" (close-ended continuity) and crime "that involves criminality that promises to continue in the future" (open-ended continuity). *Jackson*, 372 F.3d at 1265. For open-ended patterns of racketeering, the plaintiff must plausibly allege that "the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future" or that "the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *Id.* at 1265 (quoting *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 242 (1989)). A plaintiff alleging a close-ended pattern of racketeering must plausibly allege a series of related predicates extending over a substantial period of time (i.e., longer than a year). *See id.* at 1265–66 (quoting *H.J. Inc.*, 492 U.S. at 241–42).

Glassco fails at the first step of this analysis to adequately allege any predicate acts. Glassco alleges that Geico committed mail and wire fraud (Doc. 65 at 13), which are subject to the heightened-pleading standard under Federal Rule of Civil Procedure 9(b) and requires a claim to specify (1) what statements or omissions were made; (2) when and where those statements or omissions were made; (3) the content of those statements and how they misled the plaintiff; and (4) what the defendants obtained because of that fraud.

13

*Crawford's Auto Ctr.,* 945 F.3d at 1159. A person commits mail or wire fraud[4] when he or she (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mail or wires in furtherance of that scheme. *Crawford's Auto Ctr.,* 945 F.3d at 1158.

Glassco alleges that the "Geico [entities] . . . use[d] . . . misleading and fraudulent misrepresentations by mails and wires" by directing Glassco's potential customers to providers who agreed to Geico's fixed price, disparaging Glassco's work, "denying the payment of claims for which Glassco performed work," and requiring confidentiality in its price agreements to hide the fraud. (Doc. 65 at 14.) Glasco also alleges that Geico "aggressively engaged" in a scheme to force windshield repair companies to pay Geico's fixed price. (*Id.*) According to Glassco, Geico "misrepresented" to a Glassco customer that if the customer did not use a shop that complied with Geico's fixed price, the customer would be responsible for additional charges. (*Id.* at 14–15.) And Glassco claims that Geico misrepresented to Glassco and a Glassco customer that Glassco used and performed "sub-quality materials and work." (*Id.* at 15.)

Glassco's mail or wire fraud allegations lack the requisite particularity under Rule 9(b). Although Glassco alleges that Geico misrepresented to Glassco and a Glassco customer that "Glassco [used and] performed sub-quality materials and work, the insured

---

[4]  The elements of mail fraud and wire fraud are the same. *Beck v. Prupis*, 162 F.3d 1090, 1095 (11th Cir. 1998).

would be responsible for additional costs if Glassco performed the work, [and] that Glassco does not warrant its work," Glassco never specifies when and where those statements were made; to which customer those misrepresentations were made; how they misled Glassco or the customer; and what Geico obtained—money or property—as a result of its statements or fraudulent scheme.

Further, Glassco never specifies the details of how Geico used the mail system or interstate wires to make any alleged statements or misrepresentations. Instead, in a conclusory fashion, Glassco alleges that Geico "utilized the United States Postal Service mail and other interstate means of communications, including wire services and the internet." (Doc. 65 at 15.) Similarly, Glassco never specifies dates to show how the alleged mail and wire fraud occurred in a ten-year period. Glassco only alleges that Geico's actions occurred "within the past ten years." (*Id.* at 16.) These conclusory allegations fail to plausibly allege a pattern of racketeering for mail and wire fraud.

Glassco also fails to plausibly allege a pattern of racketeering for obstruction of justice. Glassco alleges that Geico "obstructed justice by threatening . . . an expert witness . . . that if the expert testified in court about [the reasonableness of Glassco's prices] . . . Geico would sue the expert witness in federal court," but fails to specify the proceeding in which the unnamed expert was to testify. (Doc. 65 at 15.) That omission proves fatal because "federal obstruction and witness intimidation claims are only applicable to federal

proceedings." *Fla. Evergreen Foliage v. E.I. DuPont De Nemours and Co.*, 165 F. Supp. 2d 1345, 1354 (S.D. Fla. 2001) (Gold, J.). Glassco's failure to provide more than conclusory allegations means that it fails to adequately allege a pattern of racketeering for obstruction of justice.

### 3. *Business or Property Injury by Reason of RICO Violations*

The last two elements of civil RICO require the plaintiff to allege business or property injury "by reason of" the defendant's RICO violations. § 1964(c); s*ee also Williams*, 465 F.3d at 1287. Stated otherwise, causation for a RICO violation requires that the violation be both the "but for" and proximate cause of a business or property injury. *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 265–68 (1992).

Once again, Glassco provides a conclusory allegation: "As a direct and proximate result of each of [the] Geico [entities'] RICO violations, Glassco was injured in its business and property." (Doc. 65 at 17.) How? A plaintiff must allege how it relied on a misrepresentation (if the underlying predicate act is mail or wire fraud) or how the obstruction of justice violation caused it injury. *See Ray v. Spirit Airlines*, 836 F.3d 1340, 1349 (11th Cir. 2016) (discussing standard for pleading injury from RICO violations). Here, Glassco fails to provide facts showing how Geico's alleged misrepresentations or alleged obstruction of justice resulted in a reliance that, in turn, caused it business or property injury.

### 4. Conspiracy

Glassco also alleges that Geico conspired and colluded with Safelite Fulfillment, Inc., and Lindsey Trowell to commit RICO violations. (Doc. 65 at 16); *see* 18 U.S.C. § 1962(d). To adequately plead a conspiracy claim, a plaintiff must allege facts to show (1) that the defendant agreed to the overall objective of the conspiracy or (2) that the defendant agreed to commit to two predicate acts. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010).

