UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GOVERNMENT EMPLOYEES
INSURANCE CO., et al.,

      Plaintiffs,

v.                                    Case No. 8:19-cv-1950-KKM-JSS

GLASSCO INC., et al.,

      Defendants.

_____

## ORDER

A windshield crack can start small but grow larger over time, leading to "spider cracks" across the entire windshield.[1] So too with litigation. What began as relatively simple disputes in state court, where Glassco sought unpaid amounts from Geico for windshield-repair claims, has grown into this federal lawsuit alleging racketeering, antitrust violations, and deceptive trade practices. This order resolves five motions for summary judgment—with mixed results for the parties.

For the reasons discussed below, the defendants' motions for summary judgment (Docs. 122, 123, 127, 128) will be **GRANTED IN PART and DENIED IN PART**.

---

[1] *How to Fix Small Cracks & Chips in Your Windshield*, AUTOZONE, https://www.autozone.com/diy/glass/how-to-fix-windshield-cracks (last visited Sept. 13, 2021).

Geico's motion for summary judgment (Doc. 125) will be **DENIED**.

## I.      BACKGROUND[2]

Jason Wilemon, John Bailey, and Andrew Victor own, in equal thirds, Glassco Inc., a windshield repair shop. Glassco employs or contracts with individuals who perform windshield repairs on insured vehicles. To obtain payment for its services, Glassco submits claims to the individual customer's insurance company. Under Florida law, an insurer is required to pay for their insureds' windshield replacement with no deductible. *See* § 627.7288, Fla. Stat. An insurer must decide within thirty days whether to pay the claim for the windshield repair. *See id.* § 626.9541(1)(i)(3)(e). An insurer's failure to pay or present sufficient reason for denying a claim can result in the repair shop suing the insurer and, if successful, obtaining attorneys' fees. *See id.* § 624.155.

Geico[3] claims Glassco abused this process. (*See* Doc. 1.) The Court's previous order denying the motion to dismiss summarizes the alleged scheme. (Doc. 59 at 4–5.) To put it briefly, Geico alleges that Glassco submitted fraudulent claims for reimbursement on windshield repairs. (*See* Doc. 1 at ¶ 1.) Geico's fraud allegations break into two categories. The first set of alleged misrepresentations covers claims submitted by Glassco that

---

[2] This order's "Background" section is based on undisputed facts cited and discussed in the parties' briefings.

[3] This case has three plaintiffs: Government Employees Insurance Company, Geico Indemnity Company, and Geico General Insurance Company. (*See* Doc. 1.) This order refers to the plaintiffs collectively as "Geico."

(1) inflate the hours expended by the independent contractor to repair the windshield, (2) list unnecessary windshield repairs, (3) charge for unperformed windshield repairs, and (4) forge insureds' signatures on work orders and on the assignment of benefits. (*See* Doc. 1 at ¶¶ 90, 91, 94, 95; *see also* Doc. 59 at 14.) The second set of alleged misrepresentations covers claims submitted by Glassco that were infected with pervasive violations of the Florida Motor Vehicle Repair Act (Repair Act), Sections 559.901–559.9921, Florida Statutes. (*See* Doc. 1.) These include allegations that Glassco never provided written estimates to insureds before obtaining assignments of benefits or performing the windshield repairs. (Doc. 1 at ¶¶ 67–68); *see* §§ 559.905(1), 559.920, Fla. Stat. Geico alleges Glassco violated these provisions, among others. (*See* Doc. 1.)

Geico brings seven causes of action. (*See* Doc. 1.)[4] It seeks a declaratory judgment that Glassco's actions violate the Repair Act, meaning Geico has no duty to pay pending claims (Count I). Geico alleges causes of action under the federal Racketeer Influenced and Corrupt Organizations Act (RICO) (Count II), RICO conspiracy (Count III), the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) (Count IV), Florida's RICO statute (Count V), common-law fraud (Count VI), and unjust enrichment (Count VII). (*See* Doc. 1.) In addition to Glassco, Geico alleges its causes of action against Wilemon, Bailey, and Victor, individually. (*Id.*)

---

[4] The Court's previous order dismissed Geico's standalone cause of action for alleged violations under the Repair Act. (*See* Doc. 59 at 22.)

3

Each party now moves for summary judgment. (Docs. 122, 123, 125, 127, 128.)

## II. LEGAL STANDARD

Summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A moving party is entitled to summary judgment when the nonmoving party "fail[s] to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party must "go beyond the pleadings and her own affidavits" and point to evidence in the record that demonstrates the existence of a genuine issue for trial. *Id.* at 324 (quotation omitted). The Court reviews all the record evidence and draws all legitimate inferences in the nonmoving party's favor. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1192–93 (11th Cir. 2004).

The Court need not grant summary judgment simply because parties file cross-motions. *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984). That said, cross-motions for summary judgment "may be probative of the non-existence of a factual dispute when . . . they demonstrate a basic agreement concerning what legal theories and material facts are dispositive." *Id.* at 1555–56 (quoting *Bricklayers Int'l Union, Local 15 v. Stuart*

*Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975)).[5]

Rule 56's standard for summary judgment remains unaffected when the parties submit cross-motions. *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). Each motion is considered on its own merits and reasonable inferences are resolved "against the party whose motion is under consideration." *Torres v. Rock & River Food, Inc.*, 244 F. Supp. 3d 1320, 1327–28 (S.D. Fla. 2016) (Scola, J.) (citing *Am. Bankers Ins. Grp.*, 408 F.3d at 1331).

## III. ANALYSIS

As stated earlier, each party moves for summary judgment. (Docs. 122, 123, 125, 127, 128.) This order will analyze separately each motion, starting with Bailey's.

### A. Bailey's Motion for Summary Judgment

Bailey moves for summary judgment under Florida's statute prohibiting Strategic Lawsuits Against Public Participation (anti-SLAPP), section 768.295, Florida Statutes. (*See* Doc. 122.) He also moves for summary judgment against Geico's federal RICO claim (Count II), federal RICO conspiracy claim (Count III), Florida RICO claim (Count V), FDUTPA claim (Count IV), common-law fraud claim (Count VI), and unjust-enrichment claim (Count VII). (*See* Doc. 122.)

---

[5] The former Fifth Circuit's decisions issued before the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

1. Anti-SLAPP

Bailey argues that Florida's anti-SLAPP statute prohibits Geico from bringing all its claims against him. (Doc. 122 at 1–5.) According to Bailey, Geico initiated this lawsuit in retaliation for Glassco's state-court lawsuits to recover unpaid portions of claims for windshield repairs that Glassco submitted to Geico. (*See id.* at 4.) Thus, this action is "improperly motivated to discourage" him and Glassco from vindicating their rights in state court. (*Id.* at 5.) As such, Bailey concludes that Geico's actions violate Florida's anti-SLAPP statute and that this Court should grant summary judgment against all of Geico's claims. (*Id.*)

Geico responds that Bailey's anti-SLAPP challenge fails because this lawsuit has merit and is not based primarily on the defendants exercising their First Amendment rights with respect to a public issue. (Doc. 133 at 4–6.) Geico cites numerous courts that have ruled in favor of insurers seeking declarations that no obligation exists to pay outstanding claims. (*Id.* at 6.) As a result, Geico concludes that the Court should deny Bailey's anti-SLAPP motion. (*Id.*)

Florida's anti-SLAPP statute prohibits a person from suing another "without merit and primarily because such person . . . has exercised the constitutional right of free speech in connection with a public issue . . . or to petition for redress of grievances before the various governmental entities of this state, as protected by the First Amendment to the

United States Constitution and [the Florida] Constitution." § 768.295(3), Fla. Stat. The

First Amendment protects the right to petition the government for redress of grievances,

which the Supreme Court has recognized includes "the right of access to the courts." *See*

*Bill Johnson's Rests. Inc. v. NLRB*, 461 U.S. 731, 741 (1983) (citing *Cal. Motor Transport*

*Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972)); *see also Borough of Duryea v.*

*Guarnieri*, 564 U.S. 379, 387 (2011) ("[T]he Petition Clause protects the right of

individuals to appeal to courts and other forums established by the government for

resolution of legal disputes."). So, the anti-SLAPP statute seems to cover lawsuits filed

against Geico in Florida state court.

But whether Florida's anti-SLAPP statute applies in federal court presents a more

difficult question. *See Parekh v. CBS Corp.*, 820 F. App'x 827, 836 (11th Cir. 2020)

(declining to decide because appellant failed to raise issue before district court). A federal

court sitting in diversity must apply state substantive law and federal procedural law. *Hanna*

*v. Plumer*, 380 U.S. 460, 465 (1965) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64

(1938)). Under those circumstances, we "apply *Erie* and its progeny to determine 'whether

failure to apply the state law would lead to different outcomes in state and federal court

and result in inequitable administration of the laws or forum shopping.'" *Harris*, 756 F.3d

at 1358 (quotation omitted). But even where a state law is substantive, "[a] federal court

exercising diversity jurisdiction will not apply a state law if a Federal Rule of Civil

Procedure 'answers the question in the dispute.'" *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1349 (11th Cir. 2018) (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010)). A federal rule "answers the question" where it is sufficiently broad to control the issue before the court and it conflicts with state law. *Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1358 (11th Cir. 2014).[6]

Caselaw based on anti-SLAPP statutes from other states provides some guidance. To begin, the Eleventh Circuit held in *Royalty Network* that § 9-11-11.1(b) of Georgia's anti-SLAPP statute does not apply to diversity cases in federal court because it conflicts with Federal Rule of Civil Procedure 11. 756 F.3d at 1362. Georgia's statute requires a party filing a lawsuit to verify that the claim is "well grounded in fact, is warranted under existing law, and that the claim is not made for an improper purpose." *Id.* at 1354. This requirement goes beyond the requirements of Rule 11, which has no verification requirement for pleadings. *Id.* at 1358–59. Because Georgia's anti-SLAPP statute conflicts with Rule 11's requirements for filing pleadings, it has no application to diversity cases in federal court. *See id.* at 1359–62.[7]

Next, *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328, 1331 (D.C. Cir. 2015) (Kavanaugh, J.), involves Washington, D.C.'s anti-SLAPP statute, which requires courts,

---

[6] "A federal rule applies in the face of a conflicting state rule, however, only if the federal rule comports with the Rules Enabling Act, 28 U.S.C. § 2072, and the Constitution." *Royalty Network*, 756 F.3d at 1358.

[7] *Royalty Network* also concluded that Rule 11 is valid under the Rules Enabling Act. 756 F.3d at 1360.

upon motion, to dismiss defamation suits targeting public or political advocacy if the plaintiff cannot prove it is likely to succeed on the merits. *Id. Abbas* holds that D.C.'s anti-SLAPP Act has no application in diversity cases because Federal Rules of Civil Procedure 12 and 56 already detail how a court may dismiss a claim pretrial, with neither requiring a likelihood of success showing. *Id.* at 1333–34. D.C.'s anti-SLAPP Act therefore imposes a higher burden on a plaintiff to proceed to trial compared to the Federal Rules of Civil Procedure. *Id.* at 1334. Thus, a federal court exercising diversity jurisdiction may not apply D.C.'s anti-SLAPP Act's special motion-to-dismiss provision. *Id.*[8]

Other cases analyzing anti-SLAPP statutes that contain provisions similar to D.C.'s "likelihood of success" requirement arrive at the same conclusion as *Abbas*, namely that imposing a higher burden on the plaintiff conflicts with the Federal Rules. *See Carbone*, 910 F.3d at 1357 (William Pryor, J.) (holding that Georgia's anti-SLAPP statute's motion-to-strike provision, which contained a "likelihood of success" test, conflicts with Federal Rules of Civil Procedure 8, 12, and 56); *La Liberte v. Reid*, 966 F.3d 79, 83 (2d Cir. 2020) (Jacobs, J.) ("[W]e hold that California's anti-SLAPP statute is inapplicable in federal court because it increases a plaintiff's burden to overcome pretrial dismissal, and thus conflicts with Federal Rules of Civil Procedure 12 and 56."); *see also Makaeff*, 715 F.3d at 274–75 (Kozinski, J., concurring) (discussing how California's anti-SLAPP statute

---

[8] Like Rule 11, Rules 12 and 56 are valid under the Rules Enabling Act. *Abbas*, 783 F.3d at 1336–37.

conflicts with Federal Rules of Civil Procedure 11, 12, and 56, among others).