Glassco alleges that Geico's conspiracy involves "illegally and fraudulently fixing the price of windshield repairs;" "limiting the network of providers, with financial incentives arrangements with vendors who agree to the price fix;" "profiling non-agreeable shops economically, threatening and enforcing non-payment, delay, steering, complex, inexplicable rules and requirements payment, misrepresentations, and outright claim denial;" and "usurping the power and authority of other vendors through pricing agreements, gag provisions, confidentiality, and termination without cause and obstruction of justice if any provider in the network attempts to interrupt the price fix." (Doc. 65 at 16.) Nowhere in its counterclaim does Glassco allege facts about the agreement Geico, Safelite, and Trowell allegedly made to violate RICO provisions or how Geico agreed to an overall objective to the conspiracy nor does Glassco allege conduct that would permit an inference of an agreement through the parties' conduct. The Court could speculate

17

based on the above litany of conclusory semi-price fixing allegations, but that is not its job. Nor does Glassco allege facts showing that Geico agreed to commit two predicate acts. These allegations fail to state a plausible claim for relief for a RICO conspiracy.

### 5.  Summary of RICO Claims

Glassco's RICO claim suffers on a global and granular level from lack of factual allegations that would make the claim plausible. Glassco alleges insufficient facts of an enterprise, of a common goal of the enterprise, of a pattern of racketeering, of predicate acts, of a business injury or property injury, and of causation. And Glassco fails to state a plausible claim for relief of a RICO conspiracy. As a result, Glassco's RICO counterclaim (Count IV) is dismissed.

### b.  Motion to Strike

Geico moves to strike the reference to attorney Lindsey Trowell from Glassco's counterclaim as it is intended "to vex and harass." (Doc. 72 at 23.) Glassco argues that Geico fails to show that Trowell has "no possible relation to the controversy" and that Geico fails to show how reference to Trowell prejudices them. (Doc. 75 at 15–17.) A court may move to strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Glassco's reference to Trowell is not relevant to this action because the Court is granting Geico's motion to dismiss Glassco's counterclaims. As a result, Geico's motion to strike Glassco's reference to Trowell is denied as moot, now that

none of the counterclaims survive.

### c.  Discovery Order Objections

Glassco objects to the Magistrate Judge's order dated July 1, 2020, which (1) granted Geico's and Lindsey Trowell's motions for protective order and quash subpoenas; (2) stayed discovery on Glassco's counterclaims pending a ruling on Geico's motion to dismiss; (3) denied as moot motions for protective orders and to quash subpoenas for Rob Arnold and John C. Murrow; (4) denied without prejudice Glassco's motion to compel responses to requests for production from Geico; and (5) denied without prejudice Glassco's motion to compel compliance with a Rule 45 subpoena for John Murrow. (Docs. 96, 99.)

The scope of discovery is determined by the pleadings. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any . . . matter . . . relevant to any . . . claim or defense."); *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 n.37 (11th Cir. 1997). To the extent Glassco argues that the discovery it sought was relevant to their counterclaims, that objection is overruled because their counterclaims are dismissed. As a result of dismissing Glassco's counterclaims, none of its discovery requests are relevant.

To the extent Glassco argues that the discovery it sought was relevant to a defense to Geico's claims, Glassco fails to meet its burden of showing that the Magistrate Judge's order is clearly erroneous. A party may object to a magistrate judge's nondispositive order, but the objecting party bears the burden of showing that the magistrate judge clearly erred.

Fed. R. Civ. P. 72(a); *Howard v. Hartford Life & Acc. Ins. Co.*, 769 F. Supp. 2d 1366, 1371–72 (M.D. Fla. 2011) (Howard, J.).

Glassco fails to explain how the discovery it sought is relevant to any defense. (Doc. 99.) Glassco vaguely argues that the discovery requests are relevant to their "affirmative defenses" and to defend Geico's unjust enrichment claim but never specifies which of its sixteen affirmative defenses nor how the discovery request is relevant to an affirmative defense or the unjust enrichment claim. (Doc. 99 at 6.) Glassco's failure to explain in its objection how the discovery requests at issue are relevant to a claim or defense means Glassco fails to carry its burden of showing that the Magistrate Judge clearly erred in her discovery order. As a result, Glassco's objections to the discovery order are overruled.

## III.   CONCLUSION

Glassco fails to state a plausible claim for relief under the Sherman Act, the Florida Deceptive and Unfair Trade Practices Act, Florida common law for tortious interference with a business relationship, and RICO. Because Glassco's counterclaims are due to be dismissed, its reference to Lindsey Trowell—although immaterial to these proceedings— will likewise be rendered moot. And Glassco fails to show that the Magistrate Judge clearly erred in her discovery order. Accordingly, the following is **ORDERED**:

1.  Geico's motion to dismiss Glassco's counterclaims (Doc. 72) is **GRANTED**. The defendants' counterclaims (Doc. 65 at 7–18) are **DISMISSED**.

2. Geico's motion to strike reference to Lindsey Trowell in Glassco's counterclaims (Doc. 72) is **DENIED as moot**.

3. Glassco's objections to the Magistrate Judge's order dated July 1, 2020 (Doc. 99) are **OVERRULED**.

4. Glassco's Motion to Vacate Order on Motion for Protective Order, Order on Motion to Quash, Order on Motion to Compel Objection, and Motion to Review (Doc. 99) are **DENIED as moot**.

**ORDERED** in Tampa, Florida, on September 2, 2021.

Kathryn Kimball Mizelle
United States District Judge

21