In a slightly different approach, *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 668–73 (10th Cir. 2018) (Baldock, J.), focused on whether the New Mexico's anti-SLAPP statute was procedural or substantive—the central inquiry under *Erie*. Unlike in *Abbas*, New Mexico's statute has no "likelihood of success" or burden-increasing provision. *See id.* Instead, New Mexico's anti-SLAPP statute is "nothing more than a procedural mechanism designed to expedite the disposal of frivolous lawsuits aimed at threatening free speech rights." *See id.* at 668–69. To arrive at this conclusion, the Tenth Circuit considered how the statute mandated expedited procedures to ruling on an anti-SLAPP motion; the statute set forth no substantive legal rule for how courts decide anti-SLAPP motions; the New Mexico Supreme Court described the statute as procedural; and the statute provided for an expedited appeal of trial court orders denying anti-SLAPP motions. *Id.* at 669–71. Because New Mexico's anti-SLAPP statute is purely procedural, it has no application in federal court. *Id.* at 673; *see also Makaeff*, 715 F.3d at 273 (Kozinski, J., concurring) ("The [California] anti-SLAPP statute creates no substantive rights; it merely provides a procedural mechanism for vindicating existing rights.").

That brings us to Florida. A plain reading of Florida's anti-SLAPP statute reveals that it contains no "likelihood of success" or burden-shifting provision like that of Georgia's

or D.C.'s statutes. *See* § 768.295, Fla. Stat. Nor does it contain a verification provision like Georgia's statute. *See id.* Instead, a plain reading of the statute suggests that Florida's statute, like New Mexico's statute, is strictly a procedural mechanism for litigants to have anti-SLAPP motions decided more expeditiously. For instance, after prohibiting lawsuits in retaliation for exercising First Amendment rights, Florida's statute provides that the person possibly subject to a SLAPP lawsuit "has a right to an expeditious resolution of a claim that the suit is in violation of this section." *Id.* § 768.295(4). The person possibly subject to a SLAPP lawsuit may file a motion to dismiss or motion for summary judgment. *Id.* A motion for summary judgment may include affidavits, and the party that filed the lawsuit must file a response and include its own affidavits. *Id.* The court must then hold a hearing on the anti-SLAPP motion "as soon as practicable." *Id.* If the party filing an anti-SLAPP motion prevails, the court may award damages, attorney's fees, and costs. *Id.*

If the Court were to decide based on a plain reading of Florida's anti-SLAPP statute, then it would likely arrive at the same conclusion as *Los Lobos.* 885 F.3d at 668–69. That is, Florida's statute is strictly procedural and plainly creates no substantive right. Rather, it merely provides a mechanism for a quick resolution to a motion aimed at protecting First Amendment rights.

But at least one Florida court reads it differently. In *Gundel v. AV Homes, Inc.*, Florida's Second District Court of Appeal concluded that Florida's anti-SLAPP statute

"creates a right not to be subject to meritless suits filed 'primarily because [the defendant] has exercised the constitutional right of free speech in connection with a public issue, or right to peacefully assemble, to instruct representatives of government, or to petition for redress of grievances before the various governmental entities of the states.'" 264 So. 3d 304, 310–11 (Fla. 2d DCA 2019) (alteration in original) (quotation omitted) (referring to the right created by the anti-SLAPP statute as a "substantive right"). Although it recognized that the statute puts forth "procedural mechanisms," that court also read into the statute a burden-shifting test. *Id.* at 312–14. Under this test, the SLAPP defendant bears the initial burden of establishing a prima facie case that the anti-SLAPP statute applies. *Id.* at 314. Then the party that filed the lawsuit must show that its claims are not without merit and not primarily based on retaliating against the exercise of First Amendment rights in connection with a public issue. *Id.* The court found that this unwritten burden-shifting approach "serves the purpose of the statute." *Id. But see Ingraham v. Wright*, 430 U.S. 651, 670 n.39 (1977) ("There is no support whatever for this [purposive analysis] in the decisions of this Court.").[9]

---

[9] At least one court in this Circuit concluded that Florida's anti-SLAPP statute applies in federal court. *See Bongino v. Daily Beast Co., LLC*, 477 F. Supp. 3d 1310, 1322–23 (S.D. Fla. 2020) (Martinez, J.). But that court never discussed whether the statute is procedural or substantive. Rather, the court concluded that the anti-SLAPP statute applies in federal court because its fee-shifting provision conflicts with no Federal Rule of Civil Procedure. *Id.* at 1324. *But see Makaeff*, 715 F.3d at 273 (Kozinski, J., concurring) ("[T]he question of a conflict only arises if the state rule is substantive; state procedural rules have no application in federal court, no matter how little they interfere with the Federal Rules.").

The Court is left with a state statute, the text of which is procedural and creates no substantive right but which has been interpreted by a state appellate court as creating a substantive right that includes a burden-shifting approach to deciding a motion. Whatever misgivings the Court might have, its obligation is clear: "State law is what the state appellate courts say it is, and we are bound to apply a decision of a state appellate court about state law even if we think that decision is wrong." *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 881 F.3d 835, 848 (11th Cir. 2018) (Ed Carnes, C.J.). So here we are: the Court must read Florida's anti-SLAPP statute as creating a substantive right and apply its burden-shifting procedure per *Gundel* if no conflicts exist with the Federal Rules of Civil Procedure. *See Makaeff*, 715 F.3d at 273 (Kozinski, J., concurring). None do. Under *Gundel*'s interpretation of the statute, the party filing a SLAPP motion bears the initial burden of establishing a prima facie case that the lawsuit at issue violates the statute. 264 So. 3d at 314. This procedure is no different from Federal Rule of Civil Procedure 7(b)'s requirement that a party filing a motion "state with particularity the grounds for seeking the order" and "state the relief sought."

After a Florida SLAPP motion is filed, the party that filed the lawsuit must demonstrate that (1) its claims are not based primarily on the other party exercising First Amendment rights in connection with a public issue and (2) its claims have merit. *See Gundel*, 264 So. 3d at 314. Again, the Court fails to see how this differs from a party that

13

responds to a motion filed under Federal Rule of Civil Procedure 7(b). In fact, it's par for the course. Under Rule 7(b), the moving party files a motion and argues that it is entitled to specific relief. The opposing party must then file a response and argue why the Court should not grant the moving party's requested relief. *See also* Local Rule 3.01(b) (stating that a party responding to a motion may file a legal memorandum). This procedure tracks with *Gundel*'s interpretation of Florida's anti-SLAPP statute. First, the defendant files a SLAPP motion and states its requested relief by establishing a prima facie case that the lawsuit violates the statute. 264 So. 3d at 314. Then, the plaintiff responds to the motion and demonstrates how the statute is not violated by proving that the lawsuit (1) is not primarily based on the plaintiff exercising First Amendment rights and (2) has merit. *Id.*

*Gundel*'s interpretation of Florida's anti-SLAPP statute differs significantly from other States' anti-SLAPP statutes, which change the verification requirement for all pleadings and adjusts the burden of persuasion for prevailing on a SLAPP motion. *See Royalty Network*, 756 F.3d at 1362 (verification requirement); *Carbone*, 910 F.3d at 1351 (burden of persuasion); *see also Abbas*, 783 F.3d at 1334 (burden of persuasion). No such change or adjustment to a Federal Rule of Civil Procedure occurs under Florida's anti-SLAPP statute. Nevertheless, the Court will proceed to analyze Bailey's SLAPP motion under *Gundel*'s interpretation of the statute.[10]

---

[10] The parties provide no briefing on many issues discussed here about Florida's anti-SLAPP statute. Most relevant at this point, no party addresses whether Federal Rule of Civil Procedure 7(b) is valid under the

In his motion, Bailey argues that Geico began this lawsuit "to deter Glassco from bringing state court breach of contract claims when Geico only pays 50% of Glassco's invoices." (Doc. 122 at 3.) Bailey points to an exhibit that Geico attached to its complaint which lists 1773 claims at the heart of Geico's lawsuit against the defendants. (Doc. 1-1.) According to Bailey, these claims form part of the litigation in state court against Geico, where it has settled 53 claims of the 1773 claims attached to the complaint. (Doc. 124-1 at 4, 12–13.) Bailey also provides a copy of final judgment entered in various plaintiffs' favor against Geico in 11 actions based on Geico's 1773 claims in state court. (Doc. 124-1 at 17–26.)

Bailey fails to establish a prima facie case that Geico violated Florida's anti-SLAPP statute when it filed this lawsuit against him. Geico's spreadsheet with the 1773 claims at issue in this case contains no information about lawsuits filed for each respective claim. (Doc. 1-1.) Further, the final judgments Bailey attaches to his motion deal with lawsuits filed by other individuals—Bailey's name is not among them. (Doc. 124-1 at 17–26.) So the Court has before it no evidence showing that Bailey himself filed a lawsuit against Geico as to make it plausible that this action violates Florida's anti-SLAPP Act. *See Celotex Corp.*, 477 U.S. at 323 (stating that the party moving for summary judgment must

---

Rules Enabling Act. The Court assumes, without deciding, that Rule 7(b) is valid under the Rules Enabling Act. *See Abbas*, 783 F.3d at 1336 ("So far, the Supreme Court has rejected every challenge to the Federal Rules that it has considered under the Rules Enabling Act.").

identify evidence that "it believes demonstrate the absence of a genuine issue of material fact"); *see also* § 768.295(4), Fla. Stat. (stating that a motion for summary judgment under the anti-SLAPP statute may include supplemental affidavits). As a result, Bailey fails to establish a prima facie case to succeed on his SLAPP motion, and the Court need not proceed further under *Gundel*'s burden-shifting approach. Bailey's motion for summary judgment under Florida's anti-SLAPP act is denied.

## 2. Civil RICO (Count II)

Bailey argues that the Court should grant summary judgment against Geico on its civil RICO claims against him. (Doc. 122 at 11–30.) Dividing Geico's RICO claims into two categories as discussed above, Bailey argues that summary judgment in his favor is appropriate for Geico's claims based on alleged violations of the Repair Act (the first category) and Geico's claims of deceptive conduct apart from the Repair Act (the second category). (*Id.* at 13–14.) The Court agrees.

### a. *Repair Act-Based Claims*

Starting with the Repair Act-based claims, Bailey argues that Geico is not entitled to recover payments for repair work because Geico is not a customer under the Act. (*Id.* at 14–15.) Bailey also argues that Glassco did not violate the Repair Act when not providing written repair estimates because the Act requires an estimate when the costs will exceed $100 *to the insured*; here, no insured ever paid anything for repairs. (*Id.* at 15–16.) Further,

16

Bailey argues that failing to provide odometer readings is not a wire-fraud violation under RICO. (*Id.* at 16.) Nor is using undisclosed independent contractors as sales representatives and glass installers actionable under RICO. (*Id.* at 16–20.) And Bailey argues that Geico's claim that Glassco falsely represents to insureds that their benefits will be assigned to Glassco—despite Glassco not performing the windshield repairs—is not actionable under RICO. (*Id.* at 20–22.)

Geico responds that repair shops that violate the Repair Act have no right to payment for claims, as demonstrated by Florida caselaw. (Doc. 133 at 7–12.)[11] Geico argues that Glassco violated the Repair Act by failing to provide written estimates to insureds if the windshield repair exceeded $100; failing to provide written invoices to insureds; subcontracting glass repairs without insureds' or Geico's knowledge or consent; and not obtaining valid assignments from insureds. (*Id.* at 12–20.)

Geico also argues that Bailey and Glassco committed wire fraud because they deceived Geico by leading it to believe it had to pay over $720,000 in claims. (*Id.* at 20–22.) Further, Geico argues that Bailey participated in Glassco's deceptive scheme by running its operation and management. (*Id.* at 22.) According to Geico, the evidence also establishes closed-ended and open-ended continuity for a pattern of racketeering. (*Id.* at

---

[11] Geico's excessive use of footnotes to address substantive legal issues in dispute proved unhelpful. (*See, e.g.*, Doc.133 at 21–29.) Any briefing going forward that exploits its footnotes will be summarily struck. *See Murphy v. Inman*, No. 17-13293, 2018 WL 8809349, at *13–14 (E.D. Mich. Feb. 21, 2018) (admonishing attorneys that abused footnotes "clearly aimed at circumventing the page limits").

24–26.) As a result, Geico argues that the Court should deny Bailey's motion for summary judgment on its civil RICO claims against him. (*Id.* at 27.)

Bailey replies that the record shows that he owned a legitimate business—not a racketeering enterprise. (Doc. 139 at 13.) He reiterates that the Repair Act contains no restitution remedy or penalty that allows an insurer to void a consumer transaction. (*Id.*) According to Bailey, once the Repair Act is no longer an available predicate for Geico's wire-fraud allegation, then its civil RICO claim dissipates because the evidence shows Bailey committed no other deceptive act. (*Id.*)

In the previous order on the defendants' motions to dismiss, the Court addressed whether violations under the Repair Act constitute a "scheme to defraud" to prevail on a RICO claim predicated on wire fraud. (Doc. 59 at 15–18); *see also Crawford's Auto Ctr. Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1158 (11th Cir. 2019) ("A person commits wire fraud when they (1) intentionally participate in a scheme to defraud another of money or property and (2) use the wires in furtherance of that scheme."). This order will not rehash that one. But for summary-judgment purposes, the salient points from the previous order are twofold: (1) the Repair Act has no provision voiding reimbursement claims from noncompliant repair shops; and (2) "the Repair Act creates a private right of action for the customer only." (Doc. 59 at 16.) Given that, the previous order noted apparent incongruity in allowing Geico to use the Repair Act to establish wire fraud: "To

allow Geico to recover treble damages [under civil RICO] predicated on the violation of a statute under which Geico cannot sue appears passing strange." (*Id.* at 17.)

The Court's previous order leaves unanswered a question dispositive now at the summary-judgment stage: "[I]s a claim for windshield repair fraudulent if a repair shop in fact repaired the windshield but in a manner that violates the Repair Act?" (*Id.*) Having considered arguments and caselaw thoroughly briefed by the parties, the Court arrives at an answer: No.

Noncompliant reimbursement claims for completed windshield repairs cannot form the predicate for wire fraud. To begin, Geico is not a "customer" under the Repair Act. The Act defines "customer" as "the person who signs the written repair estimate or any other person whom the person who signs the written repair estimate designates on the written repair estimate as a person who may authorize repair work." § 559.903, Fla. Stat. The record on this issue is undisputed: Geico never signed written repair estimates that Glassco (its employees, subcontractors, or independent contractors) gave to insureds. Nor does any evidence show that an insured designated Geico on a written repair estimate as the person who may authorize repair work. And Geico does not provide authority that the law of subrogation permits it to assert its insureds' (the customer under the Repair Act) private right of action. Thus, Geico clearly falls outside the definition of "customer" under the Repair Act. *See Allstate Ins. Co. v. Auto Glass Am., LLC*, 418 F. Supp. 3d 1009,

1025 (M.D. Fla. 2019) (Mendoza, J.) (concluding that an insurance company claiming fraudulent windshield repair practices was not a customer under the text of Repair Act).

Geico's civil RICO claim also fails because the Repair Act contains no provision rendering unpayable claims for repair work actually performed by noncompliant repair shops, meaning these claims are not considered unlawful under Florida law. The absence of a provision of this kind stands in contrast with many other Florida statutes that include such language. *See State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1330 (S.D. Fla. 2017) (Moore, J.) (collecting examples of Florida statutes that void claims for reimbursement submitted by a noncompliant entity). The Court previously discussed the Florida Health Care Clinic Act as an example. (Doc. 59 at 16); § 400.9935, Fla. Stat.; *see also State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 583 (11th Cir. 2013) (discussing how charges or reimbursement claims submitted by noncompliant clinics are noncompensable and unenforceable under the Florida Health Care Clinic Act); *Allstate Ins. Co. v. Vizcay*, 826 F.3d 1326, 1331 (11th Cir. 2016) (Ed Carnes, C.J.) (same). The lack of language in the Repair Act voiding claims by noncompliant entities for work performed is strong evidence that the Florida legislature did not consider such claims fraudulent or unlawful. *See Performance Orthopaedics*, 278 F. Supp. 3d at 1330 ("The fact that the Florida legislature 'chose to impose' such a remedy in certain circumstances but not others 'indicates a

deliberate congressional choice with which the courts should not interfere.'" (quoting *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994))).

Geico cites inapposite caselaw to support its argument that technical violations can constitute fraudulent activity despite Glassco actually performing the repairs,[12] relying heavily on *1616 Sunrise Motors, Inc. v. A-Leet Leasing of Fla.*, 547 So. 2d 267 (Fla. 4th DCA 1989). There, an automobile repair shop filed a claim for repair and storage charges against a bond filed by a car rental agency who secured the vehicle when its lessee failed to pay the repair bill. *Id.* The court recognized that the car rental agency was not a "customer" under the Repair Act, rather, the lessee was the customer, and it affirmed the lower court's ruling that the auto shop did not receive the written authorization from the lessee required under the Repair Act to perform the repairs on the car. *Id.*[13]

Any persuasive value *Sunrise Motors* might have cuts against Geico. Just as that court held that the individual lessee was the customer, the Court here concludes that insureds who signed repair estimates are customers under the Repair Act. Neither here nor in *Sunrise Motors* does a person who does not sign a written estimate constitute a customer under the Repair Act. Geico's other cited cases are similarly unavailing. *See Results Real*

---

[12] The Court previously explained why three cases Geico cites are distinguishable. *See* (Doc. 59 at 17 n.5) (discussing *Osteen v. Morris*, 481 So. 2d 1287 (Fla. 5th DCA 1986), *Gonzalez v. Tremont Body & Towing, Inc.*, 483 So. 2d 503 (Fla. 3d DCA 1986), and *Safari Tours, Inc. v. Pasco*, 255 So. 3d 415 (Fla. 3d DCA 2018)). The Court declines Geico's invitation to address those cases again.

[13] The statutory definition of "customer" changed since the *Sunrise Motors* decision, but that affects nothing material in this Court's analysis.

*Estate v. Lazy Days RV Ctr.*, 505 So. 2d 587 (Fla. 2d DCA 1987) (holding that corporation constituted a "consumer" under Florida's Lemon Law); *Raymar Constr. Co. Inc. v. Lopez-Soto*, 547 So. 2d 282 (Fla. 2d DCA 1989) (holding that the Repair Act applied to a consumer transaction where an individual person requested repairs on a car used "primarily for personal purposes and in connection with a business owning fewer than five vehicles"); *Perez-Priego v. Bayside Carburetor and Ignition Corp.*, 633 So. 2d 1190 (Fla. 5th DCA 1994) (holding that, under the Repair Act, a consumer not given a written estimate may recover the repair bill and retain the benefit of the repairs).

Ultimately, the Court arrives at a conclusion now at which its previous order hinted: Claims under the Repair Act for repairs performed by noncompliant repair shops are not fraudulent or unlawful vis-à-vis the insurance company. As a result, these acts cannot form the basis for a wire fraud scheme against Geico, the predicate acts Geico alleges in its civil RICO claims against Bailey. His motion for summary judgment on that claim based on violations under the Repair Act (Count II) will be granted.

### b. Non-Repair Act-Based Claims

Turning to Geico's fraud allegations not based on violations under the Repair Act, Bailey puts forth numerous arguments. (Doc. 122 at 22–30.) He contests that there is evidence establishing that he acted with an intent to deceive (*see id.* at 22) or that an agency relationship exists between him and the Glassco sales representatives who allegedly misled

insureds (*see id.* at 23). Instead, Bailey argues that Geico's only evidence against him is that he is a one-third owner of Glassco. (*Id.* at 23–24.)

Next, Bailey argues that evidence fails to establish that Glassco, as the alleged enterprise, has a structure distinct from the alleged pattern of racketeering. (*Id.* at 24–25.) According to Bailey, Geico's allegation that Glassco would not exist but for the predicate acts at issue here is fatal to its RICO claim. (*Id.* at 25.)

Bailey's next argument is that no evidence establishes that Glassco conducted a pattern of racketeering. (*Id.* at 26–30.) Although Geico supposedly has evidence showing that Glassco billed for unnecessary work or for more time than was expended on windshield repairs, Baily argues that this fails to establish a pattern of deception because Glassco based its invoices on national standards. (*Id.* at 26–27.) Further, Bailey argues that no evidence shows Glassco billed for work not actually performed. (*Id.* at 27.)

Finally, Bailey argues that no evidence establishes open-ended or closed-ended continuity necessary for proving a pattern of racketeering. (*Id.* at 28–30.) He asserts that no closed-ended continuity exists because the alleged pattern of racketeering consisted of only one scheme with one victim. (*Id.* at 28–29.) And Bailey argues that no open-ended continuity exists because Geico now has a policy in place requiring vehicle inspections before authorizing repairs. (*Id.* at 30.) This new policy, according to Bailey, means that no future threat exists that windshield repair companies will perform unnecessary work going

forward. (*Id.*)

Geico rebuts[14] these points by arguing that evidence shows Bailey participated in Glassco's operation and management. (Doc. 133 at 22.) Also, Geico claims Bailey's argument about a lack of distinctiveness between Glassco and the alleged pattern or racketeering is incorrect because Glassco had a legal existence separate from the pattern of racketeering. (*Id.* at 23.) Geico also argues that Bailey's argument about a lack of closed-ended or open-ended continuity fails because the Defendants submitted hundreds of fraudulent claims in a three-year period, which is long enough to establish closed-ended continuity. (Doc. 133 at 24.) Alternatively, Geico argues evidence establishes open-ended continuity because the defendants continue to bill for claims based on the fraudulent practices at issue here. (*Id.* at 25–26.)

Bailey is entitled to summary judgment for several reasons. First, Geico fails to make even a colorable attempt at rebutting Bailey's first argument: that Geico does not point to any evidence that Bailey acted with intent to deceive or was aware of any misrepresentations

---

[14] Unlike the Court's previous order and Bailey's motion for summary judgment, Geico never delineates its arguments about its RICO claims between those based on Repair-Act violations and those based on fraudulent conduct irrespective of Repair-Act violations. (*See* Doc. 133.) Geico's failure to do so causes significant ambiguity and, whether intentionally or inadvertently, it waives numerous arguments that might have fared better had Geico actually addressed the predicate acts of wire fraud premised upon the non-Repair Act violations. But the Court will not—and should not—resurrect arguments that a party waives. *See, e,.g., In re Egidi,* 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived."); *Pin-Pon Corp. v. Landmark Am. Ins. Co.,* 500 F. Supp. 3d 1336, 1346–47 (S.D. Fla. 2020) (Middlebrooks, J.) (concluding arguments were waived when party did not address them in its briefing).

that Glassco's representatives allegedly made. (Doc. 122 at 23–24.) Geico instead points to broad statements about Bailey's responsibility at Glassco. (Doc. 133 at 22.) But actual knowledge of predicate acts, not merely reckless disregard, is required to support RICO claims. *See Liquidation Com'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1354 (11th Cir. 2008) ("The predicate acts alleged here—mail and wire fraud, transportation of converted funds, and money laundering—each require proof of scienter."); *In re Cascade Intern. Sec. Litig.*, 840 F. Supp. 1558, 1566 (S.D. Fla. 1993) ("Reckless disregard is not a sufficient level of intent to allege the underlying crime [and support RICO liability.]"). For this reason alone, Bailey is entitled to summary judgment on Count II given the lack of predicate acts attributable to him.

Geico also fails to put forth sufficient evidence upon which a reasonable jury could conclude in its favor on continuity. The RICO allegations concern only a single scheme, which is insufficient for establishing a pattern of racketeering. "Essential to any successful RICO claim are the basic requirements of establishing . . . a pattern of racketeering activity." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004) (quotation marks omitted). "To successfully [prove] a pattern of racketeering activity, [a] plaintiff[] must [show] that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature." *Id.* at 1264. "[T]o

prove a 'pattern of racketeering activity' it is not sufficient to simply establish two isolated predicate acts." *Id.* "RICO targets *ongoing* criminal activity, rather than sporadic, isolated criminal acts[.]" *Id.* The last element, continuity, may be proven through closed-ended continuity, a series of related predicates extending over a substantial period of time, or open-ended continuity, a threat of continued repetition. *Id.* at 1265.

The caselaw in the Eleventh Circuit on this point is clear. When RICO allegations concern only "a single scheme with a discrete goal," no closed-ended continuity exists even if "the scheme took place over longer periods of time." *Jackson*, 372 F.3d at 1267; *see also Catano v. Capuano*, No. 18-20223-CIV-TORRES, 2019 WL 3035752, at *4 (S.D. Fla. July 11, 2019) (Torres, Mag. J.) ("[C]losed-continuity cannot exist in this case because the alleged racketeering was related to a *single* scheme with a discrete goal 'to embezzle, divide, and launder more than $2 million in funds that properly belong to the Estate of Mauricio Capuano[.]'").

Reviewing the evidence while drawing all permissible inferences in Geico's favor, no dispute of material facts exists on whether the Defendants conducted multiple schemes. Rather the evidence clearly establishes that Geico's RICO allegations involve a single scheme that the Defendants orchestrated to collect on fraudulent claims for windshield repairs from Geico. This single scheme with a "narrow scope"—"involv[ing] only one scheme with a singular objective and a closed group of targeted victims"—is insufficient to

establish closed-ended continuity. *See Jackson*, 372 F.3d at 1267 (citing *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 18 (1st Cir. 2000)). Even assuming (given that there is disputed evidence on the timeline) that the Defendants carried out the scheme for at least three years, that is not enough to save Geico's allegations of closed-ended continuity when the focus remained on a single scheme against a single victim, Geico. *See id.*; *see also Daedalus Cap. LLC v. Vinecombe*, 625 F. App'x 973, 976 (11th Cir. 2015) ("[Appellants] cannot show closed-ended continuity because there is only one victim . . . and 'only a single scheme with a discrete goal' connecting the predicate acts." (quotation omitted)). Geico does not argue that the enterprise expanded beyond a single scheme or was targeted at more victims, thus it fails to proffer sufficient evidence of closed-ended continuity.

Nor can Geico establish open-ended continuity "because there is no *threat* of continuing criminal activity." *Daedalus*, 625 F. App'x at 976 (emphasis added); *see H.J. Inc. v. Nw. Bell Tele. Co.*, 429 U.S. 229, 241 (1989) (defining open-ended-continuity as "past conduct that by its nature projects into the future with a *threat* of repetition"). The record is also clear on this point: Geico now has a policy in place that neutralizes any future threat of the Defendants' alleged racketeering. Namely, Geico now requires inspections of all vehicles *before* authorizing repair work. (Doc. 124-1 at 5–6, 15; Doc. 124-4 at 5–8.) This policy prevents future fraudulent claims because Geico would not approve unnecessary repair work. (*See id.*) Because Geico has not provided evidence showing that a future threat

of criminal activity remains after it adopted the pre-authorization-inspection policy, no future threat of continuing activity exists to establish opened-ended continuity. *See Catano*, 2019 WL 3035752, at *5 (granting summary judgment against plaintiff who failed to provide evidence showing future threat of defendant's alleged racketeering).

Ultimately, Geico's RICO claim against Bailey for fraudulent misrepresentations fails because Geico cannot establish Bailey's knowledge of the predicate acts and cannot establish closed-ended or open-ended continuity. *See Jackson*, 372 F.3d at 1264 (stating that to successfully allege a pattern of racketeering, the plaintiff must establish, among other things, that "the predicate acts demonstrated criminal conduct of a *continuing* nature"). As a result, Bailey's motion for summary judgment against Geico's RICO claims not based on violations under the Repair Act (Count II) will be granted.

### 3. Civil RICO Conspiracy (Count III)

Bailey argues that the Court should grant summary judgment in his favor on Geico's RICO conspiracy claim because its underlying RICO claim fails. (Doc. 122 at 30–31.) To be sure, "[t]o be guilty of conspiracy, . . . parties must have agreed to commit an act that is itself illegal—parties cannot be found guilty of conspiring to commit an act that is not itself against the law." *Jackson*, 372 F.3d at 1269 (quoting *United States v. Vaghela*, 169 F.3d 729, 732 (11th Cir. 1999)). But because no evidence establishes the necessary predicate acts and open-ended or closed-ended continuity, Bailey's argument on this point is correct.

28

*See Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1199 (11th Cir. 2004) ("If the underlying cause of action is not viable, the conspiracy claim must also fail." (citation omitted)). The parties cannot be liable for conspiring to commit a RICO violation where the underlying actions, as is true here, do not constitute a racketeering scheme. *Jackson*, 372 F.3d at 1269 ("We have already found that the complaint failed to state a substantive RICO claim, and the RICO conspiracy adds nothing."). Bailey's motion for summary judgment on Geico's RICO conspiracy claim (Count III) will be granted.

### 4. Florida RICO (Count V)

Like its RICO conspiracy claim, Geico's Florida RICO claim against Bailey falls with its federal RICO claim. *See Jackson*, 372 F.3d at 1263–64; *Ferrell v. Durbin*, 311 F. App'x 253, 256 n.5 (11th Cir. 2009) ("[T]he analysis of the Federal RICO claims is equally applicable to the Florida RICO claims."); *Horace-Manasse v. Wells Fargo Bank, N.A.*, 521 F. App'x 782, 784 (11th Cir. 2013) ("[T]he Florida Supreme Court has said . . . that 'continuity' is a required element under the Florida RICO Act."). As a result, Bailey's motion for summary judgment on Geico's Florida RICO claim (Count V) will be granted.

### 5. FDUTPA (Count IV)

Bailey argues that Geico cannot prevail on its FDUTPA claim against him because Geico cannot establish corporate liability under FDUTPA, which is required for a finding of individual liability under FDUTPA. (Doc. 122 at 32.); *see KC Leisure, Inc. v. Haber*,

29

972 So. 2d 1069, 1074 (Fla. 5th DCA 2008) (stating the rule that to prove individual liability under FDUTPA, a plaintiff must show that the individual personally participated or had control over a corporation's deceptive practices). For the reasons discussed in Section III.B.3 below, a genuine dispute of material fact exists allowing Geico to proceed under a traditional-violation theory under FDUTPA. Thus, to the extent Bailey seeks summary judgment based on Geico's failure to present evidence of corporate liability, his motion is denied.

Bailey also argues that the Court should grant summary judgment in his favor because Geico cannot establish individual liability against him. (*Id.*) According to him, no evidence shows that he participated directly, had authority to control, or had knowledge about Glassco's practices at issue here. (*Id.*) Geico responds that Bailey is individually liable because he owns one-third of Glassco and oversees its day-to-day operations. (Doc. 133 at 28 n.29.)

Once corporate liability is established under FDUTPA, the plaintiff can establish individual liability by showing that the individual defendant (1) participated in the practices or acts or (2) had authority to control them. *FTC v. Gem Merch. Corp.*, 87 F.3d 466, 470 (11th Cir. 1996); *see also KC Leisure, Inc.*, 972 So. 2d at 1073–74 (applying individual-liability analysis from the Federal Trade Commission Act to claim brought under FDUTPA). In either scenario, the plaintiff must prove that the individual defendant

had knowledge of the deceptive practices. *See Gem Merch.*, 87 F.3d at 470.

To show that an individual has control over a company, the plaintiff may produce evidence showing that the defendant is actively involved in business affairs and in forming corporate policy. *See FTC v. Life Mgmt. Servs. of Orange Cnty., LLC*, 350 F. Supp. 3d 1246, 1260 (M.D. Fla. 2018) (Mendoza, J.). And to establish that individual's knowledge, the plaintiff may show that the defendant had "actual knowledge of material misrepresentations, reckless indifference to the truth or falsity of such misrepresentations, or an awareness of a high probability of fraud along with an intentional avoidance of the truth." *See id.* (citation omitted).

The Court concludes that summary judgment in Bailey's favor is inappropriate due to factual disputes over Bailey's control of Glassco. Bailey testified that he is Glassco's president and manages the day-to-day operations of the business and has done so since 2015. (Doc. 126-2 at 22–23.) He also testified that his responsibilities consist of "[p]retty much everything" including opening the door in the morning, closing at night, accounting, managing installation schedules, and "all of the internal day-to-day operations." (Doc. 126-3 at 36.) These facts are sufficient to defeat Bailey's motion for summary judgment. As a result, Bailey's motion for summary judgment on Geico's FDUTPA's claim, with respect to corporate and individual liability, is denied.

31

6. <u>Common Law Fraud (Count VI)</u>

Bailey argues the Court should grant summary judgment in his favor on Geico's common-law fraud claim against him. (Doc. 122 at 32–34.) According to Bailey, Geico's fraud claim relies on conclusory allegations that Glassco lacked valid benefit assignments from insureds and misrepresented that it was entitled to reimbursement on claims for windshield repairs. (*Id.* at 33.) Bailey argues that these allegations rely on the false premise that Glassco had no right to reimbursement on its claims. (*Id.*) And Bailey argues that Geico's fraud claim against him relies solely on his ownership of Glassco. (*Id.* at 34.)

Geico relies on its theory that a repair shop which violates the Repair Act has no right to payment. (Doc. 133 at 28–29.) Once again in a footnote, Geico argues that its fraud claim against Bailey is not premised solely on his ownership but also on how Bailey oversees Glassco's day-to-day operations. (*Id.* at 29 n.30.)

To succeed on a common-law fraud claim, the plaintiff must prove (1) a false statement; (2) that the person making the statement knew the statement was false at the time it was made; (3) that the statement was made to induce another to rely on that statement; (4) the other person acted in reliance on the statement; and (5) resulting damage to the other person. *Gandy v. Trans World Comput. Tech. Grp.*, 787 So. 2d 116, 118 (Fla. 2d DCA 2001).

As analyzed above, claims for repairs performed by noncompliant entities are not

fraudulent or unlawful under the Repair Act vis-à-vis the insurance company. *See supra* Section III.A.2.a. So, Geico cannot base its common-law fraud claims on alleged "pervasive violations of the Repair Act" any more than it can base its RICO claims on Repair Act violations.

But Geico's common-law fraud claim also includes allegations of misrepresentations that are not based on Repair Act violations. For example, the common-law fraud section of Geico's complaint alleges that Glassco falsely represented benefit assignments and that it was eligible to receive payment when it wasn't. (Doc. 1 ¶ 148). Geico has put on evidence that Glassco overbilled for windshield repairs, misrepresented to insureds that Glassco would perform the repair work and never obtained insureds' consent to subcontract the work to independent contractors, and forged certain insureds' signatures on assignment forms. (*See* Doc. 124-4 at 9; Doc. 125 at 24; Doc, 126-1 ¶¶ 13, 31–33, Ex. L.) Thus, there are disputes of material fact that preclude granting summary judgment on Geico's common-law fraud claim.

Further, Bailey's argument that Geico's fraud claim against him relies solely on his ownership of Glassco is without merit. Geico points to various evidence showing that Bailey's involvement with Glassco goes beyond mere ownership. *See* (Doc. 126-2 at 22–23); (Doc. 126-3 at 36). Thus, Bailey's motion for summary judgment against Geico on its fraud claim will be denied to the extent that claim is not based on Repair Act violations.

7. <u>Unjust Enrichment (Count VII)</u>

Bailey argues that Geico may not recover on its unjust-enrichment claim based on violating the Repair Act or other inequitable conduct because the Repair Act provides no cause of action to insurers. (Doc. 122 at 34.) According to Bailey, for an unjust-enrichment action to lie, the statute must state that the violating transaction is void or provide for restitution. (*Id.*) Bailey argues that the Repair Act does neither. (*Id.*) Further, Bailey argues that Geico's other allegations in support of its unjust-enrichment claim overlook that the insureds received a benefit, namely a new windshield, so Geico cannot show that he was unjustly enriched by Glassco's actions. (*Id.* at 35.)

Geico argues that it established an unjust enrichment claim because Glassco was never entitled to compensation for work unlawfully completed. (Doc. 133 at 29.) And Geico argues that Glassco could not receive payments for its fraudulent claims because it lacked valid benefit assignments from insureds. (*Id.*) So Geico concludes that allowing Glassco to retain payment for its unlawful actions would be inequitable. (*Id.*)

In his reply, Bailey reiterates that no common-law remedy exists without a statutory provision rendering a contract void and unenforceable. (Doc. 139 at 15.)

Geico bases its unjust enrichment claims on Glassco's alleged (1) Repair Act violations and (2) other unjust or inequitable conduct apart from the Repair Act. While the question of whether Geico may establish an unjust enrichment claim premised on

Repair Act violations is complex,[15] that question ultimately does not need to be answered

because Glassco did not violate the Repair Act vis-à-vis Geico here. But Geico's claims of

unjust enrichment based on other unjust or inequitable conduct apart from the Repair Act

may proceed if they involve disputes of material fact.

Here, as with Geico's common-law fraud claim, disputes of fact remain as to which

insureds received windshields and whether Glassco fairly charged or overcharged for them.

(Doc. 122 at 34; Doc. 124-4 at 9.)). *See Alhassid v. Bank of Am. NA*, 60 F. Supp. 3d

1302, 1322 (S.D. Fla. 2014) (Bloom, J.) (stating that whether a party received a direct

benefit from another is a factual question). To the extent Glassco overcharged for the

windshields, Geico's unjust enrichment claims may succeed. As a result, Bailey's second

argument for summary judgment—that Geico received adequate consideration because its

---

[15] The Eleventh Circuit has recognized that, under Florida law, an unjust enrichment claim could be grounded on the violation of a Florida statute that provided no private right of action. *See Silver Star*, 739 F.3d at 582 (allowing an unjust enrichment claim premised on violations of the Florida Health Care Clinic Act); *Allstate Insurance Company v. Vizcay*, 826 F.3d 1326, 1328–30 (11th Cir. 2016) (Ed Carnes, C.J.) (same). *But see Buell*, 267 F. App'x at 908–09 (finding no common law claim available for violations of the Florida Unfair Insurance Trade Practices Act). When it has recognized such a claim, it looked to the text of the statute to see if the Florida legislature used language indicating its intent to provide a judicial remedy for the violations in question. *See Silver Star*, 739 F.3d at 582 (relying on descriptions of licensing violations as "unlawful," "noncompensable," and "unenforceable" to infer a cause of action); *Vizcay*, 826 F.3d at 1330–31 (relying on Silver Star). But in *Pincus v. American Traffic Solutions, Inc.*, 986 F.3d 1305 (11th Cir. 2021) (Jill Pryor, J.), the Eleventh Circuit recognized that this question implicates principles of federalism and comity and certified the following questions to the Florida Supreme Court: "Does Pincus's unjust enrichment claim fail because the statutes at issue provide no private right of action? [and] Does Pincus's unjust enrichment claim fail because he received adequate consideration in exchange for the challenged fee when he took advantage of the privilege of using his credit card to pay the penalty?" The Florida Supreme Court agreed to hear argument on the case in October 2021.

insureds obtained windshield replacements—fails due to the remaining factual disputes.

Bailey's motion to for summary judgment on Geico's unjust-enrichment claim (Count VII) is denied.

### 8. Summary of Bailey's Motion for Summary Judgment

Bailey's motion for summary judgment on Geico's civil RICO (Count II), RICO conspiracy (Count III), and Florida RICO (Count V) claims is granted. His motion for summary judgment on Geico's FDUPTA (Count IV), common-law fraud (Count VI), and unjust enrichment (Count VII) claims is denied. And his SLAPP motion is denied.

## B. Glassco's Motion for Summary Judgment

Glassco moves for summary judgment under Florida's anti-SLAPP statute. (*See* Doc. 123.) Glassco also moves for summary judgment against Geico's declaratory-judgment claim (Count I), FDUTPA claim (Count IV), common-law fraud claim (Count VI), and unjust-enrichment claim (Count VII). (*See* Doc. 123.) And Glassco moves for summary judgment in its favor on its affirmative defenses of waiver, voluntary payment, compulsory counterclaim, and collateral estoppel. (*Id.*)

### 1. Anti-SLAPP

Glassco argues that Florida's anti-SLAPP statute prohibits Geico from bringing its claims against Glassco. (Doc. 123 at 1–4.) Like Bailey, Glassco argues that Geico brought this action in retaliation for Glassco pursuing unpaid claims from Geico in state court. (*Id.*

at 2–3.)

Glassco's Anti-SLAPP motion fails because Geico's case is not without merit. § 768.295(3), Fla. Stat. (prohibiting suits against another person or entity "without merit" and "primarily because such person or entity has exercised" their constitutional rights). As this order explains in Section III.B.3 below, Glassco's motion for summary judgment against Geico's FDUTPA claims under a traditional-theory violation fail. Further, Geico's common-law fraud and unjust-enrichment claims survive summary judgment. So at least some of Geico's claims against Glassco have merit. Glassco's SLAPP motion is denied.

## 2. Declaratory Judgment (Count I)

Glassco seeks summary judgment on Geico's declaratory-judgment claim. (Doc. 123 at 8–22.) According to Glassco, Count I fails because it is based on Glassco's alleged violations under the Repair Act, which do not render submissions by a noncompliant repair shop fraudulent or noncompensable; do not render Glassco's contracts unenforceable; and provide no rights to insurers. (*Id.* at 9–12.) Glassco also argues that the Repair Act is thus inapplicable and, even if it does apply, Glassco violated none of its provisions. (*Id.* at 12–18.) And Glassco argues that any other bases unconnected to the Repair Act Geico put forth for its declaratory judgment fail. (*Id.* at 18–22.)

Geico argues that it is entitled to a declaratory judgment because evidence shows Glassco pervasively violated the Repair Act. (Doc. 134 at 21.) According to Geico,

Glassco's actions forfeited its right to payment. (*Id.*)

As the order on Glassco's motion to dismiss explains, Count I seeks a declaration that Glassco "is not . . . in compliance with the Repair Act." (Doc. 59 at 6; Doc. 1 at ¶113.) "[A]n insurer may pursue a declaratory action which requires a determination of the existence or nonexistence of a fact upon which the insurer's obligations under an insurance policy depend." *Higgins v. State Farm Fire and Cas. Co.*, 894 So. 2d 5, 12 (Fla. 2004); *see also Axis Surplus Ins. Co. v. Contravest Constr. Co.*, 921 F. Supp. 2d 1338, 1344–45 (M.D. Fla. 2012) (Antoon, J.).

For the reasons explained in Section III.A.2.a, the Court will grant Glassco's motion for summary judgment on this claim. Namely, technical violations for work nevertheless completed are not fraudulent conduct, and the Repair Act contains no language stating that the technical violations are noncompensable. As a result, Geico may not obtain a declaration that Glassco is not in compliance with the Repair Act.

### 3. FDUTPA (Count IV)

Glassco argues that the Court should grant summary judgment in its favor on Geico's FDUTPA claim. (Doc. 123 at 22–29.) According to Glassco, Geico cannot rely on the Repair Act to establish a per se violation under FDUTPA. (*Id.* at 23–25.) Glassco also argues that Geico fails to establish a traditional violation under FDUTPA because Glassco's actions were not unfair or deceptive. (*Id.* at 25–26.) And Glassco argues Geico

fails to put forth evidence showing that Glassco harmed consumers or caused actual damages. (*Id.* at 26–29.)

Geico argues that summary judgment in Glassco's favor is inappropriate because Glassco's actions constitute unfair and deceptive practices by misleading Geico into paying over $720,000 in claims. (Doc. 134 at 22.) Geico argues that Glassco's actions offended public policy set forth under the Repair Act. (*Id.* at 23.) And that Glassco's actions resulted in harm to the consumer, namely Geico. (*Id.*) Further, Geico argues that Glassco's actions in misleading Geico caused Geico over $720,000 in actual damages by paying for fraudulent claims for windshield repairs. (*Id.* at 24–25.)

FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" § 501.204, Fla. Stat. A plaintiff may bring a FDUTPA claim under two theories: per se violations or traditional violations. *See Feheley v. LAI Games Sales, Inc.*, No. 08-23060-CIV, 2009 WL 2474061, at *3–5 (S.D. Fla. Aug. 11, 2009) (Moreno, J.). A per se violation occurs when the defendant violates "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." § 501.203(3)(c); *see Webber v. Bactes Imaging Sols., Inc.*, 295 So. 3d 841, 844 (Fla. 2d DCA 2020). A traditional violation occurs when the defendant's actions constitute unfair or deceptive acts regardless of whether a rule or

regulation prohibits those actions. § 501.204(1); *see Webber*, 295 So. 3d at 844.

The Court concludes that Geico cannot prevail on its FDUTPA claim under a *per se* theory. Nothing in the Repair Act states that violations under its provisions constitute deceptive and unfair trade practices under FDUTPA. *See* §§ 559.901–559.9221, Fla. Stat. This stands in contrast to other Florida statutes stating that violations under their provisions constitute deceptive and unfair practices under FDUTPA. *See, e.g.*, § 509.511, Fla. Stat. (Florida Membership Campground Act); *see also Feheley*, 2009 WL 2474061, at *4 ("[M]any Florida statutes expressly serve as *per se* FDUTPA predicates."). Without language stating that violations under the Repair Act constitute violations under FDUTPA, Geico's theory that the defendants' actions constitute an express *per se* violation under FDUTPA fails. *See Feheley*, 2009 WL 2474061, at *4; *see also Cross v. Point & Pay, LLC*, 274 F. Supp. 3d 1289, 1297 (M.D. Fla. 2017) (Mendoza, J.) (concluding that violations under Section 560.204, Florida Statutes, cannot form for the predicate for a FDUTPA claim because the plaintiff failed to establish that the statute expressly proscribes deceptive and unfair practices); *Hucke v. Kubra Data Transfer Corp.*, 160 F. Supp. 3d 1320, 1328 (S.D. Fla. 2015) (Rosenberg, J.) (holding that the plaintiff failed to show that the Money Transmitter Statute at issue there included any FDUTPA-related language).

Nor can Geico establish an implied *per se* violation under FDUTPA. An implied *per se* violation involves unfair, unconscionable, or deceptive trade practices. *See Webber*,

295 So. 3d at 844; *Feheley*, 2009 WL 2474061, at *4. An unfair practice offends established public policy and is immoral or "substantially injurious" to consumers. *Webber*, 295 So. 3d at 844 (citation omitted). "A deceptive practice is one 'likely to mislead' consumers." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006) (quotation omitted).[16]

Geico cannot establish an implied per se violation for multiple reasons. To begin, the Repair Act uses no language characterizing violations—let alone technical violations—as unfair, deceptive, or unconscionable. *See* §§ 559.901–559.9221, Fla. Stat.; *see also Feheley*, 2009 WL 2474061, at *4 ("[Section] 849.15[, Florida Statutes,] includes no explicit declaration that a violation constitutes an unfair, unconscionable, or deceptive trade practice, as do other statutory provisions that operate as implied predicates."). What is more, the Court found no Florida caselaw holding that technical violations under the Repair Act constitute FDUTPA violations. *See Feheley*, 2009 WL 2474061, at *5 ("No Florida court has ever cited [§ 849.15] as a FDUTPA predicate."). Even more telling is that Geico is not a "customer" under the Repair Act. *See also Auto Glass America*, 418 F. Supp. 3d at 1025 (dismissing FDUTPA claim based on Repair-Act predicate because Allstate was not a customer under the statute). Finally, as discussed earlier, concluding that technical violations under the Repair Act constitute unfair or deceptive practices is incongruent with the Repair Act containing no provision voiding claims by noncompliant

---

[16] The Court located no—nor did the parties cite—caselaw elaborating on FDUTPA's use of "unconscionable."

repair shops for work performed. As a result, Geico cannot establish an implied per se FDUTPA violation predicated on the Repair Act, at least not when it is not a "customer" for purposes of the Act.

Geico might succeed under a traditional-violation theory. To succeed on a traditional theory, the plaintiff must prove (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages. *Rollins*, 951 So. 2d at 869; *Feheley*, 2009 WL 2474061, at *5. An unfair or deceptive practice is one "likely to deceive a consumer acting reasonably in the same circumstances." *Off. of Atty. Gen., Dep't of Legal Affs. v. Wyndham Int'l, Inc.*, 869 So. 2d 592, 598 (Fla. 1st DCA 2004); *Feheley*, 2009 WL 2474061, at *5.

Generally speaking, whether conduct constitutes an unfair or deceptive trade practice is a factual question. *See Suris v. Gilmore Liquidating, Inc.*, 651 So. 2d 1282, 1283 (Fla. 3d DCA 1995); *Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286, 1293 (M.D. Fla. 2009) (Fawsett, J.). That said, the plaintiff must prove that the defendant's unfair or deceptive practices harmed "consumers." *See* (Doc. 59 at 18); *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015) ("[W]hile the claimant would have to prove that there was injury or detriment to consumers in order to satisfy all of the elements of a FDUTPA claim, the claimant does not have to be a consumer to bring the claim.").

Viewing the evidence in the light most favorable to Geico, a genuine dispute of material fact exists on its claim for a traditional FDUPTA violation. First, as the Court's previous order discussed, Geico fits under FDUTPA's broad definition of "consumer," which includes "any commercial entity, however denominated." § 501.203(7), Fla. Stat.; (Doc. 59 at 18–19). And fraudulent conduct in the context of billing insurance companies qualifies as deceptive acts that harms consumers (both the insurance company and its insureds) for FDUTPA purposes. *See State Farm Mut. Auto Ins. Co. v. Med. Serv. Cntr. of Fla., Inc.*, 103 F. Supp. 3d 1343, 1354–55 (S. D. Fla. 2015) (Moore, C.J.). Here, Geico put forth evidence showing that Glassco billed for more time than it took to perform windshield repairs. (*See* Doc. 124-4 at 9.) As a result, whether Glassco's actions constitute unfair or deceptive practices is an issue for the jury to decide. *See also Siever*, 669 F. Supp. 2d at 1293 (finding a genuine dispute of material fact on whether the defendants' representations about the exclusive right to a trade name constituted unfair or deceptive practices).

Factual disputes also exist as to whether Glassco's actions caused actual damages to Geico. Under FDUTPA, a plaintiff may recover actual damages equal to "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Rollins Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984)

(quotation omitted).

Here, Geico presents evidence that Glassco billed more than it should have for some claims. (Doc. 124-4 at 9.) That means Geico can produce evidence at trial showing how much Glassco billed (market value of service in condition delivered) versus how much Glassco should have billed (market value of service in condition it should have been delivered).[17] As a result, a genuine dispute of material fact exists about whether Glassco's actions caused actual damages to Geico. *See also Siever*, 669 F. Supp. 2d at 1294 (denying summary judgment where the plaintiffs could introduce evidence showing that failure to protect exclusivity of trade name rendered useless the purchase price of using that trade name).

To summarize, Geico cannot establish a violation under FDUTPA under an express per se theory because nothing in the Repair Act states that violations under the statute constitute violations under FDUTPA. Nor can Geico establish a violation under FDUTPA under an implied per se theory. But a genuine issue of material fact exists on whether Geico can succeed on a traditional-violation theory under FDUTPA. Glassco's motion for summary judgment on this count will be granted to the extent that Geico seeks to pursue a per se violation under FDUTPA. The motion will be denied for Geico to

---

[17] Geico's argument about restitution in this context is misplaced. (*See* Doc. 134 at 24.) At trial, Geico must introduce evidence showing the difference in value between what Glassco billed and what it should have billed. Geico's argument about whether Glassco could have billed in the first place is separate and unavailing.

pursue a traditional violation under FDUTPA.

### 4. Common Law Fraud (Count VI)

Glassco argues that the economic-loss rule bars Geico from succeeding on its common-law fraud claim because Geico only suffered economic damages, which is insufficient. (Doc. 123 at 29–30.) Glassco also argues that Geico fails to provide evidence showing Glassco made false statements to Geico, that Geico relied on Glassco's misrepresentations, or that Geico suffered damages because of Glassco's misrepresentations. (*Id.* at 30–32.)

Geico argues that courts repeatedly reject arguments like Glassco's about the economic-loss rule. (Doc. 134 at 25.) Further, Geico argues that evidence shows Glassco falsely represented that it had valid benefit assignments and had a right to receive payment for repairs completed. (*Id.* at 26.) And Geico argues that it relied on Glassco's misrepresentations because Geico had no knowledge about Glassco's violations under the Repair Act. (*Id.* at 26–27.)

Glassco's arguments for summary judgment fail. Glassco's first argument that the economic loss rule bars Geico's common-law fraud claim is wrong "[b]ecause the economic loss rule applies when the fraud relates to the *performance* of the contract." *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Center, Inc.*, 427 F. App'x 714, 719–20 (11th Cir. 2011); *see State Farm Mut. Auto. Ins. Co. v. Altamonte Springs Diagonostic*

*Imaging, Inc.*, 2011 WL 6450769, at *4 (M.D. Fl. Dec. 21, 2011) (Presnell, J.) ("'[B]ecause the economic loss rule applies when the fraud relates to the performance of a contract,' and [the defendant] assumed no duty of performance through the assignment of benefits, the economic loss rule does not bar [the insurance company's] claim for common law fraud." (quotation omitted)). Here, Glassco assumed no duty of performance when the insureds assigned them the benefits of their contractual relationship with Geico. So, the economic loss rule does not bar Geico's common-law fraud claim.

Further, as discussed in Section III.A.6, Geico may pursue its fraud claim to the extent that claim is not based on Repair Act violations. *See Thornber*, 568 So. 2d at 918. And genuine disputes of material fact exist on Geico's fraud claim. Geico provides evidence that Glassco made false statements involving, among other things, (1) overbilling for windshield repairs and (2) forging certain insureds' signatures on assignment forms. (*See* Doc. 124-4 at 9; Doc. 125 at 24; Doc, 126-1 ¶¶ 13, 31–33, Ex. L.) And Geico points to evidence showing that Glassco knowingly made those false statements, which resulted in Geico relying on those statements and paying Glassco more than it should for windshield repairs. (*See* Doc. 126-1 at 3–4.) As a result, Glassco's motion for summary judgment on this claim (County VI) will be denied.

### 5. Unjust Enrichment (Count VII)

Glassco argues that the Court should grant summary judgment against Geico's

unjust-enrichment claim. (Doc. 123 at 32–34.) Geico argues to the contrary. (Doc. 134 at

27–28). For the reasons discussed in Section III.A.7, the Court will deny Glassco's motion

for summary judgment against Geico's unjust-enrichment claim (Count VII).

### 6. Waiver and Voluntary Payment

Glassco argues that the Court should grant summary judgment on its waiver and

voluntary-payment affirmative defenses. (Doc. 123 at 34–35.) After providing the standard

for each affirmative defense, Glassco states: "Geico seeks to recover payments it voluntarily

made to Shazam for windshield replacements at a time when it had the right and obligation

to investigate claims before paying them. This applies to the 53 settled claims, too." (*Id.*).[18]

Glassco's conclusory argument fails. Nowhere does Glassco explain how each

element of waiver and voluntary payment is met. This alone is fatal to Glassco's argument.

*See Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 260 (1st Cir. 1999) ("The

district court is free to disregard arguments that are not adequately developed."); *Resol. Tr.

Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[T]he onus is upon the parties

to formulate arguments[.]").

What is more, Geico points to evidence showing that it had no knowledge of all the

facts surrounding Glassco's claim submissions. (*See* Doc. 126-1 at 4); *Cox v. Porsche Fin.

Servs. Inc.*, 337 F.R.D. 426, 430 (S.D. Fla. 2020) (Gayles, J.) ("The party asserting the

---

[18] Glassco's reference to "Shazam" is puzzling and possibly the result of recycled arguments from a different case.

[voluntary-payment] defense must 'show that the person who made the payment had full knowledge of the relevant facts, including allegedly *wrongful conduct*[.]'" (quotation omitted)); *Zurstrassen v. Stonier*, 786 So. 2d 65, 70 (Fla. 1st DCA 2001) ("A waiving party must possess all of the material facts in order to constitute waiver.") (citation omitted). So Glassco's motion for summary judgment on these affirmative defenses will be denied.

### 7. Compulsory Counterclaim and Collateral Estoppel

Glassco also moves for summary judgment on its compulsory-counterclaim and collateral estoppel affirmative defenses. (Doc. 123 at 35.) But again, Glassco puts forth conclusory arguments. For its compulsory-counterclaim defense, Glassco asserts: "All of Geico's claims in this case arose from the same operative facts as the facts of the underlying state court litigation. However, Geico undisputedly did not raise these issues as compulsory counterclaims." (*Id.*) Then, with respect to its collateral-estoppel defense, Glassco states: "On the 11 claims that were tried in state court and lost by Geico, Geico is collaterally estopped from pursuing those claims in this action." (*Id.*)

Glassco's arguments fail. Nowhere does Glassco explain why Geico's claims here were compulsory in state court. *See Montgomery Ward Dev. Corp. v. Juster*, 932 F.2d 1378, 1381 (11th Cir. 1991) (discussing factors Florida courts consider in deciding whether claims were compulsory). In fact, Glassco fails to even specify which cases in state court required Geico to assert counterclaims. And Glassco falls woefully short in explaining how

it establishes success on its collateral-estoppel defense. *See Zurstrassen*, 786 So. 2d at 68–69 (listing elements necessary to prove collateral estoppel). Glassco's motion for summary judgment on these affirmative defenses will be denied due to its lack of development.

### 8. Summary of Glassco's Motion for Summary Judgment

Glassco's motion for summary judgment against Geico's declaratory-judgment claim (Count I) is granted. Glassco's motion for summary judgment against Geico's FDUTPA claim (Count IV), common-law fraud claim (Count VI), and unjust-enrichment claim (Count VII) is denied. Glassco's motion for summary judgment on its affirmative defenses of waiver, voluntary payment, compulsory counterclaim, and collateral estoppel is denied. And Glassco's SLAPP motion is denied.

## C. Geico's Motion for Summary Judgment

Geico moves for summary judgment against each defendant on its declaratory-judgment claim (Count I), unjust-enrichment claim (Count VII), and FDUTPA claim (Count IV). (*See* Doc. 125.) And Geico moves for summary judgment against Glassco's counterclaims. (*Id.*)

### 1. Declaratory Judgment (Count I)

Geico argues that it is entitled to summary judgment on its declaratory-judgment claim because Glassco never complied with the Repair Act. (Doc. 125 at 26–28.) So Geico concludes that it is entitled to a declaratory judgment that it need not pay outstanding

claims from Glassco. (*Id.* at 27; *see also* Doc. 137 at 12–14.)

For the reasons discussed in Sections III.A.2.a and III.B.2, Geico's motion will be denied. Technical violations under the Repair Act for work otherwise completed is not fraudulent. As a result, Geico's motion for summary judgment on this claim will be denied.

### 2. Unjust Enrichment (Count VII)

Geico argues for summary judgment on its unjust-enrichment claim. (Doc. 125 at 28–29.). According to Geico, Glassco may not receive payment under the Repair Act because of its violations; so allowing Glassco to retain payment already made would be inequitable. (*Id.* at 28–29.)

For the reasons discussed in Section III.A.7, the Court will deny Geico's motion for summary judgment against Glassco, Wilemon, and Bailey because disputes of fact remain as to which insureds received windshields and whether Glassco fairly charged or overcharged for them. (Doc. 122 at 34; Doc. 124-4 at 9.) The Court concludes that a genuine issue of material fact exists with respect to Geico's motion for summary judgment against Glassco, Wilemon, and Bailey. (*See* Doc. 126-2 at 66–68.)

Victor puts forth a different argument. (Doc. 136 at 17–21.) He argues that Geico has no evidence showing that he obtained a benefit. (*Id.*) Instead, he argues that any benefit went to Glassco. (*Id.* at 17–18.) He further emphasizes that he only received compensation from Glassco for work he performed and that he had no involvement with submitting

claims to Geico. (*Id.* at 18.) Victor also argues that Geico's unjust-enrichment claim fails as a matter of law because Geico paid claims pursuant to assignments of benefits (i.e., contracts) and unjust-enrichment claims fail when a contract exists. (*Id.* at 19.) Victor argues that this is not a case of unjust enrichment because Glassco performed the windshield repairs at issue. (*Id.* at 20.) Finally, Victor argues that any benefit he received is *de minimis* because he "never received a dime as a result of any of Geico's payments to Glassco." (*Id.*)

To succeed on an unjust-enrichment claim, the plaintiff must prove (1) it conferred a benefit on the defendant, (2) the defendant knew about the benefit, (3) the defendant accepted or retained the benefit, and (4) "the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value." *Performance Orthopaedics*, 278 F. Supp. 3d at 1328.

Reviewing evidence with inferences more favorable to Victor, the Court concludes that a genuine dispute of material fact exists on Geico's unjust-enrichment claim. Victor points to evidence suggesting that his knowledge about Glassco's operations was limited at best. *See, e.g.*, (Doc. 126-3 at 37, 157; Doc. 126-5 at 22, 34.) As a result, Geico's motion for summary judgment against Victor on its unjust-enrichment claim will be denied.[19]

---

[19]  Victor's argument about Geico having no unjust-enrichment claim because contracts exist is unavailing because he points to no evidence showing that he and Geico were ever in contractual privity. *See Silver Star*, 739 F.3d at 584.

### 3. FDUTPA (Count IV)

Geico argues that it is entitled to summary judgment on its FDUTPA claim. (Doc. 125 at 29–32.) Geico's first argument is that insurers may recover damages under FDUTPA for any violation under the Repair Act. (*Id.* at 30.) Its second argument is that it established the elements necessary to prove a FDUTPA violation. (*Id.*) And Geico's third argument is that it need not prove fraudulent intent or knowledge by the Defendants. (*Id.* at 30–31.) To support its arguments, Geico points to evidence it believes shows that the Defendants committed deceptive and unfair trade practices. (*Id.* at 31.)

For the same reasons discussed in Section III.B.3, Geico is not entitled to summary judgment on its FDUTPA claim under a per se theory. So this subsection will focus on whether it is entitled to summary judgment under a traditional theory. *See Feheley*, 2009 WL 2474061, at *3–5.

Reviewing the evidence with inferences more favorable to the Defendants, the Court concludes that a genuine dispute of material fact exists on Geico's FDUTPA claim. For Glassco's part, it points to evidence suggesting that nothing in Geico's policy for paying claims required the insureds to sign an assignment of benefits. (Doc. 124-4 at 12.) If Glassco can show that Geico regularly paid claims knowing that those claims were not technically compliant with the Repair Act, then Glassco might show that its alleged actions were not fraudulent or deceptive. *See Suris*, 651 So. 2d at 1283. So Geico is not entitled to

summary judgment against Glassco.

Turning to Wilemon, genuine disputes of material fact preclude summary judgment against him too. He points to evidence showing that Glassco is responsible for windshield repairs, is liable for windshield installations, honors warranties on repairs and installations, pays installers for their work, and assumes the loss for any bill unpaid. (*See* Doc. 126-2 at 107; Doc. 126-3 at 64, 112.) This evidence is enough to question whether Glassco's actions constitute unfair and deceptive practices. So Geico's motion for summary judgment against Wilemon on this count will be denied.

Unlike Glassco and Wilemon, Bailey cites no record evidence when arguing that the Court should deny Geico's motion for summary judgment. (Doc. 131 at 19–25.) Nonetheless, a genuine dispute of material fact exists because evidence shows that Glassco provides express warranties on its work. (Doc. 126-3 at 112.) Further, evidence shows that Glassco provides prompt service to insureds and replaces defectively installed windshields at no cost to the customer. (Doc. 126-2 at 47, 114–15.) This evidence, along with other evidence in the record, is sufficient to raise a question about whether Glassco's actions are deceptive. *See Suris*, 651 So. 2d at 1283. So Geico's motion for summary judgment against Bailey fails.

Finally, Victor argues that Geico put forth no evidence to hold him individually liable for Glassco's actions. (Doc. 136 at 14–15.) But a genuine dispute of material fact

exists on this point too. Evidence suggests that Victor had little-to-no involvement with Glassco's operations. *See, e.g.*, (Doc. 126-3 at 37, 157; Doc. 126-5 at 22, 34.) This presents a factual question about whether Victor actively participated or knew about Glassco's allegedly deceptive practices. *See KC Leisure Inc. v. Haber*, 972 So. 2d 1069, 1073 (Fla. 5th DCA 2008). And, for the reasons stated previously, some evidence suggests that Glassco's actions might not constitute deceptive practices. So Geico's motion for summary judgment against Victor on this claim is denied.

In the end, Geico's motion for summary judgment against the Defendants on its claim under FDUTPA (Count IV) is denied.

### 4. Glassco's Counterclaims

Geico argues that the Court should grant summary judgment in Geico's favor against Glassco's counterclaims. (Doc. 125 at 33–34.) In a separate order, the Court granted Geico's motion to dismiss those counterclaims. (Doc. 147.) So Geico's motion for summary judgment on this issue is denied as moot.

### 5. Summary of Geico's Motion for Summary Judgment

Geico's motion for summary judgment against the defendants on its declaratory-judgment claim (Count I), unjust-enrichment claim (Count VII), and FDUTPA claim (Count IV) is denied. Geico's motion for summary judgment against Glassco's counterclaims is denied as moot.

### D. Wilemon's Motion for Summary Judgment

Wilemon moves for summary judgment against Geico's RICO claims (Counts II, III, and V), FDUTPA claim (Count IV), common-law fraud claim (Count VI), and unjust-enrichment claim (Count VII). (*See* Doc. 135.)

#### 1. Civil Rico, RICO Conspiracy, and Florida RICO (Counts II, III, and V)

Wilemon argues that the Court should grant summary judgment in his favor on Geico's RICO, RICO conspiracy, and Florida RICO claims against him. (Doc. 127 at 6–16.) Naturally, Geico disagrees. (Doc. 135 at 19–25.)

For the reasons stated in Sections III.A.2, A.3, and A.4, Wilemon's motion will be granted. The Repair Act cannot serve as the predicate for a RICO claim; Geico cannot establish open-ended or closed-ended continuity nor point to any evidence that Wilemon acted with intent to deceive or was aware of any misrepresentations that Glassco's representatives allegedly made; Geico's RICO conspiracy claim fails without the underlying RICO claims; and Geico cannot succeed on a Florida RICO claim. Wilemon's motion for summary judgment on these RICO claims (Counts II, III, and V) will be granted.

#### 2. FDUTPA (Count IV)

Wilemon argues that he is entitled to summary judgment on Geico's FDUTPA claim because Geico cannot establish either corporate or individual liability. (Doc. 127 at

16–17.) For the reasons discussed in Section III(.B.3, Wilemon's corporate-liability argument fails because a genuine issue of material fact exists on whether Geico can succeed on a traditional-violation FDUTPA theory against Glassco.

Wilemon's argument about no individual liability fails too. The record shows that Wilemon owned 33% ownership interest in Glassco. (Doc. 126-4 at 19.) When Glassco started, Wilemon's responsibilities as President varied: "[He] was just trying to get everything going as far as like making sure things were set up with the paperwork and insurance companies and the auto glass itself. [And] [m]aking sure we had distributors and installers to install the glass." (*Id.* at 20.) Wilemon "set up" the technicians, representatives, and everything needed for training. (*Id.* at 26–27.) Later, Wilemon's involvement—but not ownership—decreased but he still filled work orders, set routes for technicians, and ordered parts. (*Id.* at 27.)

This evidence, along with other evidence in the record, is enough to create a genuine dispute of material fact about Wilemon's knowledge about Glassco's policies and his direct involvement in Glassco's business affairs. *See Life Mgmt. Servs.*, 350 F. Supp. 3d at 1260. So Wilemon's motion for summary judgment against Geico's FDUTPA claim (Count IV) will be denied.

### 3. Common Law Fraud (Count VI)

Wilemon argues that he is entitled to summary judgment on Geico's common-law

fraud claim. (Doc. 127 at 17–18.) According to Wilemon, Geico provides no evidence showing he made false statements to Geico. (*Id.* at 17.) Wilemon concludes that Geico has no basis for holding him individually liable. (*Id.* at 18.)

Wilemon's argument fails. *See supra* Section III.A.6. The false statements at issue here are contained in the claims Glassco submitted to Geico for payment. Those alleged false statements involve, among other things, (1) Glassco overbilling for windshield repairs and (2) forging certain insureds' signatures on assignment forms. (*See* Doc. 124-4 at 9; Doc. 125 at 24; Doc, 126-1 ¶¶ 13, 31–33, Ex. L.) *See State Farm Mut. Auto. Ins. Co. v. Physicians Grp. of Sarasota, LLC*, 9 F. Supp. 3d 1303, 1311 (M.D. Fla. 2014) (Kovachevich, J.) (concluding that details of allegedly fraudulent claims satisfied pleading requirements for common-law fraud). Further, Geico points to more than Wilemon's mere ownership to support its claim for individual liability against him. *See, e.g.*, (Doc. 126-4 at 19–20, 26–27.) So Wilemon's motion for summary judgment against Geico's common-law fraud claim (Count VI) is denied.

### 4. Unjust Enrichment (Count VII)

Wilemon argues that Geico's unjust-enrichment claim fails because Geico cannot base that claim on violations under the Repair Act. (Doc. 127 at 18–19.) He also argues that Geico's claim fails because the insureds received adequate consideration and that nothing from Geico's payments to Glassco unjustly enriched him. (*Id.* at 19.)

For the reasons discussed in Section III.A.7, Wilemon's arguments about violations under the Repair Act and adequate consideration will be rejected.

Finally, Wilemon's argument that he was not unjustly enriched fails. Evidence shows that Wilemon owned one-third of Glassco. (*See* Doc. 135 at 19.) So a genuine dispute of material fact exists about whether he was enriched by Glassco's allegedly fraudulent claim submissions. His motion for summary judgment against Geico's unjust-enrichment claim (Count VII) will be denied.

### 5. Summary of Wilemon's Motion for Summary Judgment

Wilemon's motion for summary judgment against Geico's civil RICO claim (Count II), RICO conspiracy claim (Count III), and Florida RICO claim (Count V) will be granted. His motion for summary judgment against Geico's FDUTPA claim (Count IV), common-law fraud claim (Count VI), and unjust-enrichment claim (Count VII) will be denied.

## E. Victor's Motion for Summary Judgment

Victor moves for summary judgment against all Geico's claims but particularly its RICO claims (Counts II, III, and V), FDUTPA claim (Count IV), common-law fraud claim (Count VI), and unjust-enrichment-claim. (*See* Doc. 128.)

### 1. The Repair Act as Basis for Geico's Claims

Victor argues that the Court should grant summary judgment against Geico on all

claims because each is impermissibly based on the Repair Act. (Doc. 128 at 15–16.) To support his contention that the Repair Act cannot form the basis of his other claims, Victor relies on the Court's previous order's discussion about how the Repair Act contains no language stating that noncompliant claims are noncompensable. (*Id.* at 15; *see also* Doc. 59 at 16.) To Victor, that missing language under the Repair Act means that Geico's claims based on the Repair Act fail as a matter of law. (Doc. 128 at 16.)

Victor overextends himself with this argument. This order describes those claims impermissibly based on the Repair Act and those claims not so based. Just as the Court's order previously discussed, some of Geico's claims are based on allegedly fraudulent conduct regardless of noncompliance with the Repair Act. (Doc. 59 at 14.) Victor's argument that all Geico's claims are based on the Repair Act fails. His motion for summary judgment on this basis will be denied.

2. Civil RICO, RICO Conspiracy, and Florida RICO (Counts II, III, and V)

Victor moves for summary judgment against Geico's RICO claims. (Doc. 128 at 17–21.) For the same reasons stated in Section III.A.2, A.3, and A.4, Victor's motion against Geico's RICO claims (Counts II, III, and V) will be granted.

3. FDUTPA (Count IV)

Victor argues for summary judgment on Geico's FDUTPA claim. (Doc. 128 at 21–23.) He argues that no evidence shows that he had significant control over Glassco so he

cannot be held individually liable. (*Id.* at 22.) He also argues that no evidence shows him personally involved with marketing Glassco's services to insureds customers. (*Id.*) Further, he argues that no evidence shows that Glassco's actions harmed consumers. (*Id.* at 22–23.)

A genuine dispute of material fact exists on these issues. Evidence shows that Victor owned one-third of Glassco. (Doc. 126-1 at 2; Doc. 126-2 at 66.) Glassco's actions at issue here occurred while Victor owned the company. (Doc. 126-1 at 3.) When Glassco started, Victor's role was to help with safety inspectors and technicians. (Doc. 126-4 at 51–52.) He also helped with his "knowledge and expertise on sales, trainings and the set up," including which software to use and what kind of glass and distributors to set up. (Doc. 126-5 at 27–28.) He also provided training on how to identify windshield damage and about the installation process. (*Id.* at 39.)

Although Victor points to various evidence suggesting that he has no control over Glassco and never directly participated in its operation (*see* Doc. 128 at 3–13), the Court must review the evidence with inferences in Geico's favor as the nonmoving party. The evidence discussed in this section is enough to create a genuine dispute of material fact about Victor's involvement with Glassco. After all, the conduct at the heart of this case is Glassco's process for repairing windshields and submitting those claims. The evidence shows that Victor helped with training on windshield repairs and about the installation process. The degree, if any, to which Victor might have controlled or directed Glassco's

actions is for the fact finder to decide. *See Life Mgmnt. Servs.*, 350 F. Supp. 3d at 1260. So Victor's motion for summary judgment on Geico's FDUTPA claim (Count IV) will be denied.

### 4. Common Law Fraud (Count VI)

Victor argues that the Court should grant summary judgment against Geico's common-law fraud claim against him. (Doc. 128 at 25–26.) According to Victor, Geico failed to provide evidence showing that Victor knew that false statements were made to Geico. (*Id.* at 25–26.)

This argument fails. Evidence shows that Victor helped set up Glassco and trained technicians on the installation process. (Doc. 126-4 at 51–52; Doc. 126-5 at 27–28.) Installations are at the heart of Geico's dispute with the defendants: whether Glassco fraudulently billed Geico for windshield repairs. And the allegedly false statements would be those claims submitted to Geico. *See Physicians Grp. of Sarasota*, 9 F. Supp. 3d at 1311. As a result, Victor's motion for summary judgment against Geico's common-law fraud claim (Count VI) will be denied.

### 5. Unjust Enrichment (Count VII)

Victor argues that he is entitled to summary judgment on Geico's unjust-enrichment claim because no evidence shows that he obtained benefits from Glassco's actions. (Doc. 128 at 26–27.) Further, Victor argues that any benefit he might have

obtained was unknown to him; so he could not have "voluntarily accepted and retained the benefit conferred." (*Id.* at 27–28.) And Victor argues that no unjust-enrichment claim exists because Geico paid Glassco under a contract. (*Id.* at 29.)

Victor's arguments fail. Evidence shows that Victor is one-third owner of Glassco. And evidence shows that he helped start Glassco's installation process and that he trained technicians. So a genuine dispute of fact exists over whether he benefitted from Geico's payments to Glassco based on fraudulent claims. And no evidence shows that Victor was in contractual privity with Geico to render an existence of a contract as a barrier to relief. *See Silver Star*, 739 F.3d at 584. As a result, Victor's motion for summary judgment against Geico's unjust-enrichment claim (Count VII) will be denied.

### 6. Summary of Victor's Motion for Summary Judgment

Victor's motion for summary judgment against Geico's RICO claims (Counts II, III, and V) is granted. His motion for summary judgment against Geico's FDUTPA claim (Count IV), common-law fraud claim (Count VI), and unjust-enrichment claim (Count VII) is denied.

## IV. CONCLUSION

Geico's claims against the Defendants premised on violations under the Repair Act fail because submissions for work from noncompliant entities nevertheless completed is not fraudulent conduct. But genuine disputes of material fact preclude granting summary

judgment on Geico's claims alleging fraudulent and deceptive practices independent of the Repair Act. As a result, the following is **ORDERED**:

1.   Bailey's motion for summary judgment (Doc. 122) is **GRANTED IN PART and DENIED IN PART**:

   a.   Bailey's motion for summary judgment based on Florida's anti-SLAPP statute is **DENIED**.

   b.   Bailey's motion for summary judgment against Geico's RICO claims (Counts II, III, and V) is **GRANTED**.

   c.   Bailey's motion for summary against Geico's FDUTPA claim (Count IV), common-law fraud claim (Count VI, and unjust-enrichment claim (Count VII) is **DENIED**.

2.   Glassco's motion for summary judgment (Doc. 123) is **GRANTED IN PART and DENIED IN PART**:

   a.   Glassco's motion for summary judgment under Florida's anti-SLAPP statute is **DENIED**.

   b.   Glassco's motion for summary judgment against Geico's declaratory-judgment claim (Count I) is **GRANTED**.

   c.   Glassco's motion for summary judgment against Geico's FDUTPA claim (Count IV), common-law fraud claim (Count VI), and unjust-

enrichment claim (Count VII) is **DENIED**.

d.      Glassco's motion for summary judgment on its affirmative defenses of waiver, voluntary payment, compulsory counterclaim, and collateral estoppel is **DENIED**.

3.      Geico's motion for summary judgment on its claims against the defendants (Doc. 125) is **DENIED**. Geico's motion for summary judgment against Glassco's counterclaims is **DENIED as moot**.

4.      Wilemon's motion for summary judgment (Doc. 127) is **GRANTED IN PART and DENIED IN PART**:

a.      Wilemon's motion for summary judgment against Geico's RICO claims (Counts II, III, and V) is **GRANTED**.

b.      Wilemon's motion for summary judgment against Geico's FDUTPA claim (Count IV), common-law fraud claim (Count VI), and unjust-enrichment claim (Count VII) is **DENIED**.

5.      Victor's motion for summary judgment (Doc. 128) is **GRANTED IN PART and DENIED IN PART**:

a.      Victor's motion for summary judgment against Geico's RICO claims (Counts II, III, and VI) is **GRANTED**.

b.      Victor's motion for summary judgment against Geico's FDUTPA

claim (Count IV), common-law fraud claim (Count VI), and unjust-

enrichment claim (Count VII) is **DENIED**.

6.     The parties must file a joint notice by **October 1, 2021,** proposing agreed

upon trial-related motions deadlines and a new trial term and advise whether

a second round of mediation would prove useful.

**ORDERED** in Tampa, Florida, on September 24, 2021.

Kathryn Kimball Mizelle
United States District Judge